IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SARAH DIEKMAN,
    an individual

    Plaintiff,                                CASE NO.: 1:19-cv-00227-AW-GRJ

v.

UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES, AS THE PUBLIC BODY
CORPORATE OF UNIVERSITY OF FLORIDA,

    Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SARAH DIEKMAN ("Plaintiff"), by and through her undersigned counsel, hereby sues Defendant, UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, AS THE PUBLIC BODY CORPORATE OF UNIVERSITY OF FLORIDA, ("Defendant"), and alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages that exceed $15,000.00 exclusive of prejudgment interest, attorneys' fees, and costs. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1337; 28 U.S.C. 2201; Title VII of the Federal Civil Rights Act of 1964, as amended, 28 U.S.C. 1331 and 1367, the Florida Civil Rights Act, as amended, § 760.01, Florida Statutes ("FCRA"), the Florida Whistleblower Act, § 448.102 et seq., § 112.3187 ("FWA"), and as a result of Defendant's sex discrimination and retaliation against Plaintiff, in violation of Title VII; and the FCRA and 42 U. S. Code § 1983, Florida Statute § 440.205, workers' compensation retaliation.

2. Venue lies within the United States District Court for the Northern District of Florida, Gainesville Division, as a substantial portion of the events giving rise to this claim occurred in this Judicial District and therefore proper pursuant to 28 U.S.C. 1391(b).

## THE PARTIES

3. The Plaintiff, SARAH DIEKMAN, at all times relevant to the causes of action, was a resident of Gainesville, Alachua County, Florida.

4. The Defendant, UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, is a public body corporate of the UNIVERSITY OF FLORIDA, with fifteen (15) or more employees, located in Gainesville, Alachua County, Florida.

5. Defendant is an employer as defined by the laws under which this action is brought and employs the required number of employees. Defendant, at all times material hereto, was Plaintiff's employer as that term is defined under Title VII, ADA, FWA, FCRA, FMLA and Florida Statute § 440.205.

6. The Plaintiff timely filed an administrative Charge of Discrimination with the EEOC prior to her termination on September 8, 2015 and again on May 18, 2016 and May 14, 2018. On or about August 6, 2019, the EEOC issued its Letter of Determination and Notice of Right to Sue. Plaintiff has exhausted all administrative remedies.

## FACTS

7. Plaintiff was born on December 31, 1983.

8. Plaintiff suffers from the medical condition of postural orthostatic tachycardic syndrome (POTS) along with a disorder of reading (DSMIV) (ADHD). POTS' symptoms include fatigue, diminished concentration, headache, lightheadedness, syncope, nausea, fluctuating temperatures, and heart palpitations.

9. POTS is exacerbated and triggered by environmental factors including: heat, time of day, dehydration, sleep deprivation, posture, and prandial status.

10. Despite Defendant's knowledge of Plaintiff's medical condition, Defendant retaliated against Plaintiff for her request for reasonable accommodations. The illegal behavior continued despite Plaintiff's complaints of the behavior to Defendant's senior staff.

11. Plaintiff was employed with Defendant as a psychiatry resident physician on July 1, 2013. Plaintiff was subject to an employment contract by the Defendant which defined her work responsibilities. Plaintiff was paid a salary by the Defendant. Defendant paid employment taxes and provided Plaintiff retirement benefits.

12. When the Plaintiff began her employment, she requested a handicapped parking space for the main campus of Shands/VA located at the University of Florida.

13. The Plaintiff was assigned a handicap parking space which was farther away from her work site than regular employee parking.

14. The Plaintiff informed her supervisors including Dr. Hobbs and was told it was her responsibility to resolve her parking issue and no exception or alteration in her work schedule would be made to accommodate her problem.

15. During the Fall of 2013 and Spring of 2014, Plaintiff informed Dr. Joseph Thornton that an attending physician at the Veterans Association (VA), Emergency Department, intruded into her sleeping area without permission. This same physician, whose comments about the Plaintiff's performance were incorporated into her permanent record, had been physically touching the Plaintiff, making sexually degrading remarks to her, referring to her as Ms. Monroe (referencing Marilyn Monroe) and stating, "sometimes you need to hear it from a man". The

Plaintiff requested not to be left alone with the doctor. Dr. Thornton responded that the Plaintiff reminded him of his "ex-wife," and she should learn to get along better with others.

16. The Plaintiff, due to not receiving any help from her supervisor, reported the matter to Dr. Anna Turner and Dr. Hobbs. Dr. Turner sent an email to the Plaintiff stating that she had spoken to Dr. Thornton and Dr. Hobbs and that no action would be taken but if the situation worsened it might be reported.

17. Shortly after this incident the Plaintiff received her first negative review from Dr. Thornton. Dr. Thornton stated that the Plaintiff had problems working with staff. This was Plaintiff's only negative review during her second year of employment.

18. The Plaintiff reported the sexual harassment and retaliation to Defendant's human resources department who informed her that it would not happen to other residents.

19. During the hot months of June, July, August, and September of 2014, Plaintiff's POTS was aggravated due to the heat. Plaintiff could not use her "handicapped parking space" because it was too far away. Plaintiff had to choose between receiving parking tickets or retaliation for using her sick time. Dr. Hobbs warned the Plaintiff to stop complaining about the parking issue and acquire a "team player attitude."

20. The Plaintiff was forced to contact the University of Florida's legal department which resulted in her obtaining a parking space which accommodated her needs, however, Dr. Hobbs informed the Plaintiff that she made a "mistake" by going outside the psychiatry department to obtain her reasonable accommodation. Dr. Hobbs further stated that the chief residents would be assigned to deal with the Plaintiff's "poor attitude."

21. The Plaintiff endured direct consequences for contacting the Defendant's legal department. Soon after the contact, Dr. Chang subjected the Plaintiff to an hour-long discussion

on attitude improvement. The Plaintiff was forced to stand during the hour-long lecture despite her informing Dr. Chang that standing would aggravate her POTS. Dr. Chang responded that the Plaintiff was being punished for contacting an outsider and she should consider this before ever acting in such a way again. Dr. Chang further stated that if the Plaintiff disobeyed him and sat down, he would immediately bring a professionalism complaint against her to the Clinical Competency Committee. (CCC).

22. The Plaintiff feared for her career and remained standing which resulted in her suffering tachycardia, near-syncope, heart palpitations, diaphoresis, tremulousness, weakness, fatigue, cognitive delay, and nausea. The Plaintiff requested to leave work early due to the onset of her symptoms but was informed by Dr. Chang that if she did leave, he would report her to CCC.

23. Dr. Chang and Dr. Hobbs continued to engage in actions which would negatively impact the Plaintiff's health including assigning the Plaintiff to physically grueling work rotations, last minute schedule changes, and transferring another resident's work load to her.

24. Plaintiff was informed in July of 2014 by a chief resident for the Defendant, that people who do not complain will be rewarded.

25. On or about November 16 or 17, 2014 Dr. Hobbs responded to a complaint made by the Plaintiff about Chief Resident Dr. Chang making mistakes in Plaintiff's schedule which would result in an aggravation of the Plaintiff's health condition. Dr. Hobbs stated to Plaintiff that if the Plaintiff could not do everything that was asked of her without becoming sick then she should take a leave of absence until she could return and perform "all required duties" unimpeded. Dr. Hobbs further stated that, that meant that anything she was directed by her supervisors to do, she would have to perform.

26. Dr. Hobbs informed the Plaintiff that she could not be a psychiatrist if she needed accommodations, "special treatment." She informed the Plaintiff that her disability would disqualify her from graduation and working as a psychiatrist.

27. On December 29, 2014, Chief Resident, Dr. Chang, released an email stating a new policy was in effect to give easier schedules and less work for people who do not call in sick. Dr. Chang also stated that calling in sick would be a professionalism violation.

28. Due to the Defendant's failure to provide reasonable accommodations, Plaintiff suffered from POTS flare-ups which resulted in her using her designated sick days. Plaintiff's use of her sick days directly resulted in retaliation by the Defendant and the termination of her employment.

29. Plaintiff contacted the Defendant's HR office to apply for FMLA so she would not receive professionalism violations for using her sick days. Plaintiff was given an excessive and burdensome amount of paperwork to give her doctor so she could exercise her FMLA leave. Plaintiff could not fill out her paperwork quickly because of her schedule and the prohibition of her using her sick days.

30. In January 2015, Plaintiff filed a harassment complaint with the Defendant's human resource office specifically against Dr. Chang. Plaintiff was informed that Defendant's HR office did not believe the complaint was substantial enough and would be better handled through the Defendant's ADA office.

31. On March 31, 2015, Plaintiff contacted the ADA office of Defendant for intervention into a last-minute schedule change that would affect her health. Plaintiff also complained about harassment, fear, and retaliation.

32. On May 5, 2015 Plaintiff filed a complaint with the accrediting body, ACGME, addressing program violations and education, safety and retaliation committed by Defendant.

33. On May 8, 2015, Plaintiff spoke with Dr. Dixon, an employee of the Defendant, about the problems in the department.

34. In May 2015 Chief Resident, Dr. Chang addressed the complaints made to ACGME and stated that the complaint should not have been voiced to upper level administration above his head.

35. On May 11, 2015, Plaintiff filed an internal ADA Grievance which stated that she was being harassed and retaliated against for asking for a reasonable accommodation. Plaintiff informed ADA Officer, Ken Osfield that she was afraid of retaliation for taking sick time in order to have surgery for hearing loss. Plaintiff stated that taking sick leave in the past had resulted in punishment. The Plaintiff was informed that she had to advocate her needs directly to her supervisor Dr. Hobbs. Dr. Hobbs in turn informed the Plaintiff that it was not her job and the Plaintiff needed to deal with Mr. Osfield. The passing of the Plaintiff between Dr. Hobbs and Mr. Osfield continued several times.

36. On May 12, 2015, Plaintiff received an email from Dr. Dixon stating that she was aware of the ACGME complaint and that she would handle the problem. Plaintiff responded that the complaint would be withdrawn.

37. Plaintiff reported the problem with being passed back and forth to Dr. Regina Bussing, the Department Chair and Dr. Lisa Dixon, the designated institutional officer. (DIO). Both of these upper-level administrators directed the Plaintiff to deal with Dr. Hobbs.

38. On or about the Spring of 2015, Dr. Averbuch began making suggestive sexual comments to the Plaintiff. Dr. Averbuch wrote a letter stating that the Plaintiff should be placed on academic probation because the two of them needed to spend more time together.

39. On or about May 28, 2015, ADA Officer, Ken Osfield met with Dr. Hobbs and Dr. Averbuch to discuss Plaintiff's grievance. The result was that they refused two-thirds of the Plaintiff's ADA accommodation requests.

40. Subsequent to the meeting of May 28, 2015, Dr. Hobbs stated that the Plaintiff was a problem and that she, Dr. Hobbs, needed to obtain documentation to prove it.

41. In June and July of 2015, Plaintiff continued to complain about failures to accommodate her needs which were affecting her health. Plaintiff complained to the ADA Officer, Dr. Hobbs the program director, Dr. Ginory assistant program director and Dr. Bussing, department chair. The responses to Plaintiff's complaint were an accommodation plan that Dr. Ginory, Plaintiff's direct supervisor failed to follow.

42. Plaintiff was directed to speak to Mr. Osfield regarding her reasonable accommodations. Plaintiff felt that she would be put on academic probation as a means to control her and have her stop complaining.

43. On June 8, 2015, Dr. Dixon released her findings concerning the complaint made by Plaintiff and she found that education was lacking; retaliation was occurring regarding residents, however, she found that there was not a resident shortage.

44. On July of 2015, Plaintiff raised concerns about a policy of Defendant's concerning billing that was fraudulent. Plaintiff raised this concern to both Dr. Ginory and Dr. Hobbs.

45. In August of 2015, Plaintiff attended a lecture as she is an auditory learner. Despite that her classmates were attending the lecture; the Plaintiff was asked to leave. Dr. Hobbs stated,

despite the fact that the Plaintiff was allegedly academically deficient, that she made the educational schedule and was subject to changes that she so deemed. The Plaintiff complained to the Department Chair, Dr. Bussing, that she was not receiving the educational resources as her classmates and Dr. Bussing deferred to Dr. Hobbs. Dr. Hobbs later informed the Plaintiff that if the Plaintiff had not been so much "trouble" then she would have been allowed to attend the lecture. Plaintiff was also informed that billable hours and work production should be her top priority.

46. In September 2015, Plaintiff was placed on academic probation. In October of 2015, Plaintiff's schedule for clinic work was frequently resulting in her schedule to be double booked. Each time she brought this issue up, the clinic administrator said it was an accident.

47. The Plaintiff took the PRITE examination in October and her results were high. The Plaintiff was in the top third of her class and the nation on the main portion of the exam.

48. The Milestone scores mark the attainment of a skill level. Scores above 3 are considered to be a graduation level score. The Plaintiff achieved multiple scores above a 3 before her termination. The Plaintiff printed her scores.

49. On November 18, 2015, a meeting was held to discuss the recent accommodation request made by the Plaintiff. The meeting was attended by the Plaintiff, Dr. Jaqueline Hobbs, Dorothy McCallister, and Dr. Ken Osfield. The accommodations that the Defendant was willing to provide are attached as Exhibit "A" to this complaint.

50. On December 4, 2015, Plaintiff was terminated from her residency program by the Defendant. In the Plaintiff's termination documents, the Defendant noted that the Plaintiff's use of her sick days was a reason for her termination. Defendant also stated that Plaintiff's billing practices were not making the Defendant enough money.

51. The Milestone scores the Plaintiff had received during her second year of employment were changed fifteen to sixty days after her termination. All of the Plaintiffs' scores above a 3 were removed or lowered to below a 3. The changes were made in attempt to discredit the Plaintiff and show she had not achieved her necessary milestones. The changes also were done in an attempt to refute that the Plaintiff was subjected to negative reviews directly in time with her complaints of ADA violations, and sexual harassment and fraudulent billing practices.

52. The Plaintiff was treated differently than similarly situated male employees. Male employees who committed greater offenses than the Plaintiff was accused of committing were not terminated. These offenses included threatening to blow up the department and kill his boss. Forgery. Walking off the job in the middle of a shift because there was "too much work." Promotion of three male employees who had failed their national board exams.

53. Although male resident only made up 20% of the work force, they were routinely scheduled for easier rotations.

54. Plaintiff never received additional supervision while she was on call.

55. Plaintiff was never asked to attend any patient safety meetings. Plaintiff never failed a rotation.

56. Dr. Tonia Werner was told by Dr. Hobbs to punish the Plaintiff for "complaining about her disability".

57. Dr. Diekman exhausted all her administrative remedies prior to filing suit.

## COUNT I – DISABILITY DISCRIMINATION IN CONTRAVENTION OF THE FLORIDA CIVIL RIGHTS ACT

58. Plaintiff adopts by reference, as if set out fully and completely herein, paragraphs 1 through 57.

59. This is an action against Defendant pursuant to the Florida Civil Rights Act (FCRA), Florida Statutes 760.01 and 760.10 et. seq.

60. As described above, Plaintiff has a disability and/or Defendant perceived her to have a disability as defined under FCRA.

61. Due to this disability, Plaintiff was discriminated against by Defendant.

62. As a result of her disability, Plaintiff suffered an adverse employment action caused by Defendant.

63. The adverse employment action sustained by Defendant was a termination of employment that occurred on or about December 4, 2015.

64. The Defendant knew or should have known of the discrimination.

65. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered and continues to suffer emotional damages as well as monetary damages, including, but not limited to, loss of wages and benefits, and loss of future earning capacity.

66. The Plaintiff is entitled to recover attorney's fees and other costs and expenses pursuant to the FCRA.

WHEREFORE, Plaintiff demands that this Court assert jurisdiction over this action, grant a trial by jury on all issues so triable, and provide for an award of damages, including, but not limited to, back pay and benefits lost, interest on back pay and benefits, front pay and benefits, compensatory damages including damages for mental anguish, loss of dignity, and other intangible injuries, pecuniary and non-pecuniary losses, liquidated damages attorney's fees and costs, and for all other relief in law or in equity to which the Plaintiff may be justly entitled.

## COUNT II – WRONGFUL DISCHARGE BY DEFENDANT IN VIOLATION OF FLORIDA STATUTE §440.205

67. Plaintiff restates and realleges the factual allegations contained in paragraphs 1

through 57 above.

68. Florida Statute §440.205 states the following:

*No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law. (Florida Statute §440.205, (2003)).*

69. Plaintiff sustained an injury during the scope of her employment on or about December 3, 2015.

70. As a result of the injuries sustained, Plaintiff applied for workers' compensation benefits on or about December 17, 2015.

71. Plaintiff applied for workers' compensation benefits on or about December 2, 2016.

72. Plaintiff settled her workers' compensation claim on June 22, 2016.

73. As a result of Plaintiff's valid claim and receipt of workers' compensation benefits, the employment of Plaintiff was retaliated and terminated by Defendant on or about December 4, 2015.

74. The actions of Defendant were willful, wanton, and outrageous and without regard for Plaintiff's rights and feelings.

75. As a result of Defendant's actions, Plaintiff has suffered both economic and emotional damages.

WHEREFORE, Plaintiff demands judgment against Defendant and relief in the form of: economic damages, including lost wages, benefits, and other remuneration; reinstatement of full fringe benefits; front and back pay; any other compensatory damages allowable under law; attorney's fees to the extent permitted by law and costs, emotional distress damages, prejudgment and post judgement interest, liquidated damages and any other relief that the court deems appropriate.

## COUNT III - UNLAWFUL DISCRIMINATION BASED ON SEX IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

76. Plaintiff restates and realleges the factual allegations contained in paragraphs 1 through 57 above.

77. Plaintiff's sex was a motivating factor that caused Defendant to retaliate against the Plaintiff and terminate her employment. Moreover, she would not have been discriminated and/or terminated but for this unlawful motive.

78. Any legal reasons that Defendant gives for the discrimination and/or termination are merely a pretext for unlawful sex discrimination.

79. As a result of the discrimination described above, the Plaintiff has suffered damages. Plaintiff has had to retain the undersigned counsel and will continue to incur fees and costs. The discrimination described above was done willfully, maliciously and with reckless disregard for Plaintiff's rights under state law.

80. As a direct and proximate result of the discrimination and retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant and relief in the form of: economic damages, including lost wages, benefits, and other remuneration; reinstatement of full fringe benefits; front and back pay; any other compensatory damages allowable under law; attorney's fees to the extent permitted by law and costs, emotional distress damages, prejudgment and post judgement interest, liquidated damages  and any other relief that the court deems appropriate.

## COUNT IV – SEX DISCRIMINATION BASED ON TITLE VII

81. Plaintiff restates and realleges the factual allegations contained in paragraphs 1 through 57 as so fully stated herein.

82. Title VII makes it unlawful for an employer to discriminate against an employee based on that person's sex.

83. Defendant's discriminatory conduct, in scheduling Plaintiff's work rotation, hours of employment, payment of fringe benefits, payment of wages, while allowing male employees to experience better scheduling, wages and benefits was because of Plaintiff's sex in violation of Title VII.

84. Defendant's alleged basis for discrimination are pretextual and asserted only to cover up the discriminatory nature of its conduct.

85. Even if Defendant could assert a legitimate reason for their actions, Plaintiff's sex was also a motivating factor.

86. As a result of Defendants discriminatory conduct, Plaintiff has suffered and will continue to suffer economic damages, emotional anguish, pain and suffering and loss of dignity damages. Plaintiff request lost economic damages, back pay, front pay, and compensatory damages.

87. Plaintiff also request that attorney's fees and cost be awarded pursuant to Title VII.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant and award of economic damages, back pay, front pay, compensatory damages, liquidated damages and attorney's fees and cost, all as permitted by law for violation of Title VII.

## COUNT V– RETALIATION UNDER TITLE VII

88. Plaintiff repeats the allegations contained in paragraphs 1 through 57 as so fully stated herein.

89. Title VII makes it unlawful for an employer to retaliate against an employee who as opposed to any practice, made an unlawful employment practice by Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII.

90. Title VII prohibits sexual harassment and sex discrimination.

91. Defendant's adverse conduct and discharge of Plaintiff, as enumerated above was because of her complaints, her involvement in ADA and sexual harassment complaints and investigation in violation of Title VII.

92. Defendant's alleged basis for the adverse conduct against Plaintiff and Plaintiff's termination are pretextual and asserted only to cover up the retaliatory nature of the conduct.

93. Even if Defendant could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's termination, which reasons it does not have, Plaintiff's complaint against Defendant and their employees, her involvement in sexual harassment and ADA complaints and investigation were also motivating factors for Defendant's adverse conduct towards Plaintiff and Plaintiff's termination.

94. As a result of Defendant's retaliatory and adverse conduct, Plaintiff has suffered and will continued to suffer economic damages, emotional anguish, pain and suffering and loss of dignity damages. Plaintiff requests lost economic damages, back pay and front pay, and compensatory damages.

95. Plaintiff also request that her attorney's fees and cost be awarded under Title VII.

WHEREFORE, Plaintiff prays for entry of a judgment against Defendant and an award of economic damages, back pay, front pay, compensatory damages, liquidated and attorney's fees and cost all as permitted by law for violation of Title VII.

## COUNT VI – RETALIATION UNDER FLORIDA CIVIL RIGHTS ACT

96. Plaintiff repeats the allegations contained in paragraphs 1 through 57 as so fully stated herein.

97. FCRA makes it unlawful for an employer to retaliate against an employee who as opposed to any practice made an unlawful employment practice by FCRA, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under FCRA.

98. FCRA prohibits sexual harassment and sex discrimination.

99. Defendants adverse conduct and discharge of Plaintiff, as enumerated above was because of her complaints, her involving in ADA and sexual harassment complaints and investigation in violation of FCRA.

100. Defendants alleged basis for the adverse conduct against Plaintiff and Plaintiff's termination are pretextual and asserted only to cover up the retaliatory nature of the conduct.

101. Even if Defendant could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's termination, which reasons it does not have, Plaintiff's complaint against Defendant and their employees, her involvement in sexual harassment and ADA complaints and investigation were also motivating factors for Defendant's adverse conduct towards Plaintiff and Plaintiff's termination.

102. As a result of Defendants retaliatory and adverse conduct, Plaintiff has suffered and will continued to suffer economic damages, emotional anguish, pain and suffering and loss of dignity damages. Plaintiff requests lost economic damages, back pay and front pay, and compensatory damages.

103. Plaintiff also request that her attorneys' fees and cost be awarded under FCRA.

WHEREFORE, Plaintiff prays for entry of a judgment against Defendant and an award of economic damages, back pay, front pay, compensatory damages, liquidated damages and attorneys' fees and cost all as permitted by law for violation of FCRA.

**COUNT VII – RETALIATION UNDER FLORIDA WHISTLEBLOWER ACT**

104. Plaintiff repeats the allegations contained in paragraphs 1 through 57 as so fully stated herein.

105. The FWA prohibits retaliatory personnel action against an employee because the employee has: a. disclosed to an appropriate governmental agency, under oath, in writing, in activity, policy or practice of the employer that is in violation of the law, rule or regulation; b. provided information to, or testified before, any appropriate governmental agency, person or entity conducting an investigation, hearing or inquiry into an alleged violation of law, rule or regulation by the employer; or c. objected to or refused to participate in, any activity, policy, or practice of the employer which is in violation of the law, rule or regulation.

106. Defendant's adverse conduct and discharge of Plaintiff, as enumerated above, was because of her complaint about sexual harassment, discrimination, ADA violations, and unlawful billing practices, which resulted in investigations by the Defendant and were done in violation of FWA. Plaintiff made the appropriate disclosure pursuant to the FWA requirements.

107. Defendant's alleged basis for its adverse conduct against Plaintiff and Plaintiff's termination are pretextual and asserted only to cover up the retaliatory nature of its conduct.

108. Even if Defendant could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's termination which reasons it does not have, Plaintiff's complaint about unlawful billing practices, sexual harassment, and her involvement in sexual harassment investigation were also motivating factors for Defendant's adverse conduct towards Plaintiff and

Plaintiff's termination.

WHEREFORE, Plaintiff prays for entry of a judgment against Defendant and an award of economic damages, back pay, front pay, compensatory damages, liquidated damages and attorney's fees and cost all as permitted by law for violation of FWA.

### COUNT VIII - VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

109. Plaintiff repeats the allegations contained in paragraphs 1-57 as so fully stated herein.

110. The Defendant is subject to the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S. Code § 1983.

111. The Defendant violated the Plaintiff's due process rights when it terminated the Plaintiff's employment without adhering to statutorily prescribed due process rights.

112. The Defendant acted under color of law in depriving the Plaintiff of her rights, thus violating the Fourteenth Amendment due process protection.

113. As a result of Defendant's actions, the Plaintiff was damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, post-judgment and pre-judgment interest, permanent injunction, reinstatement of employment, back wages and benefits from the date of termination until reemployment, liquidated damages, costs, attorney's fees and any further relief which this Court may deem appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial of this action by jury.

Dated this 2nd day of January 2020.

*/s/ Andrew J. Salzman*
ANDREW J. SALZMAN, ESQUIRE
Florida Bar # 0603929
**UNICE SALZMAN JENSEN, P.A.**
1815 Little Road
Trinity, Florida 34655
Telephone (727)723-3772
Facsimile (727)723-1421
Email Address: asalzman@unicesalzman.com
Secondary Email Addresses: service@unicesalzman.com
cposs@unicesalzman.com

Attorney for the Plaintiff

00447034.DOCX