# Exhibit 12

**Academic Standards (Clinical Competency) Committee Meeting**
**Department of Psychiatry**
**University of Florida College of Medicine**
**March 17, 2014**

Present: Drs. Jacqueline Hobbs, Robert Averbuch, Brian Cooke, Almari Ginory, Richard Holbert, Uma Suryadevara, Terry Lemesh, Dorothy McCallister
Not present but provided written feedback prior to meeting: Dr. Kimberly White

**PGY-1**

**Sarah Diekman** – Slow start, trouble with notes especially on call

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Exhibit
11
S. Diekman 6/17/2020

**CCC Primary Reviewers Meeting**
**12/17/14, 3-5pm**
**MOB #3242**

**Attendees:** Drs. Hobbs, Suryadevara, Averbuch, Merlo, Holbert, Thornton via phone, and Terry Lemesh

# Reviews:

**Diekman:**
Out the month of December for Medical Leave (POTS/Dysautonomia)
Dr. Hobbs met with her and relayed that she needs to improve her health and should be on medical leave.
VA Last 3 years:
       Dr. Thornton: She cannot function as a PGY-1.
       Nightfloat: she has "no hitters" Staff avoid calling her.  She would show-up but not see patient.
       Sign-outs not up to par
       Writing notes without seeing patients.
       Pre-writes H&P's
       No ability to teach students
       Inpatient Pharmacists found it painful to have her on service.
Drs. Bruijnzeel and Hobbs gave her a clinical skills exam. She performed when called to task.
Dr. Holbert: Her clinic presentations are disorganized, her medical knowledge is low and she wanders when presenting.
Her Notes:
       Drs. Hobbs, Fayad, and Ginory met with her and her notes improved some.
       San worked with her, some improvement.
       Dr. Suryadevara: she is way behind with her notes.
Questions:
       Did her medical school make accommodations for her?
       Should we make accommodations for her?
Not meeting expectations. Med school was Indiana University, which has high standards.
When she returns:
       Attending needs to document if there are deficiencies.
       January she starts night float.  January possible part time?  Alternate weeks or months?

1

**CCC Meeting**
**3/18/15 1-2pm**
**MOB 3242**

**Attendees:**
Faculty: Drs. Hobbs, Merlo, Ginory, Holbert, Suryadevara (conference call), Rahmani, J. Brown. Averbuch-Tardy
Admin: Dorothy and Terry

**Resident Concerns:**
**Sarah Diekman, MD** – Often appears anxious on rotations or in the clinic; seems to have an inability to focus; has difficulty in obtaining accurate information, is substantially late on notes and discharge summaries.  She is struggling with outpatient clinic performance and patient transfers.  Her difficulties seem to be escalating as multiple reports of problems are surfacing.

- Several nurses have relayed issues.
- A chief resident reported delinquent summaries and rotation problems on the BSU.
- At the VA, the VA Chief of Staff reported inappropriate copy/paste.
- A Patient Safety Officer reported an issue that delinquent notes resulted in a problem with follow-up care.

Committee members noted that Dr. Diekman did not seem to show the remorse or accept responsibility that would normally be expected of a resident.

Plan of Action:
Her medical condition could be an underlying factor.  Consider changing to .5FTE
Begin pre-probation process
Delay outpatient clinic assignment for 1 year.



**CCC Meeting**
June 3, 2015
5-7pm, MOB Room 3242 (Video conf to BI)


**Attendees:**
Drs. Hobbs, Averbuch, Merlo, Suryadevara, Brown (Jody), Rahmani, Tandon (BI) and
Thornton (BI).
Admin: Dorothy McCallister, Terry Lemesh

**Resident Concerns:**

**Sarah Diekman, MD**
Dr. Averbuch: Being assigned as primary reviewer, he has been given both written and verbal
feedback on Sara Diekman's performance. He asked if it was ok to incorporate both types of
information into the milestone review. Dr. Hobbs reiterated that it is fine to incorporate the
verbal information but that all verbal transfers should be put into writing and e-mailed to her
for placement into the resident's performance file or the information has to be documented in
New Innovations via rotation evaluations, semi-annual evaluations, or milestone evaluations.
This provides both written information and documents the timeline of occurrences and
conveyance.  Concerns have been voiced to Dr. Averbuch by Drs. Fayad, Suryadevara, and
Holbert. He indicated that Dr. Holbert is hesitant to staff with Dr. Diekman, due to clear
instances of missed and inadequate information. In a rotation evaluation, Dr. Leo Rodriguez
stated he was concerned about Dr. Diekman's ability to follow instructions.

Dr. Suryadevara indicated she had worked with Dr. Diekman during her PGY-1. She
acknowledged that during that time, although she had noticed deficiencies, she had attributed
it to the normal progression of a weaker intern getting settled into rotations. Dr. Suryadevara
said that Dr. Diekman is currently working on her service and while there has not been
enough time to get a good feel for her performance, Dr. Diekman seems to be a reluctant
worker, relaying that she had carried over six charts that should have been completed on the
day before. She has heard of concerns from VA faculty about patient safety and will be
closely monitoring patient notes and orders. She cited a recent copy/paste directly from Dr.
Welch's (an attending's) notes.

Drs.Tandon and Thornton have been on the verge of recommending that something should
be done to prevent Dr. Diekman from working on VA services. They believe there have been
sufficient problems to the extent that someone needs to take action to keep her from patient
care. Dr. Thornton relayed that on VA Consults, Dr. Diekman was unable to clearly present a
case, and she made multiple mistakes, and would confuse one patient with another. Her
instances of copy/paste of patient notes was so egregious that it went to the level of Chief of
Staff, who required immediate action for Dr. Diekman to correct the charts and be given
remediation. Drs. Tandon and Thornton state a main concern stems from Dr. Diekman's
errors being so totally random that her every item of documentation should be thoroughly
reviewed.

Dr. Hobbs relayed that Drs. Ginory and Fayad had difficulty with Dr. Diekman's performance
on their consult service at the beginning of the year and had provided feedback along with Dr.
Hobbs to her on some of the issues discussed above.  While on the consult service, she

seemed not to know the patients even on not busy days (even when she was only required to follow 1 patient), and there were issues of copy/paste.

Dr. Tandon stated that while there were rumors of impairment, there was no specific information on hand to know how to proceed with possible limitations or if she had a medical issue that could make it not safe for her to be making clinical decisions. He feels the program should have more direction on how to adjust her activities and make accommodations. Given the nature of concerns, whether it is prudent for the program to continue her privileges on any patient-related service whether it is inpatient, consults or in the outpatient clinic. All of these issues need to be examined. He discussed that the burden of making this decision should not be solely on the program director.

Dr. Merlo believes that the milestone evaluation questions should be more rotation specific so that specific deficiencies could be addressed. She asked about use of PRN to determine more specific information on Dr. Diekman's condition.

Dr. Hobbs relayed that the decision by the committee to delay Dr. Diekman's outpatient clinic year was an impetus for actions by Dr. Diekman and that there were ongoing discussions with her at College of Medicine and University level, but she could not be more specific. Dr. Diekman became very upset when she learned of the clinic assignment delay during a meeting in late March. The meeting was held to discuss multiple recent problems Dr. Diekman was having. Dr. Hobbs said that each point of discussion was met with an excuse, and that Dr. Diekman countered that everyone was out to get her. In a follow-up meeting, Dr. Diekman was presented with a training plan which she refused to sign. Since that time, Dr. Diekman has had no communication with Dr. Hobbs and seems to be avoiding her. Dr. Hobbs reported Dr. Diekman has shown some improvement since she has been given specific feedback and is aware that her documentation is under consistent review.



# CCC Meeting
## 9/22/15  12-1pm
## MOB and video conference to BI

**Attendees:**
**Faculty:**
Jacqueline Hobbs (Core Program Director)
Robert Averbuch (Core Program APD)
Jody Brown (Child & Adol Fellowship Program Director)
Brian Cooke (Faculty)
Almari Ginory (Core Program APD)
Richard Holbert (Faculty)
Lisa Merlo (Director of Psychotherapy Training)
Mariam Rahmani (C & A Fellowship APD)
Uma Suryadevara (VA Site Director)
Rajiv Tandon (VA Chief of Psychiatry)

**Administration:**
Dorothy McCallister
Terry Lemesh

Resident Concerns:

**Sarah Diekman (PGY-3)**
Sarah was placed on probation in early September.  Terms of probation include a remediation plan. Early indications are that she is not following the guidelines or meeting deadlines as required. Terms include checking in and out daily, pre-rounding on patients, being on time and complete periodic  "note reviews" on clinic patients. Sarah has met with Dr. Bussing and states she plans to go through the grievance process. At this time, the DIO has not received written any communication from her.

Patient safety is the foremost concern by rotation faculty. Although on occasion, Sarah has been able to come up with a reasonable treatment plan, she consistently misses important facts and key details. She is unable to separate what is relevant from irrelevant. Sometimes she totally misses the point. She does not take supervision well or follow directions and has been noted to act against faculty directives on patient care.   On services, she has been given a reduced patient load. Faculty feel she is unable to handle a full patient load and do not trust her to provide safe patient care without complete scrutiny. At this time, Sarah is not permitted to work with medical students. Sarah will be meeting weekly with the PD and APD.  Faculty are encouraged to meet with Sarah in groups so that there is no misunderstanding of conversations.

**CCC Meeting**
**10/27/15  12-1:30pm**
**MOB and video conference to BI**

**Attendees:**
**Faculty:**
Jacqueline Hobbs (Core Program Director)
Robert Averbuch (Core Program APD)
Brian Cooke (Faculty)
Almari Ginory (Core Program APD)
Richard Holbert (Faculty)
Mariam Rahmani (C & A Fellowship APD)
Uma Suryadevara (VA Site Director)

**Administration:**
Dorothy McCallister
Terry Lemesh

Resident Concerns:

**Sarah Diekman, MD (PGY-3)**
Dr. Diekman's performance since probation has been substandard.
Vista rotation recap: Overall, Dr. Diekman's performance is inconsistent. She was able to function at some level; however was unable to carry out all of the duties required of a physician on a Vista rotation. She has been late on discharge summaries, and inconsistent with orders. She would become preoccupied with specific details and while fixated on these details would miss key points. Although there were no identified deficiencies of medical knowledge, she had difficulty translating this knowledge to patient care and her patient care skills were lacking. Her relationship with nursing staff appeared to have improved, but her relationship with peers seemed to have declined.  An instance was noted regarding her failure to follow directives resulting in a delay of care. She failed to follow up with Family Medicine on a patient as instructed and later would not provide an explanation for her omission when questioned about it.

A fellow resident complained regarding Dr. Diekman's behavior on the rotation saying that she passed off her patients to him unnecessarily. He also indicated an instance where she appeared to be sleeping in the call room at mid-day, with door locked, shoes off and EPIC timed out.
Note Reviews: Random note reviews reveal a wide range of quality. One note was excellent and thorough, but most notes are filled will errors, inconsistencies and missing information. Dr. Diekman attributed her note quality variance to her "good days" and "bad days". Probation terms require Dr. Diekman to bring notes to every meeting for review. On occasion, these were provided, but not at every meeting. On scheduled meeting days, Dr. Diekman had called out sick so that meetings had to be rescheduled. Overall, Dr. Diekman has not met the expectations delineated in the probation letter – i.e. she has not completed any clinic note reviews with Dr. Ginory, has missed reading assignment deadlines, and her learning plan was not complete. Arrival notices were received, but many departure notices were missed.  There are other areas of deficiencies as well.

The GME office has been contacted and provided with a letter by Dr. Diekman's attorney alleging that sufficient accommodations were not provided. Both the GME Office and the Program have been sensitive to her accommodation requests. There is no indication that the program has failed to meet or respond to any accommodation requirements.

The CCC Committee must review and address levels of remediation prior to the November meeting. At present, the committee feels Dr. Diekman has not displayed a diligent effort toward remediation, that her attitude is not good and that she continues to be defensive when corrected for shortcomings.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]



**CCC Meeting**
**11/24/15  12-1:00pm**
**MOB and video conference to BI**

**Attendees:**
**Faculty:**
Jacqueline Hobbs (Core Program Director)
Dawn Bruijnzeel (Faculty)—recently added as Dr. Ginory will leave end of February and Dr. Merlo is on parental leave
Brian Cooke (Faculty)
Almari Ginory (Core Program APD)
Richard Holbert (Faculty)
Mariam Rahmani (C & A Fellowship APD)
Uma Suryadevara (Core Program APD; VA Site Director)

**Administration:**
Dorothy McCallister

**Absent:**
Robert Averbuch (Core Program APD)

**Review of Probation Standing for Sarah Diekman, MD (PGY-3)**

Probationary Period:  9/4/15 – 12/4/15?
Probation Options:  Return to Good Standing, Continue Probation for Three Months, or Termination

Review of Rotation Performance:
Vista East (October)—Dr. Holbert's written evaluation from New Innovations was reviewed with the committee
Dr. Diekman continues to miss the big picture when interviewing patients.  She picks up on small and less concerning details and directs her focus on minor issues but disregards the primary factor of concern.  She does not show the ability to assess dangerous patient situations. She misses cues to use precaution even with instructions from multiple treatment team members. There have been complaints regarding her tendency to label patients who present with clear-cut psychiatric issues as being "complicated".  Her obvious failure to recognize problems is most concerning to faculty who describe her as working far below her current level of training.  On the Vista rotation, the attending described there to be a palpable difference in the level of supervision and outright patient care required by him as opposed to other residents at her level. It was necessary to provide much of the treatment plan, determine orders and then follow-up later to make sure she had followed up as she had failed to follow up in some instances.  There were instances of delinquent discharge summaries that were submitted after 48 hours (in violation of policy and terms of her probation).

Vista East (September)—Dr. Werner's written evaluation from New Innovations was reviewed with the committee
This evaluation showed her clearly operating at a level of a junior resident.  She had difficulty applying basic medical knowledge to patient care. On this rotation, there were numerous difficulties with the treatment

team. She showed inconsistencies in patient treatment. There were problems with her failure to follow through and it was constantly necessary to check all of her work.

MHICM (November)—Dr. Yazdanpanah provided 2 e-mails regarding her performance to date. He described her as professional in her interactions. He indicated she gave a decent performance on the rotation.  He encouraged her to work on her organization skills and keeping a schedule for chart documentation. There was an instance reported that when this attending was absent that Dr. Diekman did not follow up or contacting the attending who was covering, Dr. Suryadevara. It was reported to this attending that Dr. Diekman arrived at 8am instead of the required 7:30am, and the MHICM team had to alter their normal schedule. It was also relayed that Dr. Diekman spent several hours chatting with another team member about non-patient related topics and that during this time, patient care needs were not met.

Daily Log
The probation letter required for Dr. Diekman to check-in and check-out by e-mail. Dr. Diekman's check-in rate was fair, but check-out rate was very poor.  She did not always copy the coordinator as instructed. Her many call outs were not factored into the rate.

Daily Readings
To date only one summary has been submitted but was late. The content of this summary seems not to follow the content of the required text material and is difficult to read due to many typos/errors. All of her assignments are at this point delinquent.
Learning Plan
This was not completed.

Patient Notes
The requirement was not met for patient notes to be brought from rotations on a weekly basis. These were only sporadically provided.  Dr. Ginory was not contacted to meet with her to review clinic notes as required despite numerous reminders.  Both rotation and clinic patient notes were filled with inconsistencies, missing information and mistakes, including issues that could affect patient safety. Only one note was well done. Dr. Diekman explained that there was a time factor issue contributing to the quality of her notes, but a review of her clinic schedule showed that she only had a couple of patients each session due to patient cancellations/no-shows; therefore, she should have had ample time to write her notes.

Resident Complaints
There were complaints by a resident of patient/work "dumping" by Dr. Diekman. There were also complaints by a night float resident, nursing, and confirmed by another resident that Dr. Diekman was not answering her pager at Vista.

Weekly Meetings
Meetings and make-up meetings after call-outs had to be initiated by the Program Director.

Committee Comments:
She is operating at the same sub-par level as pre-probation. Patient safety is a primary concern. She cannot perform at a level required of a resident assigned to the continuous outpatient clinic experience, even after extra experience on the wards. She requires full-time monitoring. She does not recognize the nuances of patient behavior. Safety is also a factor for her in that she could be hurt by a patient due to her inability to recognize danger.

Committee Findings:

The committee dismissed her claims of poor performance on increased scrutiny. It was determined Dr. Diekman has not been proactive in remediating her probation.  She has not met the requirements of her probation.  The committee unanimously voted for termination. There were no dissenting votes.

Addendum:

It should be noted that within 1 hour of this meeting, Dr. Diekman was seeing a patient in the outpatient clinic who was very agitated and required a Baker Act. During the evaluation of the patient, Dr. Hobbs noted that the patient made several remarks about how Dr. Diekman had kept her back to the patient the entire time of the interview and only focused on the computer, displaying an uncaring attitude. This likely contributed to further agitation of the patient.



**College of Medicine**
Department of Psychiatry
Residency Training Program

PO Box 100256
Gainesville, FL 32610-0256
(352) 294-4945
(352) 594-1818 (fax)

December 4, 2015

Sarah Diekman, MD
PGY-3 Psychiatry Resident
PO Box 100256

Re: Decision regarding your probation

CCC members:
Jacqueline Hobbs, MD, PhD (Vice Chair and Core Program Director)
Robert Averbuch, MD (Core Program Associate Program Director)
Jody Brown, MD (Child and Adolescent Fellowship Program Director)
Dawn Bruijnzeel, MD (Faculty)
Brian Cooke, MD (Faculty)
Almari Ginory, DO (Core Program Associate Program Director)
Richard Holbert, MD (Faculty)
Lisa Merlo, PhD (Director Psychotherapy Training)
Mariam Rahmani, MD (Child and Adolescent Fellowship Associate Program Director)
Uma Suryadevara (Core Program Associate Program Director; VA Site Director)
Rajiv Tandon, MD (Vice Chair and VA Service Chief)

The Clinical Competency Committee (CCC) met monthly during your probationary period to review your performance. Written and verbal evaluations from faculty, chiefs, peers, and other staff (such as nurses or administrative) were considered.

The CCC discussed the remediation plan that was outlined in your probation letter. Below are the findings of the committee:

**Develop an individualized learning plan (ILP):**
- **Address each of the milestones (PROF1.1/A, PROF2.1.3/B, PROF2.2.3/C, PC1.1.1/A, PC1.1.2/B, PC1.2.1/A, PC1.3.2/A, PC2.1.1/A, PC2.1.2/A, PC2.2.1/A, PC3.1.1/A, PC5.1.1/A, PC5.2.1/A, ICS2.1.1/A, MK2.2.1/A, MK5.1.1/A) in need of improvement. Do this after reviewing the specific language of the milestones, assessing your current level of functioning, specifying the next "steps" to be achieved in each milestone over the course of your probation, and outlining specific actions to achieve those milestone goals. This learning plan must be developed in collaboration with Dr. Hobbs and**

EXHIBIT 4

UF/Diekman 000120

**an associate program director(s) and submitted in final form to us, in writing, by September 18, 2015.**

- o *You made some initial efforts on your ILP on 9/30/15, but your compliance with this component was deficient in terms of completion and time as it was neither completed by the due date nor as of 11/29/15.*

- **Review the expectations that were reviewed with all residents and that all residents signed at the beginning of this academic year. You will be held to these standards, unless superseded by this document.**

- o *Not discussed (this was considered up to you to complete on your own).*

**Patient care:**
- **Follow all attending/senior resident/chief instructions/recommendations and document all appropriate information in a timely manner as appropriate to the rotation and task. If there is any doubt about what a suitable turnaround time would be, then you must clarify with the appropriate supervisor. Tardiness in your work due to misunderstandings of expectations is not acceptable; it is up to you to seek clarification. Any delays in your work must be immediately cleared with the faculty member.**

- o *The main concern that faculty have with your performance is continued inconsistency. Faculty feel that they must supervise every aspect of your work. There is a lack of trust that you will complete all patient care tasks as instructed and in a timely fashion. They feel that they must follow behind you and ensure work is done, correct errors, or even complete work that was assigned to you. For example, there were orders that you did not complete on patients or that needed correction by the attending in the inpatient setting. There were also consultations that you did not follow up on as expected. Therefore, the level of supervision for you is greater than that expected of a mid-to-late-year intern; this is not what is expected of an approximately mid-year third-year resident. The faculty are not seeing you take graded and progressively greater responsibility for patient care; therefore, they do not see you having the ability to enter the unsupervised practice of medicine/psychiatry even with the current time remaining in your training.*

  - ▪ *"I have sent numerous emails and discussed this resident at length with the residency training director and the chief residents. She is a lovely person, but there are issues with her ability to function at the level she is at. The largest issue is that she does not follow through on things that she asked to do. This then requires everyone else to check up behind her." (from September 2015 inpatient attending evaluation)*

- o *Faculty have noted that you are often unaccountable to accepting feedback and inflexible in your thinking. You also at times cannot properly assess patients and*

*adjust your interaction with them. For example, on inpatient in October, you were noted to smile and stare at psychotic patients who were becoming very fixated on you thus increasing their level of agitation. This put you, the team, and the patient at increased danger. On one occasion, you were asked repeatedly by the attending, nursing, and the social worker to leave the unit. It was only after the social worker led you from the unit that you actually left. I discussed this feedback with you, but you still felt you did not understand what you had done wrong.*

o *There was an incident in the early probationary period where you failed to verbally report a possible patient sexual assault to a higher authority for several days. You had documented in the medical record late on a Friday of a long holiday weekend but failed to call your attending. It was only on rounds on Tuesday morning that this was discovered. This led to a delay in mandatory state reporting and investigation. Feedback was documented in writing on 9/08/15. You did subsequently follow up as was requested by the hospital and Dr. Hobbs.*

o *It was noted that in the outpatient clinic, the presentation that you give of the patient frequently does not match what the attending sees on their evaluation. It gives the perception that you have either a very limited or a pre-conceived view of the patient that limits your ability to see the whole picture/overall perspective of what is going on with the patient. It was also noted that you frequently describe patients as "complicated" when there is often only one problem or treatment issue to address resulting in the perception you are unable to accurately assess patients at the level of a PGY 3.*

- **Arrive with enough time to prepare for rounds. The expectation is that you will have adequately reviewed your patients' charts and can answer attending questions on rounds.**

  o *You arrived as expected with some exceptions (see below).*

- **During this 3-month period, you will not work with medical/PA students.**

  o *You complied with this.*

- **Delineate a pre-rounding checklist. This checklist should be submitted to Dr. Hobbs for review and comment by September 8, 2015.**

  o *You completed this assignment, but you were deficient in timeliness as you turned this in on 9/24/15 (>2 weeks late).*

- **You will carry/complete an equivalent workload expected for a PGY-3 resident: up to 12 patients per day.**

  o *It was noted in your October inpatient rotation evaluation that you had "significant difficulty in grasping the acuity and severity of patient presentations".*

o *"She often was giving conflicting messages to families and they would give permission for medications and then immediately retract it when they would speak to nursing. The information on her sign out sheet was often not up to date and accurate. As an example, one patient who is being held for a state hospital bed continues to say that she may go home with her friend first." (from September inpatient attending evaluation)*

- *Dr. Hobbs also reviewed your sign outs early in the probationary period and found significant errors as well. This feedback was given to you on 9/01/15.*

o *There was a Critical Deficiency in Treatment Planning and Management in your inpatient rotation evaluation.*

- *"She has significant difficulty recognizing the acuity and severity of patient presentations in many cases. She often misses the overall presentation of the patient. She, at times, becomes focused on one aspect of the patient which is not pressing at the time thus leading to missing crucial issues with the patient." (from October 2015 inpatient attending evaluation)*

- *"…She has deficiencies in clinical skills. She has great difficulty in seeing the whole picture of patients. She has difficulties identifying dangerous from non dangerous patients. The treatment plans she provided were good at times but not addressing the critical issue(s) at other times. She did not place orders in the chart that we had spoke about on a few occasions." (from October 2015 inpatient attending evaluation)*

  - *Because you have difficulty determining the level of dangerousness of patients or how to interact with these patients appropriately, there is a perception that you are not at the proficiency level expected to manage this population which puts you and the patient in jeopardy not just in the inpatient, but also in any patient care setting. Faculty felt that they had to directly supervise you with some patients because they did not feel your ability to gauge proper patient care is adequate.*

o *There were days on inpatient where your attending asked you to see and familiarize yourself with all patients, yet you would not see some of them. For example, in October (after a PRITE session), your attending reported that he had asked you to see and get to know all 8 patients on the unit one afternoon. You only saw 6 of the 8 and offered no reasonable explanation why you did not see the other 2.*

**Interpersonal and communication skills:**
- **Complete all notes on the day of service. Discharge summaries are due within 48 hours or on the day of discharge if the patient is transferring to a skilled nursing**

UF/Diekman 000123

**facility. Faculty will be checking your notes periodically and will provide feedback regarding the quality of your notes and areas for improvement.**

o *Late outpatient notes during your inpatient rotations.*

▪ *Outpatient notes were late on:*

• *9/21/15 (3 notes)*
• *9/28/15 (2 notes)*
• *10/12/15 (2 notes)*
• *10/19/15 (5 notes)*
• *10/26/15 (5 notes)*
• *11/03/15 (3 notes)*
• *11/10/15 (2 notes)*
• *11/17/15 (2 notes)*

• *This violates the terms of your probation as well as the expectations signed by you (as described above).*

• **There will be random review of your notes done by the program directors to ensure quality and improvement.**

o *This was completed by Drs. Averbuch, Ginory, and Hobbs on a consistent basis.*

o A major concern was a recent finding (11/23/15) that your outpatient new evaluation notes had 3 missing elements that are fundamental requirements: Past Medical History (PMH), Current Medications, and Allergies. This is a patient safety concern. For example, you recorded a systolic blood pressure of 159 on a patient for whom you started Effexor, a medication known to potentially increase systolic blood pressure. There was no documentation of whether the patient had any history of hypertension, any plan for monitoring, or the rationale for choice of Effexor in the context of hypertension. This was discussed with you.

o A second major concern is inconsistency in your notes. There were examples of contradictory information in different sections of the same note. This is confusing and could lead to medical errors. You also leave items blank or do not complete sentences or sections at times. This was discussed with you on 10/8/15, 10/14/15, 10/22/15, 10/30/15, 11/17/15, and 11/23/15.

o A third major concern is very frequent typos and syntax errors that make interpretation of content difficult for others. Some of the errors are not at the level of quality that we would want other professionals or our patients to see in the medical record. There is a lack of proofreading of your work prior to signoff. Many examples were discussed with you on 10/8/15, 10/14/15, 11/17/15, and 11/23/15.

- o Another concern is your diagnostic coding. Examples of billing under-coding as well as incorrect code for the diagnosis were noted. Not using DSM-5 diagnoses was noted as well. This was discussed with you on 11/23/15.

- **Review at least 1 note per week on Wednesday afternoon directly with Dr. Hobbs or her designee. It will be your responsibility to print the note and give it to Dr. Hobbs or her designee. Over the course of a one-month rotation, you should provide at least 1 H&P, 1 subsequent/progress note (if applicable to service), 1 discharge summary (if applicable to service), and 1 discharge instruction (if applicable to service) for review. In addition, you will review at least 1 clinic note per week with Dr. Ginory. All notes should be hand signed as reviewed and turned into Dr. Hobbs. Absolutely no "cutting and pasting" will be tolerated.**

  - o *Your compliance with this was deficient in terms of completion and time.*

    - ▪ *You brought me a discharge instruction note to review on 9/24/15.*

    - ▪ *You brought me an inpatient H&P (new eval) to review on 10/08/15.*

    - ▪ *You brought me an inpatient H&P (new eval) to review on 10/14/15.*

    - ▪ *No further notes were provided to me for review as required on a weekly basis during the probationary period.*

    - ▪ *You never asked Dr. Ginory to review your clinic notes despite being reminded on 9/15/15 and 9/30/15 to do so.*

    - ▪ *Copy/paste was much reduced, but there were still examples where lack of proper editing could have led to errors and confusion. In one note, you copied a very large block of information from another note that was deemed inappropriate. This was discussed with you on 11/17/15.*

**Medical knowledge:**
- **Maintain a score no lower than the 30th percentile on both sections (Psychiatry and Neurology) of the PRITE.**

  - o *Scores were not available at this time.*

  - o *It was noted that in general you have a basic medical knowledge and can handle uncomplicated patients in uncomplicated situations. However, it was noted on evaluation that:*

    - ▪ *"She has difficulty with demonstrating the application of her basic medical knowledge in clinical practice." (from inpatient attending evaluation)*

- **By November 30, 2015, complete a guided reading, as assigned by Dr. Hobbs. This reading will consist of several assignments from the 11th edition of Kaplan and Sadock *Synopsis of Psychiatry*. If you do not have this book, please**

**purchase it with your book allowance. Tracking of your progress will be via New Innovations Checklist/Journal assignment.**

- *The following were your reading assignments and due dates:*

    - *Book: Kaplan&Sadock Synopsis of Psychiatry, 11th ed.*

    - *pp. 396-398, Treatment of panic disorder, due October 14, 2015*

        - *Your compliance with this was deficient in terms of completion and time.*

        - *As of 12/03/15, this was not completed (>7 weeks late)*

    - *pp. 697-704, Delirium, due October 28, 2015*

        - *Your compliance with this was deficient in terms of time because you completed it on 11/16/15 (3.5 weeks late).*

        - *Your summary contained several errors in terms of typos/syntax which made it difficult to read and truly evaluate the quality of the information summarized.*

    - *pp. 630-632, Alcohol withdrawal/Delirium (stop at Alcohol-induced persisting dementia), due November 4, 2015*

        - *Your compliance with this was deficient in terms of completion and time.*

        - *As of 12/03/15, this was not completed (>4 weeks late).*

    - *pp. 1026-1027, Quetiapine (Seroquel), due November 11, 2015*

        - *Your compliance with this was deficient in terms of completion and time.*

        - *As of 12/03/15, this was not completed (>3 weeks late).*

    - *pp. 993-994, Mirtazepine (Remeron), due November 18, 2015*

        - *Your compliance with this was deficient in terms of completion and time.*

        - *As of 12/03/15, this was not completed (>2 weeks late).*

    - *pp. 358-359, DSM-5 Diagnostic Criteria for Bipolar I Disorder, due November 30, 2015*

        - *Your compliance with this was deficient in terms of time because you completed it on 12/01/15 (1 day late).*

- *It was difficult to understand your sense of priority/time management for completion of your remediation plan, particularly the above readings. This gives the perception that you were spending some time on catching up on some of the readings that were assigned much earlier in the academic year or some that were assigned more recently for all residents. It is unclear why you would not focus on the requirements of your probation letter first, especially after several reminders to review your letter/plan (reminders given in weekly meetings on 9/15/15, 10/22/15, and 11/23/15). No explanation was provided to why you did not complete this task.*

  - *Example: You completed the reading on verbal de-escalation (assigned 9/3/2015) on 11/16/15.*

**Professionalism**
- **Reporting instructions:**

  - **Sept: Vista East—Arrive to work by 6:30 AM; leave no earlier than 5 PM.**

    - *Inconsistent performance: you complied with the arrival time required by the attending. Because you did not comply consistently with checking out with your attending or your daily checkout with Dr. Hobbs/Ms. McCallister, it is difficult to determine your compliance with the 5 PM requirement.*

  - **Oct:  Visit East—Arrive to work by 6:30 AM; leave no earlier than 5 PM.**

    - *Inconsistent performance: you complied with the arrival time required by the attending. Because you did not comply consistently with checking out with your attending or your daily checkout with Dr. Hobbs/Ms. McCallister, it is difficult to determine your compliance with the 5 PM requirement.*

  - **Nov: VA ER—Arrive to work by 8 AM and leave no earlier than 8 PM.**

    - *After discussion and agreement by you, your rotation was switched to the VA MHICM. It was noted by treatment team members that you arrived later than required at times, and this caused the team to be late for travel to off-site/start of their day.*

  - **Send an e-mail to Dr. Hobbs (with copy to Dorothy McCallister) when you arrive in the hospital and when you depart from the hospital.**

    - *Your compliance with this was deficient.*

      - *Arrival check-in compliance: 70%*

      - *Departure check-out compliance: 27%*

      - You had to be reminded to copy Ms. McCallister.

- o **Check in/out with your attending or senior team member each day.**

  - ▪ *Faculty members of the CCC reported that this did not occur on a regular basis.*

  - ▪ *"I have asked Dr. Diekman to call and sign out with me on a daily basis prior to leaving. She did not call yesterday. She called today at 2:00pm staying that she was signing out because she had lecture. As we ran the list, it became apparent that the only thing she had done since we finished rounding at 9AM this morning was to leave a message for one patient's family and update her sign out sheet (which still contains errors). She attempted at times to present information the social worker had garnered as information she had obtained. It was only when she was questioned as to why she did not write a note about speaking to the FACT team that she acknowledged that she had not. When I questioned her with regards to what she had been doing for the past 4 hours she stated that she was getting ready for a meeting with Dr. Bussing this afternoon. When I asked what it was that she had to prepare for this meeting that took up so much of her time, she stated it was confidential and that she would relay to Dr. Bussing that I had a concern. I am again expressing my concern that having her on the unit with an attending who will be new to the inpatient service starting on Monday is not an advisable plan. He will be focused on his responsibilities and not able to provide enough supervision to know what she should be doing or is doing. I believe this is placing the patients and the new attending at risk." (feedback provided by e-mail from inpatient attending on 9/16/15)*

- o **If you leave early or come late, you will communicate your absences via email and take the appropriate vacation, or sick leave.**

  - ▪ *You complied with communicating your absences during this period. You called out >5 days during your probationary period.*

    - • 9/09/15 call out for day

    - • *9/23/15 call out for day (this was a weekly meeting day with the Program Directors)*

    - • *10/05/15 (Monday) call out for day*

    - • *10/20/15 call out for day (this was a weekly meeting day with the Program Directors)*

    - • *10/27/15 call out for 3-5 PM (this was a weekly meeting day with the Program Directors)*

    - • *11/09/15 (Monday) call out for day*

- *11/13/15 call out for 11 AM-12 PM sick leave*

- *11/23/15 call out for ? hours sick leave (no leave form so exact time not known)*

- *11/24/15 call out for ? hours sick leave (no leave form so exact time not known)*

- *These were communicated by e-mail.*

- *You are frequently late by weeks to months on turning in your leave slips and doctor's notes. Multiple reminders have been given by Ms. McCallister, Program Coordinator.*

- **Maintain a professional demeanor and attitude with all faculty, peers, staff, and students. Minimize distractions and side conversations during clinical and teaching rounds. Faculty, peer, and 360 degree evaluations will be monitored for lapses.**

  o *"She does not instill confidence in any of her treatment team members including nurses, social work and utilization review as well as the other physicians." (from September inpatient attending evaluation)*

  o *Resident peer evaluations over the last 5 months revealed concerns in the following areas (rating scale: 1=Poor, 2=Fair, 3=Good, 4=Very Good, 5=Excellent):*

    ▪ *Works effectively with others as a member of a health care team—83% of those who completed evaluations of you rated you as poor to fair (the two lowest possible scores).*

    ▪ *Demonstrates a commitment to ethical principles—half of those who completed evaluations of you rated you as fair.*

    ▪ *Demonstrates an investigatory and analytic thinking approach to clinical situations—about one-third of those who completed evaluations of you rated you as fair.*

    ▪ *Locates, appraises, and assimilates evidence from scientific studies related to their patient's problems—about one-third of those who completed evaluations of you rated you as fair.*

    ▪ *Uses information technology to manage information, access on-line medical information, and support their own education—At least 1 peer resident rated you as fair.*

    ▪ *Creates and sustains a therapeutic relationship with patients—At least 1 peer resident rated you as fair.*

- ▪ *Demonstrates sensitivity and responsiveness to patients' culture, age, gender, and disabilities—at least 1 peer resident rated you as fair.*

  o *Peer residents and nurses also noted that you sometimes did not return phone calls/pages or complete work that should have been covered by you during the afternoons on inpatient. This happened on at least 3 occasions that were reported to me.*

  o *It was reported by a MHICM (November rotation) team member that you spent a significant amount of time (hours) talking with another team member about non-patient-related topics instead of attending to patient care issues.*

- **Maintain respect for all patients. Patient complaints as well as faculty and 360 degree evaluations will be monitored for lapses.**

  o *See above resident peer evaluations.*

**In addition to the above, you will meet with Dr. Hobbs (and an associate program director) weekly.**

- *You complied with this requirement.*

**You will be responsible for scheduling these meetings (contact Dr. Hobbs) and should have dates for the next 3 months confirmed no later than September 8, 2015.**

- *You did not comply with this requirement. You did not take responsibility for scheduling these meetings as required in your probation letter, when meetings were missed due to calling out for duty, Dr. Hobbs initiated all meeting times and rescheduling.*

**During these meetings, we will review and assess your ongoing professional performance and your overall progress. These meetings will assist you in meeting the expectations of your probation, assist in developing your skills in self-assessment and facilitate the successful completion of probation and progression to graduation from residency. Progress in the above competency areas will be measured by verbal and written feedback received by Dr. Hobbs from program faculty, chiefs, other peers, and staff.**

- ▪ *You did engage in the process of reviewing your notes, and were largely receptive to feedback. However, it was felt that your performance is neither proactive in these meetings nor in meeting the terms of your probation letter/remediation plan.*

**At the next regularly scheduled meeting of the CCC in December 2015, the committee will evaluate your progress. One of three actions will follow from that meeting:**
- **With significant improvement in your performance, you will be returned to good standing in the program and the probationary period will end.**

- With some improvement in your performance, but not to where you should be for a PGY-3 resident, the probationary period may be continued for another 3 months (January-March).

  o If your probationary period is continued for an additional 3 months, you must regain good standing by the regular meeting of the committee in March. Failure to do so will result in dismissal from the training program here at the University of Florida.

- If, during the probationary period, you fail to improve your performance or your performance worsens, you will be dismissed from the Psychiatry training program here at the University of Florida.

The CCC determined at its final meeting of your probationary period that your performance did not improve significantly, and you failed to meet the majority of the requirements of your remediation plan. Therefore, the CCC unanimously agreed to your dismissal from the University of Florida Psychiatry training program.

As with any adverse action, you have the right to appeal this decision of the Clinical Competency Committee and the Program Director. I am enclosing a copy of the appropriate procedure (Grievance procedure) to appeal this decision. Briefly, your first appeal is to the Department Interim Chair (Dr. Bussing). If the decision is upheld, the next appeal would be to Dr. Lisa Dixon, our Associate Dean for Graduate Medical Education. If she upholds the decision, the next appeal would be to Dr. Michael Good, College of Medicine Dean. His decision is final.

Sincerely,

*Jacqueline A. Hobbs*

Jacqueline A. Hobbs, MD, PhD, DFAPA
Vice Chair for Education
Residency Program Director

I have received a copy of this memorandum and understand its contents.  My signature does not mean that I concur with its contents. I have also received a copy of the University of Florida College of Medicine Grievance Procedures that I may use to appeal this probation.

_____

Sarah Diekman, MD
Resident in Psychiatry

UF/Diekman 000131

# CCC Meeting
## 12/10/15
## MOB and video conference to BI

**Attendees:**
**Faculty:**
Jacqueline Hobbs (Core Program Director)
Robert Averbuch (Core Program APD)
Jody Brown (Child & Adol Fellowship PD)
Dawn Bruijnzeel (Faculty)—recently added as Dr. Ginory will leave end of February and Dr. Merlo is on parental leave
Brian Cooke (Faculty)
Almari Ginory (Core Program APD)
Richard Holbert (Faculty)
Mariam Rahmani (C & A Fellowship APD)
Uma Suryadevara (Core Program APD; VA Site Director)
Rajiv Tandon (Faculty)
Herbert Ward (Faculty)

**Administration:**
Terry Lemesh
Dorothy McCallister

### <u>Milestone Rating Meeting</u>

Advance review of resident portfolios by primary and secondary reviewers along with preliminary ratings entered prior to each meeting continue to provide a more efficient means of establishing a baseline for residents.  Each resident's portfolio and progress will be further reviewed by the PD to determine if more information is needed for the committee and if the ratings are in line with evaluation materials contained in the file.  Reviewers are reminded to read and note all of the attached documents in the resident's folder to have a broader performance overview. Example 1 – Medical Student Evaluations provide ratings and comments that would be applied to the teaching milestone. Comments from the evaluation should be summarized in the milestones comments section. Example 2 – Clinical Skills Exams can provide quite a bit of information for use in patient care milestones and can help in identifying proficiency levels. Interpersonal skills information may also be obtained in the Clinical Skills Exam. All reviewers can add notes into each milestone assessment. Secondary reviewers should identify their comments. If there is a comment by the first reviewer, secondary reviewers should skip a line and then identify that it is a second reviewer comment.

Several reviewers had questions regarding score computations as some of the whole numbers they had entered translated to fractions on the form. They also noticed that peer reviews seemed to have inflated numbers compared to faculty rotation evaluations and committee ratings.

**Sarah Diekman:** Termination proceedings for Dr. Diekman have been hampered by her recently reported injury and subsequent worker's compensation claim. Since the committee decision to terminate following probation, two additional complaints about Dr. Diekman have been filed by clinic patients. These will be incorporated into the termination letter.

# CCC Meeting
# 2/9/16
# MOB and video conference to BI

**Attendees:**
**Faculty:**
Jacqueline Hobbs (Core Program Director)
Dawn Bruijnzeel (Faculty)
Brian Cooke (Faculty)
Richard Holbert (Faculty)
Lisa Merlo (Faculty)
Uma Suryadevara (Core Program APD; VA Site Director)
Herbert Ward (Faculty)

Almari Ginory (Core Program APD) Submitted Input

**Administration:**
Terry Lemesh
Dorothy McCallister

**Individual Resident Reviews:**

**Sarah Diekman Update:** Sarah Diekman' s termination was upheld by the department chair and the institutional DIO. Her appeal is at the Dean of the College of Medicine level. The decision will be made soon and will be final. All requests for information by or pertaining to Dr. Diekman should be directed to the UF General Counsel.

[redacted]

[redacted]

[redacted]

