# Exhibit 13



**College of Medicine**
Department of Psychiatry
Residency Training Program

PO Box 100256
Gainesville, FL 32610-0256
(352) 294-4945
(352) 594-1818 (fax)

December 4, 2015

Sarah Diekman, MD
PGY-3 Psychiatry Resident
PO Box 100256

Re: Decision regarding your probation

CCC members:
Jacqueline Hobbs, MD, PhD (Vice Chair and Core Program Director)
Robert Averbuch, MD (Core Program Associate Program Director)
Jody Brown, MD (Child and Adolescent Fellowship Program Director)
Dawn Bruijnzeel, MD (Faculty)
Brian Cooke, MD (Faculty)
Almari Ginory, DO (Core Program Associate Program Director)
Richard Holbert, MD (Faculty)
Lisa Merlo, PhD (Director Psychotherapy Training)
Mariam Rahmani, MD (Child and Adolescent Fellowship Associate Program Director)
Uma Suryadevara (Core Program Associate Program Director; VA Site Director)
Rajiv Tandon, MD (Vice Chair and VA Service Chief)

The Clinical Competency Committee (CCC) met monthly during your probationary period to review your performance. Written and verbal evaluations from faculty, chiefs, peers, and other staff (such as nurses or administrative) were considered.

The CCC discussed the remediation plan that was outlined in your probation letter. Below are the findings of the committee:

**Develop an individualized learning plan (ILP):**
- **Address each of the milestones (PROF1.1/A, PROF2.1.3/B, PROF2.2.3/C, PC1.1.1/A, PC1.1.2/B, PC1.2.1/A, PC1.3.2/A, PC2.1.1/A, PC2.1.2/A, PC2.2.1/A, PC3.1.1/A, PC5.1.1/A, PC5.2.1/A, ICS2.1.1/A, MK2.2.1/A, MK5.1.1/A) in need of improvement. Do this after reviewing the specific language of the milestones, assessing your current level of functioning, specifying the next "steps" to be achieved in each milestone over the course of your probation, and outlining specific actions to achieve those milestone goals. This learning plan must be developed in collaboration with Dr. Hobbs and**

*The Foundation for The Gator Nation*
An Equal Opportunity Institution

Exhibit 12
S. Diekman 6/17/2020

EXHIBIT 4

UF/Diekman 000120

- **an associate program director(s) and submitted in final form to us, in writing, by September 18, 2015.**
    - *You made some initial efforts on your ILP on 9/30/15, but your compliance with this component was deficient in terms of completion and time as it was neither completed by the due date nor as of 11/29/15.*

- **Review the expectations that were reviewed with all residents and that all residents signed at the beginning of this academic year. You will be held to these standards, unless superseded by this document.**
    - *Not discussed (this was considered up to you to complete on your own).*

**Patient care:**
- **Follow all attending/senior resident/chief instructions/recommendations and document all appropriate information in a timely manner as appropriate to the rotation and task. If there is any doubt about what a suitable turnaround time would be, then you must clarify with the appropriate supervisor. Tardiness in your work due to misunderstandings of expectations is not acceptable; it is up to you to seek clarification. Any delays in your work must be immediately cleared with the faculty member.**
    - *The main concern that faculty have with your performance is continued inconsistency. Faculty feel that they must supervise every aspect of your work. There is a lack of trust that you will complete all patient care tasks as instructed and in a timely fashion. They feel that they must follow behind you and ensure work is done, correct errors, or even complete work that was assigned to you. For example, there were orders that you did not complete on patients or that needed correction by the attending in the inpatient setting. There were also consultations that you did not follow up on as expected. Therefore, the level of supervision for you is greater than that expected of a mid-to-late-year intern; this is not what is expected of an approximately mid-year third-year resident. The faculty are not seeing you take graded and progressively greater responsibility for patient care; therefore, they do not see you having the ability to enter the unsupervised practice of medicine/psychiatry even with the current time remaining in your training.*
        - *"I have sent numerous emails and discussed this resident at length with the residency training director and the chief residents. She is a lovely person, but there are issues with her ability to function at the level she is at. The largest issue is that she does not follow through on things that she asked to do. This then requires everyone else to check up behind her." (from September 2015 inpatient attending evaluation)*
    - *Faculty have noted that you are often unaccountable to accepting feedback and inflexible in your thinking. You also at times cannot properly assess patients and*

- - *adjust your interaction with them. For example, on inpatient in October, you were noted to smile and stare at psychotic patients who were becoming very fixated on you thus increasing their level of agitation. This put you, the team, and the patient at increased danger. On one occasion, you were asked repeatedly by the attending, nursing, and the social worker to leave the unit. It was only after the social worker led you from the unit that you actually left. I discussed this feedback with you, but you still felt you did not understand what you had done wrong.*

  - *There was an incident in the early probationary period where you failed to verbally report a possible patient sexual assault to a higher authority for several days. You had documented in the medical record late on a Friday of a long holiday weekend but failed to call your attending. It was only on rounds on Tuesday morning that this was discovered. This led to a delay in mandatory state reporting and investigation. Feedback was documented in writing on 9/08/15. You did subsequently follow up as was requested by the hospital and Dr. Hobbs.*

  - *It was noted that in the outpatient clinic, the presentation that you give of the patient frequently does not match what the attending sees on their evaluation. It gives the perception that you have either a very limited or a pre-conceived view of the patient that limits your ability to see the whole picture/overall perspective of what is going on with the patient. It was also noted that you frequently describe patients as "complicated" when there is often only one problem or treatment issue to address resulting in the perception you are unable to accurately assess patients at the level of a PGY 3.*

- **Arrive with enough time to prepare for rounds. The expectation is that you will have adequately reviewed your patients' charts and can answer attending questions on rounds.**

  - *You arrived as expected with some exceptions (see below).*

- **During this 3-month period, you will not work with medical/PA students.**

  - *You complied with this.*

- **Delineate a pre-rounding checklist. This checklist should be submitted to Dr. Hobbs for review and comment by September 8, 2015.**

  - *You completed this assignment, but you were deficient in timeliness as you turned this in on 9/24/15 (>2 weeks late).*

- **You will carry/complete an equivalent workload expected for a PGY-3 resident: up to 12 patients per day.**

  - *It was noted in your October inpatient rotation evaluation that you had "significant difficulty in grasping the acuity and severity of patient presentations".*

- o *"She often was giving conflicting messages to families and they would give permission for medications and then immediately retract it when they would speak to nursing. The information on her sign out sheet was often not up to date and accurate. As an example, one patient who is being held for a state hospital bed continues to say that she may go home with her friend first." (from September inpatient attending evaluation)*
    - *Dr. Hobbs also reviewed your sign outs early in the probationary period and found significant errors as well. This feedback was given to you on 9/01/15.*
- o *There was a Critical Deficiency in Treatment Planning and Management in your inpatient rotation evaluation.*
    - *"She has significant difficulty recognizing the acuity and severity of patient presentations in many cases. She often misses the overall presentation of the patient. She, at times, becomes focused on one aspect of the patient which is not pressing at the time thus leading to missing crucial issues with the patient." (from October 2015 inpatient attending evaluation)*
    - *"…She has deficiencies in clinical skills. She has great difficulty in seeing the whole picture of patients. She has difficulties identifying dangerous from non dangerous patients. The treatment plans she provided were good at times but not addressing the critical issue(s) at other times. She did not place orders in the chart that we had spoke about on a few occasions." (from October 2015 inpatient attending evaluation)*
        - *Because you have difficulty determining the level of dangerousness of patients or how to interact with these patients appropriately, there is a perception that you are not at the proficiency level expected to manage this population which puts you and the patient in jeopardy not just in the inpatient, but also in any patient care setting. Faculty felt that they had to directly supervise you with some patients because they did not feel your ability to gauge proper patient care is adequate.*
- o *There were days on inpatient where your attending asked you to see and familiarize yourself with all patients, yet you would not see some of them. For example, in October (after a PRITE session), your attending reported that he had asked you to see and get to know all 8 patients on the unit one afternoon. You only saw 6 of the 8 and offered no reasonable explanation why you did not see the other 2.*

**Interpersonal and communication skills:**
- **Complete all notes on the day of service. Discharge summaries are due within 48 hours or on the day of discharge if the patient is transferring to a skilled nursing**

**facility. Faculty will be checking your notes periodically and will provide feedback regarding the quality of your notes and areas for improvement.**

- *Late outpatient notes during your inpatient rotations.*
  - *Outpatient notes were late on:*
    - *9/21/15 (3 notes)*
    - *9/28/15 (2 notes)*
    - *10/12/15 (2 notes)*
    - *10/19/15 (5 notes)*
    - *10/26/15 (5 notes)*
    - *11/03/15 (3 notes)*
    - *11/10/15 (2 notes)*
    - *11/17/15 (2 notes)*
  - *This violates the terms of your probation as well as the expectations signed by you (as described above).*

- **There will be random review of your notes done by the program directors to ensure quality and improvement.**
  - *This was completed by Drs. Averbuch, Ginory, and Hobbs on a consistent basis.*
  - *A major concern was a recent finding (11/23/15) that your outpatient new evaluation notes had 3 missing elements that are fundamental requirements: Past Medical History (PMH), Current Medications, and Allergies. This is a patient safety concern. For example, you recorded a systolic blood pressure of 159 on a patient for whom you started Effexor, a medication known to potentially increase systolic blood pressure. There was no documentation of whether the patient had any history of hypertension, any plan for monitoring, or the rationale for choice of Effexor in the context of hypertension. This was discussed with you.*
  - *A second major concern is inconsistency in your notes. There were examples of contradictory information in different sections of the same note. This is confusing and could lead to medical errors. You also leave items blank or do not complete sentences or sections at times. This was discussed with you on 10/8/15, 10/14/15, 10/22/15, 10/30/15, 11/17/15, and 11/23/15.*
  - *A third major concern is very frequent typos and syntax errors that make interpretation of content difficult for others. Some of the errors are not at the level of quality that we would want other professionals or our patients to see in the medical record. There is a lack of proofreading of your work prior to signoff. Many examples were discussed with you on 10/8/15, 10/14/15, 11/17/15, and 11/23/15.*

- o Another concern is your diagnostic coding. Examples of billing under-coding as well as incorrect code for the diagnosis were noted. Not using DSM-5 diagnoses was noted as well. This was discussed with you on 11/23/15.

- **Review at least 1 note per week on Wednesday afternoon directly with Dr. Hobbs or her designee. It will be your responsibility to print the note and give it to Dr. Hobbs or her designee. Over the course of a one-month rotation, you should provide at least 1 H&P, 1 subsequent/progress note (if applicable to service), 1 discharge summary (if applicable to service), and 1 discharge instruction (if applicable to service) for review. In addition, you will review at least 1 clinic note per week with Dr. Ginory. All notes should be hand signed as reviewed and turned into Dr. Hobbs. Absolutely no "cutting and pasting" will be tolerated.**

    - o *Your compliance with this was deficient in terms of completion and time.*
        - *You brought me a discharge instruction note to review on 9/24/15.*
        - *You brought me an inpatient H&P (new eval) to review on 10/08/15.*
        - *You brought me an inpatient H&P (new eval) to review on 10/14/15.*
        - *No further notes were provided to me for review as required on a weekly basis during the probationary period.*
        - *You never asked Dr. Ginory to review your clinic notes despite being reminded on 9/15/15 and 9/30/15 to do so.*
        - *Copy/paste was much reduced, but there were still examples where lack of proper editing could have led to errors and confusion. In one note, you copied a very large block of information from another note that was deemed inappropriate. This was discussed with you on 11/17/15.*

**Medical knowledge:**
- **Maintain a score no lower than the 30th percentile on both sections (Psychiatry and Neurology) of the PRITE.**
    - o *Scores were not available at this time.*
    - o *It was noted that in general you have a basic medical knowledge and can handle uncomplicated patients in uncomplicated situations. However, it was noted on evaluation that:*
        - *"She has difficulty with demonstrating the application of her basic medical knowledge in clinical practice." (from inpatient attending evaluation)*

- **By November 30, 2015, complete a guided reading, as assigned by Dr. Hobbs. This reading will consist of several assignments from the 11th edition of Kaplan and Sadock *Synopsis of Psychiatry*. If you do not have this book, please**

**purchase it with your book allowance. Tracking of your progress will be via New Innovations Checklist/Journal assignment.**

- *The following were your reading assignments and due dates:*
    - *Book: Kaplan&Sadock Synopsis of Psychiatry, 11th ed.*
    - *pp. 396-398, Treatment of panic disorder, due October 14, 2015*
        - *Your compliance with this was deficient in terms of completion and time.*
        - *As of 12/03/15, this was not completed (>7 weeks late)*
    - *pp. 697-704, Delirium, due October 28, 2015*
        - *Your compliance with this was deficient in terms of time because you completed it on 11/16/15 (3.5 weeks late).*
        - *Your summary contained several errors in terms of typos/syntax which made it difficult to read and truly evaluate the quality of the information summarized.*
    - *pp. 630-632, Alcohol withdrawal/Delirium (stop at Alcohol-induced persisting dementia), due November 4, 2015*
        - *Your compliance with this was deficient in terms of completion and time.*
        - *As of 12/03/15, this was not completed (>4 weeks late).*
    - *pp. 1026-1027, Quetiapine (Seroquel), due November 11, 2015*
        - *Your compliance with this was deficient in terms of completion and time.*
        - *As of 12/03/15, this was not completed (>3 weeks late).*
    - *pp. 993-994, Mirtazepine (Remeron), due November 18, 2015*
        - *Your compliance with this was deficient in terms of completion and time.*
        - *As of 12/03/15, this was not completed (>2 weeks late).*
    - *pp. 358-359, DSM-5 Diagnostic Criteria for Bipolar I Disorder, due November 30, 2015*
        - *Your compliance with this was deficient in terms of time because you completed it on 12/01/15 (1 day late).*

- - *It was difficult to understand your sense of priority/time management for completion of your remediation plan, particularly the above readings. This gives the perception that you were spending some time on catching up on some of the readings that were assigned much earlier in the academic year or some that were assigned more recently for all residents. It is unclear why you would not focus on the requirements of your probation letter first, especially after several reminders to review your letter/plan (reminders given in weekly meetings on 9/15/15, 10/22/15, and 11/23/15). No explanation was provided to why you did not complete this task.*
    - *Example: You completed the reading on verbal de-escalation (assigned 9/3/2015) on 11/16/15.*

**Professionalism**
- **Reporting instructions:**
    - **Sept: Vista East—Arrive to work by 6:30 AM; leave no earlier than 5 PM.**
        - *Inconsistent performance: you complied with the arrival time required by the attending. Because you did not comply consistently with checking out with your attending or your daily checkout with Dr. Hobbs/Ms. McCallister, it is difficult to determine your compliance with the 5 PM requirement.*
    - **Oct:  Visit East—Arrive to work by 6:30 AM; leave no earlier than 5 PM.**
        - *Inconsistent performance: you complied with the arrival time required by the attending. Because you did not comply consistently with checking out with your attending or your daily checkout with Dr. Hobbs/Ms. McCallister, it is difficult to determine your compliance with the 5 PM requirement.*
    - **Nov: VA ER—Arrive to work by 8 AM and leave no earlier than 8 PM.**
        - *After discussion and agreement by you, your rotation was switched to the VA MHICM. It was noted by treatment team members that you arrived later than required at times, and this caused the team to be late for travel to off-site/start of their day.*
    - **Send an e-mail to Dr. Hobbs (with copy to Dorothy McCallister) when you arrive in the hospital and when you depart from the hospital.**
        - *Your compliance with this was deficient.*
            - *Arrival check-in compliance: 70%*
            - *Departure check-out compliance: 27%*
            - You had to be reminded to copy Ms. McCallister.

- o **Check in/out with your attending or senior team member each day.**

    - *Faculty members of the CCC reported that this did not occur on a regular basis.*

    - *"I have asked Dr. Diekman to call and sign out with me on a daily basis prior to leaving. She did not call yesterday. She called today at 2:00pm staying that she was signing out because she had lecture. As we ran the list, it became apparent that the only thing she had done since we finished rounding at 9AM this morning was to leave a message for one patient's family and update her sign out sheet (which still contains errors). She attempted at times to present information the social worker had garnered as information she had obtained. It was only when she was questioned as to why she did not write a note about speaking to the FACT team that she acknowledged that she had not. When I questioned her with regards to what she had been doing for the past 4 hours she stated that she was getting ready for a meeting with Dr. Bussing this afternoon. When I asked what it was that she had to prepare for this meeting that took up so much of her time, she stated it was confidential and that she would relay to Dr. Bussing that I had a concern. I am again expressing my concern that having her on the unit with an attending who will be new to the inpatient service starting on Monday is not an advisable plan. He will be focused on his responsibilities and not able to provide enough supervision to know what she should be doing or is doing. I believe this is placing the patients and the new attending at risk." (feedback provided by e-mail from inpatient attending on 9/16/15)*

- o **If you leave early or come late, you will communicate your absences via email and take the appropriate vacation, or sick leave.**

    - *You complied with communicating your absences during this period. You called out >5 days during your probationary period.*

        - 9/09/15 call out for day

        - *9/23/15 call out for day (this was a weekly meeting day with the Program Directors)*

        - *10/05/15 (Monday) call out for day*

        - *10/20/15 call out for day (this was a weekly meeting day with the Program Directors)*

        - *10/27/15 call out for 3-5 PM (this was a weekly meeting day with the Program Directors)*

        - *11/09/15 (Monday) call out for day*

- *11/13/15 call out for 11 AM-12 PM sick leave*
- *11/23/15 call out for ? hours sick leave (no leave form so exact time not known)*
- *11/24/15 call out for ? hours sick leave (no leave form so exact time not known)*
- *These were communicated by e-mail.*
- *You are frequently late by weeks to months on turning in your leave slips and doctor's notes. Multiple reminders have been given by Ms. McCallister, Program Coordinator.*

- **Maintain a professional demeanor and attitude with all faculty, peers, staff, and students. Minimize distractions and side conversations during clinical and teaching rounds. Faculty, peer, and 360 degree evaluations will be monitored for lapses.**
    - *"She does not instill confidence in any of her treatment team members including nurses, social work and utilization review as well as the other physicians." (from September inpatient attending evaluation)*
    - *Resident peer evaluations over the last 5 months revealed concerns in the following areas (rating scale: 1=Poor, 2=Fair, 3=Good, 4=Very Good, 5=Excellent):*
        - *Works effectively with others as a member of a health care team—83% of those who completed evaluations of you rated you as poor to fair (the two lowest possible scores).*
        - *Demonstrates a commitment to ethical principles—half of those who completed evaluations of you rated you as fair.*
        - *Demonstrates an investigatory and analytic thinking approach to clinical situations—about one-third of those who completed evaluations of you rated you as fair.*
        - *Locates, appraises, and assimilates evidence from scientific studies related to their patient's problems—about one-third of those who completed evaluations of you rated you as fair.*
        - *Uses information technology to manage information, access on-line medical information, and support their own education—At least 1 peer resident rated you as fair.*
        - *Creates and sustains a therapeutic relationship with patients—At least 1 peer resident rated you as fair.*

- - - *Demonstrates sensitivity and responsiveness to patients' culture, age, gender, and disabilities—at least 1 peer resident rated you as fair.*
  - *Peer residents and nurses also noted that you sometimes did not return phone calls/pages or complete work that should have been covered by you during the afternoons on inpatient. This happened on at least 3 occasions that were reported to me.*
  - *It was reported by a MHICM (November rotation) team member that you spent a significant amount of time (hours) talking with another team member about non-patient-related topics instead of attending to patient care issues.*
- **Maintain respect for all patients. Patient complaints as well as faculty and 360 degree evaluations will be monitored for lapses.**
  - *See above resident peer evaluations.*

**In addition to the above, you will meet with Dr. Hobbs (and an associate program director) weekly.**

- *You complied with this requirement.*

**You will be responsible for scheduling these meetings (contact Dr. Hobbs) and should have dates for the next 3 months confirmed no later than September 8, 2015.**

- *You did not comply with this requirement. You did not take responsibility for scheduling these meetings as required in your probation letter, when meetings were missed due to calling out for duty, Dr. Hobbs initiated all meeting times and rescheduling.*

**During these meetings, we will review and assess your ongoing professional performance and your overall progress. These meetings will assist you in meeting the expectations of your probation, assist in developing your skills in self-assessment and facilitate the successful completion of probation and progression to graduation from residency. Progress in the above competency areas will be measured by verbal and written feedback received by Dr. Hobbs from program faculty, chiefs, other peers, and staff.**

- *You did engage in the process of reviewing your notes, and were largely receptive to feedback. However, it was felt that your performance is neither proactive in these meetings nor in meeting the terms of your probation letter/remediation plan.*

**At the next regularly scheduled meeting of the CCC in December 2015, the committee will evaluate your progress. One of three actions will follow from that meeting:**
- **With significant improvement in your performance, you will be returned to good standing in the program and the probationary period will end.**

- With some improvement in your performance, but not to where you should be for a PGY-3 resident, the probationary period may be continued for another 3 months (January-March).
    - If your probationary period is continued for an additional 3 months, you must regain good standing by the regular meeting of the committee in March. Failure to do so will result in dismissal from the training program here at the University of Florida.
- If, during the probationary period, you fail to improve your performance or your performance worsens, you will be dismissed from the Psychiatry training program here at the University of Florida.

The CCC determined at its final meeting of your probationary period that your performance did not improve significantly, and you failed to meet the majority of the requirements of your remediation plan. Therefore, the CCC unanimously agreed to your dismissal from the University of Florida Psychiatry training program.

As with any adverse action, you have the right to appeal this decision of the Clinical Competency Committee and the Program Director. I am enclosing a copy of the appropriate procedure (Grievance procedure) to appeal this decision. Briefly, your first appeal is to the Department Interim Chair (Dr. Bussing). If the decision is upheld, the next appeal would be to Dr. Lisa Dixon, our Associate Dean for Graduate Medical Education. If she upholds the decision, the next appeal would be to Dr. Michael Good, College of Medicine Dean. His decision is final.

Sincerely,

*Jacqueline A. Hobbs*

Jacqueline A. Hobbs, MD, PhD, DFAPA
Vice Chair for Education
Residency Program Director


I have received a copy of this memorandum and understand its contents. My signature does not mean that I concur with its contents. I have also received a copy of the University of Florida College of Medicine Grievance Procedures that I may use to appeal this probation.

_____
Sarah Diekman, MD
Resident in Psychiatry