# Exhibit 32

## **DECLARATION OF DR. REGINA BUSSING**

I am Dr. Regina Bussing, a citizen and resident of Alachua County, Florida, over the age of 18. I am competent to testify to the facts below and do so from personal knowledge and under penalty of perjury.

1. I am the Chair for the University of Florida ("UF") College of Medicine Department of Psychiatry.

2. I served as the Interim Chair of the UF College of Medicine Department of Psychiatry from 2014 to 2016. I moved from the Interim Chair to the Chair in May 2016.

3. I am also a professor in the Division of Child and Adolescent Psychiatry at the UF College of Medicine.

4. I supervise Dr. Jacqueline Hobbs ("Dr. Hobbs') who is the Residency Program Director.

5. Residency programs are difficult and require many hours of work to hone a resident's skills so that the resident can grow to provide patient care effectively and safely.

6. Residents and attendings are constantly dealing with very difficult and stressful medical situations concerning their patients.

7. Generally, the safety of physicians and patients is of the primary importance.

8. The UF College of Medicine had a policy that outlined the essential functions of its residency programs. It states that, "In general, individuals must have abilities and skills in five categories: observations, communication, motor, intellectual, behavioral and social."

9. The policy describes, under "Behavioral and Social Attributes," that: "Candidates must be able to tolerate physically taxing workloads and to function effectively under stress. They must be able to adapt to changing environments, to display flexibility, and learn to function in the face of uncertainties inherent in the clinical problems of many patients."

10. Residents are afforded greater degrees of independence in patient care as they gain more experience, progress in the program and master the competencies and skills necessary for advancement.

11. While serving as Interim Chair, I came to know Dr. Sarah Diekman ("Dr. Diekman").

12. I was not aware of any parking accommodation concerns by Dr. Diekman. I also never heard anyone else in the UF Department of Psychiatry speak about Dr. Diekman's parking accommodation concerns.

13. Dr. Diekman requested a month of paid leave for December 2014 because she could not perform her duties as a resident due to her health. I granted the leave.

14. I was aware that Dr. Diekman requested accommodations in April 2015.

15. I was aware of Plaintiff's significant performance issues as she was placed on pre-probation, probation for three months, and was ultimately dismissed from the program by the Clinical Competency Committee (CCC) in December 2015.

16. Following Dr. Diekman's dismissal from the program by unanimous vote of the CCC, she appealed the decision to me in compliance with University of Florida Regulations.

17. I reviewed the documents regarding Dr. Diekman's dismissal including the dismissal letter issued by Dr. Hobbs following the decision of the CCC.

18. At the beginning of Dr. Diekman's probation, specific performance goals were set for Dr. Diekman by the CCC and Dr. Hobbs. The probationary goals underwent thorough review and were determined to be reasonable and fair by Dr. Hobbs and the CCC.

19. The performance goals provided to Dr. Diekman included five major areas, namely (1) development of an individualized learning plan, (2) patient care, (3) interpersonal and communication skills, (4) medical knowledge and (5) professionalism. Each major goal was

delineated into multiple concrete sub-goals The CCC identified clear deficiencies in all but a few sub-goals.

20. Furthermore, I also reviewed Dr. Diekman's accommodation requests from April 2015 and November 2015. I reviewed documentation connected with those requests. I reviewed the accommodations provided to Dr. Diekman following her requests. I also found the Dr. Diekman had failed to sign her accommodations agreement related to her accommodations request from November 13, 2015. Dr. Diekman was required to sign the accommodations agreement for that set of accommodations to be put into place.

21. Nonetheless, I found that there was no evidence that the psychiatry program neglected to meet the agreed upon accommodations for Dr. Diekman. Instead, timely responses to Dr. Diekman's accommodations requests were provided and reasonable accommodations were made for Dr. Diekman. In her appeal letter to me, Dr. Diekman made several other unsubstantiated allegations and accusations about various faculty members including Dr. Hobbs. However, I found no evidence to support any of Dr. Diekman's allegations.

22. In my interactions with Dr. Hobbs as her supervisor, I have found her to be professional and caring for her residents, students and patients.

23. Throughout the period in which I worked with Dr. Diekman, I did not witness or see evidence of anything I perceived as discrimination against Dr. Diekman due to her sex or her disability.

24. I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 27th day of August, 2020.

Dr. Regina Bussing

{00382329 1}                                            3