# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SARAH DIEKMAN,
an individual

     Plaintiff,                         CASE NO: 1:19-cv-00227-AW-GRJ

v.

UNIVERSITY OF FLORIDA
a Florida municipal corporation,

     Defendant.

_____/

## AFFIDAVIT OF SARAH DIEKMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF Maryland

COUNTY OF Baltimore City

     BEFORE ME, the undersigned authority, personally appeared SARAH DIEKMAN, who being duly sworn, deposes and says:

     1.     I am over the age of eighteen (18) years old, I make this affidavit based upon my own personal knowledge of the facts attested to herein.

     2.     I have an undergraduate degree from Purdue University, a Master's in Biology from Purdue University, a M.D. from the Indiana University and a J.D. from FAMU.

     3.     When I was first employed at the University of Florida, I requested a handicapped parking space for my disability.  I was given a handicapped parking space which was further away from my work than my employee parking space.

     4.     I informed Dr. Jacqueline Hobbs, the residency training director for the psychiatry program of my difficulties getting adequate handicapped parking.  I was informed by Dr. Hobbs

00482050.DOCX

that the parking issue was my responsibility and there would be no exceptions or alterations in my work environment or schedule. I was told no accommodation would be made for the effect the long walks in the heat would have on my disability.

5.       I filed three (3) charges of discrimination with the EEOC.

6.       The first Charge was discrimination based on disability and was filed on November 12, 2015. I stated that I am a qualified individual with a disability. I requested and have been denied a reasonable accommodation. Following my request for accommodation I have been subjected to unwarranted discipline and increased supervision.

7.       The second Charge of Discrimination was based on sex discrimination, disability and retaliation and was filed on May 18, 2016, (Attached as Exhibit A)

8.       On May 19, 2016, I contacted EEOC Investigator Mario Raul Hernandez to notify him I had sent my May 18, 2016 Form 5. (Composite email Attached as Exhibit B)

9.       On May 31, 2016 at 12:36 p.m., I contacted Investigator Hernandez to make sure he had received my forms and I asked him to affirm the same. (Exhibit B)

10.      On May 31, 2016 at 2:12 p.m., I received a response from Investigator Hernandez stating that he did receive the images of the signed Form 5. He further stated: "Our records show that all of the requested documents are in the file. The file also shows that your complaint was timely, and our Agency has jurisdiction over the issues raised." (Exhibit B)

11.      The third Charge of Discrimination was based on sex discrimination, disability and retaliation and was filed on May 14, 2018 and referenced that it was also filed on May 18, 2016. I stated in part that I am a qualified person with a disability. (UF/Diekman 000017-18)

12.      As stated in my second and third charges of discrimination, I am a qualified individual with a disability. I have the medical condition Postural Orthostatic Tachycardic

Syndrome (POTS) and two learning disorders: reading disorder (DSMIV) commonly known as dyslexia and ADHD attention deficit disorder.

13.     POTS' is triggered by environmental factors and symptoms include fatigue, diminished concentration, headache, lightheadedness, syncope, nausea, fluctuating temperatures and heart palpitations.

14.     POTS is exacerbated and triggered by environmental factors including heat, time of day, dehydration, sleep deprivation, posture and prandial status.

15.     When I was hired by the University of Florida, I was informed in my welcome letter from the Office of Human Resources that my "employment with the university" was a significant factor in the University's overall success.

16.     I signed an employment contract with the University of Florida, which defined my work responsibilities.

17.     The University of Florida paid me a salary, paid employment taxes and paid me retirement benefits throughout my employment.

18.     I was notified by the University Office of Human Resources upon my hiring, that my "employment with the university is a significant factor in our overall success".

19.     As an employee I was required to perform clinical duties resulting in billing of patients. Generating revenue was emphasized as a significant responsibility for residents.

20.     The Defendant, in my termination letter referenced my failure to bill and make the Defendant a sufficient amount of revenue.

21.     While an employee at the University of Florida, I requested and was denied reasonable accommodations.

22.     I am familiar was the program requirements for PGY 1, PGY 2, PGY 3 and PGY 4 for general psychiatry at the University of Florida Department of Psychiatry.

23.     I am also familiar with the Guidelines for Technical Standards for Residency Training.

24.     At the time I was an employee at the University of Florida, I could perform the essential functions of the PGY 1, PGY 2, PGY 3, and PGY 4 graduate medical education program and meet the guidelines for technical standards for residency training with reasonable accommodations.

25.     As of July 1, 2015, I had completed all of my on call requirements the same as all third and fourth year residents.

26.     During the summer months of 2014, the heat and not being provided an adequate parking space caused me to experience either symptoms of my POTS. In some instances, I was forced to choose illegal parking which resulted in citations or risk causing a POTS flare-up.

27.     I was forced to choose between receiving parking tickets, my health and/or retaliation for calling sick from my supervisor Dr. Hobbs.

28.     Dr. Hobbs told me to stop complaining about my parking situation and acquire a team player attitude.

29.     I contacted the University of Florida Legal Department and secured an adequate parking spot.

30.     Dr. Hobbs told me I should not have gone outside the Department to obtain my handicapped parking spot. That I had made a "mistake".

31.     Dr. Hobbs assigned chief residents to deal with my "poor attitude".

32.     Dr. Hobbs told me that she alone was to control my work environment.

00482050.DOCX

33.     Shortly after I had contacted the University of Florida Legal Department concerning my parking spot, I was subjected to an hour-long discussion on attitude improvement by Chief resident Dr. Chang. I was forced to stand for the entire discussion despite informing Dr. Chang that I needed to sit because of my medical condition. Dr. Chang informed me if I sat down, he would bring a professionalism complaint against me in front of the Clinical Competency Committee (CCC). I feared for my career and the incident triggered a POTS's symptoms. I requested to leave work, but Dr. Chang stated if I did he would file a professionalism complaint against me.

34.     Toward the end of 2014, Dr. Chang sent an email to all residents stating that calling in sick would be considered a professionalism violation and reported to the CCC.

35.     In order to protect myself from my supervisor's discriminatory actions, I filed an internal ADA grievance.

36.     I was instructed by Dr. Ken Osfield, the ADA coordinator to advocate for myself with Dr. Hobbs. I was told by Dr. Hobbs to deal with the ADA office. This back and forth continued for a while causing me significant stress.

37.     In frustration, I contacted Dr. Regina Bussing, the department chair and Dr. Lisa Dixon, the designated institutional officer, both of them directed me back to Dr. Hobbs.

38.     I did not receive any poor reviews until my second year of employment. The poor review came after I made a complaint about a VA attending physician, Dr. Syfert, who intruded into my sleeping area uninvited. I feared I was going to be sexually assaulted. Dr. Syfert had previously made sexually degrading remarks, requests for physical contact and unwanted touching.

39.     I informed Dr. Thornton of what happened, and he responded by saying I reminded him of his ex-wife, and I should learn to get along better with others.

40.     I reported the incident to Drs. Turner and Hobbs.  Dr. Turner stated she had spoken to Dr. Thornton and Dr. Hobbs and no action would be taken but if the situation worsened it might be reported.

41.     A short time later I received a negative review from Dr. Thornton.

42.     I reported this retaliation to Dr. Lisa Dixon who had me interviewed by University H.R. personnel who told me that this would not happen to other residents.

43.     Following a complaint, I made to Dr. Hobbs about Dr. Chang making mistakes in my schedule which lead to some health issues for me, Dr. Hobbs told me that if I could not do everything that is asked of me without getting sick, then I should take a leave of absence until I can return and perform all required duties unimpeded which she clarified to mean anything the chief residents wanted me to do.

44.     If I was given the reasonable accommodations that I requested, fixed schedule, the ability to attend doctor's appointments and time to take my medications, I could keep my health issues in check.  I notified my supervisors of these needs throughout my employment.

45.     I filed a form for reasonable accommodations on March 31, 2015.  I requested a modified fix schedule and adequate notification if my schedule needed to be changed.  Despite assurances that my requests would be met.  My supervisors violated all aspects of the agreed reasonable accommodation after the first month. Dr. Osfield made Dr. Hobbs accommodate me for the month of March, then Hobbs retaliated after being made to comply per the disability office. They refused any accommodation beyond the immediate month.

46.     I was forced to seek a written request for a reasonable accommodation because if I called out sick, I was punished by the Chief resident or Dr. Hobbs.

47.     On May 5, 2015, I filed a complaint with the accrediting body, AGCME addressing program violations in education, safety and retaliation by the University of Florida.

48.     Dr. Dixon became aware that I had filed the anonymous complaint and I received a cryptic email from Dr. Dixon.  I was terrified and therefore withdrew the complaint.  Dr. Dixon conducted an internal investigation.  In Dr. Dixon's findings, she reported that residents felt they were being retaliated for bringing issues to the administration.

49.     In May of 2015, I filed an internal ADA grievance stating that I was being harassed and retaliated against for seeking an accommodation.

50.     On May 28, 2015, a meeting is held between Dr. Osfield, Dr. Averbuch and Dr. Hobbs and they refuse the majority of my accommodation requests.

51.     In June and July of 2015, I continued to complain that the failure to provide my requested reasonable accommodations was affecting my health.  I complained to Dr. Osfield, the ADA officer, Dr. Hobbs program director, Dr. Ginroy assistant program director, Dr. Bussing department chair and Dr. Dixon.  The response was  a plan which Dr. Ginroy, my direct supervisor failed to follow.

52.     I was told that a few days after the meeting, Dr. Hobbs told the attending doctor who was going to be working with me that they should  "keep an eye" on me and help out the team by proving that I was a problem.

53.     In July of 2015, I raised a concern regarding a policy designed to help billing but was potentially dangerous to patients and may have constituted fraud.

54.     If I mentioned to any of my supervisors that I needed to take a break to sit down or take my medication I was told to stop complaining.

55.     On several occasions I was informed that a fixed schedule 8-5 would be approved but it was not adhered to by my supervisors.  I needed a fixed schedule in order to complete mandatory physical therapy, exercise regimen and functional daily routine.

56.     I filed another form for reasonable accommodations on November 12, 2015.  My request was due to a flare-up of my POTS.  My flare-up was as a result of the Defendant's failure to provide the prior reasonable accommodation request, mainly a fixed schedule.  I noted that I was trying to contain potential POTS symptoms of muscle weakness/fatigue, slowed reaction times, diminished attention, concentration, headache, presyncope lightheadedness, syncope, nausea, nub painful extremities and heart palpitations tachycardia.

57.     As a result of my November 12, 2015 request a meeting was held on November 18, 2015 with myself, Dr. Hobbs, Dr. McCallister and Dr. Ken Osfield from the ADA office.

58.     At the November 18, 2015 meeting we discussed my reasonable accommodation requests for a modified fixed schedule 8-5, which was approved by Dr. Hobbs. I requested to limit hospital rounding hours to moderate excessive standing and walking.  A rollator was suggested. Breaks would occur if they fit into my schedule. A stationary chair was requested, and the response was to use the rollator.  An adjustable workstation was requested, no decision was made.  I requested set times to take my medications the response was that this was previously granted but it was never implemented. I requested to avoid working in excessive temperatures, this issue was not resolved. Although the workload would stay the same  the pay would be cut to 70% .

59.     Even though some of my reasonable accommodation requests were granted, generally the result was distain from the program director Dr. Hobbs.

60.     Until my termination of employment on December 4, 2015, I was continually allowed to exam patients and prescribe treatment and medications with indirect supervision on my

own at the same level of supervision as my peers. This definition of indirect supervision is derived by the ACGME.

61.     Despite the agreements to provide me reasonable accommodations at the November 18, 2015 meeting, the University terminated my employment on December 4, 2015.

62.     In May of 2015, I was forced to file an ADA complaint as the terms and conditions of my employment had been changed within thirty (30) days from my request of reasonable accommodations.  The actions of the Clinical Competency Committee (CCC) was in retaliation for me seeking reasonable accommodations. From my request of reasonable accommodation

63.     I was denied attendance at a conference where I was to make a presentation by Dr. Hobbs.  Dr. Hobbs stated that I had used a significant amount of leave as her reason for her denial. All my leave was related to my disability.

64.     I passed all my rotations during my employment at the University of Florida.

65.     I never had to receive additional supervision while on-call.

66.     I was never asked to attend a patient safety meeting.  These meetings are held to assist residents who are a safety risk to patients.

67.     Dr. Hobbs told me if I needed an accommodation then I could never be a psychiatrist.

68.     Dr. Hobbs told me that my disability would preclude my ability from graduating from the University of Florida psychiatry residency.

69.     I was told by Dr. Tonia Werner that Dr. Hobbs instructed her to punish me for "complaining about my disability".

70.     There were several rumors that my illness was a fiction that I created because I was lazy.  I asked Dr. Hobbs to correct these false statements, but she refused.

71.     Dr. Hobbs allowed my schedule to be altered at the last minute resulting in triggering my POTS' symptoms.

72.     In the Spring of 2015, I was told by Dr. Hobbs that I would not be allowed to work in the clinic for taking too many sick days and requesting accommodations.

73.     While on probation I was denied access to lectures and educational materials that my peers received.  Despite not being given the same training I was judged against my better prepared peers.

74.     I informed Dr. Hobbs that as a dyslexic I was an auditory learner and needed to attend lectures, Dr, Hobbs told me I needed to learn to read better.

75.     My second and third year performance scores were lowered after my termination. I recorded my scores before my termination and viewed them after my termination and they were changed.

76.     Dr. Ahmed Qureshi was promoted to chief resident after leaving the consult service in the middle of a shift because there was "too much work". He received support and understanding from Dr. Hobbs and graduated from the program.

FURTHER AFFIANT SAYT NAUGHT

SARAH DIEKMAN

SWORN TO AND SUBSCRIBED before me on the 23rd day of September 2020, by Sarah Diekman, who is personally known to me or has produced a valid driver's license as identification, and who did take an oath.

NOTARY PUBLIC

State of ___Maryland___

My Commission expires:___01/16/2023___

NICHOLE MITCHELL
Notary Public
Baltimore City
Maryland
My Commission Expires Jan 16, 2023

00482050.DOCX

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2015-05065 |
| **Florida Commission On Human Relations** | | and EEOC |
| _State or local Agency, if any_ | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Diekman J. Sarah | (219) 928-3500 | 12-31-1983 |

Street Address     City, State and ZIP Code
**2717 SW 98th Drive, Gainesville, FL 32608**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNIVERSITY OF FLORIDA | 500 or More | (352) 392-2477 |

Street Address     City, State and ZIP Code
**903 West University, Gainesville, FL 32608**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address     City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ xRETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **07-01-2013**   Latest **5-02-2016**
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a qualified individual with a disability. I have the medical condition of Postural Orthostatic Tachycardic Syndrome and two learning disorders: Disorder of reading(DSMIV) and ADHD(DSMIV). I was employed with University of Florida as a Psychiatry Resident Physician on July 1, 2013 and terminated May 2, 2016 and originally filed with EEOC in Sept/Oct 2015. While an employee, I requested and was denied reasonable accommodations. Following my request for an accommodation and later my reporting to EEOC, FCHR and internal grievances, I was subjected to unwarranted discipline, increased supervision, hostile work environment with assault, denied access to medical care after assault, defamation of character including fraud to defame/ harm and psychologic torture. I was denied career/ educational material, resources and opportunity because of my disability. I was fined for using my state handicap parking permit in public stops on campus and I was forced to park farther away from the site than the able bodied employees. I was denied an employee parking pass for failing to comply with these treatment. My supervisor intentionally created conditions to worsen my medical conditions in an effort to retaliate against me for reporting to EEOC, FCHR, and internal channels. My supervisor misrepresented private medical information regarding my disability with my peers, and other employees in attempts to defame my character and retaliate against me. The failure to accommodate resulted in severe physical injury. I was terminated because of my disability, retaliation for reporting(including workman's comp)and my gender. FMLA protected days were specifically listed as reasons for my termination. My former employer **continues** to harass me, including calling job prospects and disclosing protected information about my disability and disclosing that I reported violations to the aforementioned bodies. Because I am female, I was also subjected to sexual harassment by multiple male supervisors which I reported in internal channels. I was retaliated

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>Original 5/18/16<br><br>**5/14/18**<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EXHIBIT 1.A   tabbies

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 510-2015-05065 |

| Florida Commission On Human Relations | and EEOC |
|---|---|
| *State or local Agency, if any* | |

against and increasingly harassed after making these complaints. Because I am a female, I experienced increased work load, less opportunity for promotion/career advancement, defamation of character and hostile work environment. A reduction in pay was a condition of accommodations for me but not for a male with reduced hours for a disability. I was fired before receiving the reduced paycheck. I have been discriminated against because of my disability, in violation of the ADA, the equal pay act & civil rights act of 1964

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| Original 5/18/16 | SIGNATURE OF COMPLAINANT |
| 5/14/18 _____ *(signature)*<br>*Date*    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | FEPA | |
| | X | EEOC | 510-2015-05065 |
| | Florida Commission On Human Relations | | and EEOC |
| | State or local Agency, if any | | |

rights act of 1964

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

5/18/16
Date

Charging Party Signature



## Andrew Salzman

| | |
|---|---|
| **From:** | Sarah Diekman <balancediekman@gmail.com> |
| **Sent:** | Monday, September 14, 2020 1:16 PM |
| **To:** | Andrew Salzman; Christina Poss; jeffery Weisman |
| **Subject:** | Fwd: 510-2015-05065 |

See below

Sent from my iPhone

Begin forwarded message:

> **From:** MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov>
> **Date:** May 31, 2016 at 2:12:40 PM EDT
> **To:** Sarah Diekman <balancediekman@gmail.com>
> **Subject: Re: 510-2015-05065**
>
> Hi Ms. Diekman,
>
> I did receive the images of the Signed form 5 you sent recently.  Our records show that all of the
> requested documents are in the file.  The file also shows that your complaint was timely and our Agency
> has jurisdiction over the issues raised.
>
> I hope this satisfies any concerns you may have had. Have a great day.
>
> Mario Raul Hernandez
> Federal Investigator
> U.S. Equal Employment Opportunity Commission
> Miami Tower
> 100 SE 2nd Street, Suite 1500
> Miami, Florida  33131
> (305) 808-1746 (direct line)
> (305) 808-1758 (fax)
>
>
> >>> Sarah Diekman <balancediekman@gmail.com> 5/31/2016 12:36 PM >>>
> Mr. Hernandez,
>
> I am checking to see that you got my forms via email. Is there anyone I can check with to be sure that
> the paperwork has gotten to the correct place or are you able to affirm it to me? I know the work
> burden of your office is large and I understand I need to wait my turn. It is only time constraints of filing
> complaints that has me worried. If I need to resend something or made a previous error, I want to be
> sure to correct it in time.
>
> Thank you for your time and help,
>
> Take care,
>
> Sarah



EXHIBIT
1.B

1

On Thu, May 19, 2016 at 12:59 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:

I don't usually receive the signed Form 5. It goes straight to processing and forwarded to the Respondent. I recall you mentioning that you sent it in via Certified Mail. If the Postal Service says we received it I assure you it is being processed. If you'd like you can scan and email me a copy and I will forward it to them as well.

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/19/2016 12:55 PM >>>

Thank you for getting back to me so quickly. I am checking to see that you received my updated form

On Thu, May 19, 2016 at 12:54 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:

Hi Ms. Diekman,
Sorry i missed your call, I was on the other line conducting an interview. Is there anything I can help you with?

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/13/2016 11:10 AM >>>
Mario,

Thank you very much for your detailed answers to my questions on the phone the other day. I have sent you back the updated form. I sent it certified mail. It should be there Monday. Please let me know that you received it. I had a problem with the address. I post office could not find a suite 1500 only a 150.

Also, my mother, being the person she is wants to thank you for helping me. Do you have a preferred address where she can send you a card or an e card?

Thank you for your help and consideration,

Sarah Diekman

On Ma 10, 2016, at 11:52 AM, MARIO HERNANDEZ <MARIO.HERNANDEZ@EEOC.GOV> wrote:


Mario Raul Hernandez
Federal Investigator

U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)

<Document_882649.doc>

**Andrew Salzman**

| | |
|---|---|
| **From:** | Sarah Diekman <balancediekman@gmail.com> |
| **Sent:** | Monday, September 14, 2020 1:17 PM |
| **To:** | Christina Poss; Andrew Salzman; jeffery Weisman |
| **Subject:** | Fwd: 510-2015-05065 |

Sent from my iPhone

Begin forwarded message:

> **From:** Sarah Diekman <balancediekman@gmail.com>
> **Date:** June 3, 2016 at 12:38:10 PM EDT
> **To:** Brian Durham <BDurham@unicesalzman.com>
> **Subject: Fwd: 510-2015-05065**

> Brian,

> Here is a forward from the EEOC.  Looks like UF just responded to the latest update to my case.  As you can see below, the letter of representation is lost in translation but seems like when they get that, we should be on tract to see UF's defense letter soon.

> Thank you and happy weekend,

> Sarah

> ---------- Forwarded message ----------
> From: **Sarah Diekman** <balancediekman@gmail.com>
> Date: Fri, Jun 3, 2016 at 12:22 PM
> Subject: Re: 510-2015-05065
> To: MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov>

> Mr. Hernandez,

> Thank you for the information.  I will forward this email to my attorney for the letter of representation.

> Sarah

> On Fri, Jun 3, 2016 at 12:12 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:
>> Ms. Diekman,

>> I reviewed your file and noticed there is no letter of representation or an attorney listed.  Can you forward that information so I can update the file.
>> There is no need for an attorney to request the right to sue for your case, you may do it yourself.   If you are going to request the right to sue you may request the contents of the file once it is closed.

Sending you the position statement now is one of the tools we can use if you were going to provide a rebuttal that would assist with my analysis of the evidence.


Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida  33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)
>>> Sarah Diekman <balancediekman@gmail.com> 6/3/2016 11:39 AM >>>
Mr. Hernandez,

Wow. That is an unexpected answer to my question. Thank you for responding so quickly. My attorney wants to see their response. Is that possible? I believe he wants to read it and then request the right to sue.

Thank you for your time and consideration,

Sarah

On Fri, Jun 3, 2016 at 10:51 AM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:

Ms. Diekman,
As of today the Respondent has already provided a response to your allegations and our request for information. To request the Right to Sue for your case you must make your request in writing and sign the document. Once I receive your request I will forward it with a recommendation to my Supervisor for review and approval.

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 6/3/2016 9:19 AM >>>
Mr. Hernandez,

Thank you again for all of your help and education. Following up our phone conversation, it does seem like the best path for my case will be to get the right to sue letter, without waiting for the lengthy part of EEOC investigation/discovery(sorry if I am phrasing this incorrectly). I have a large amount of evidence in hand and my counsel advises me that after UF files their response to my most recent claim, we will be court ready. Of course, he won't promise me... He wants to see what UF's response before he says for sure.

So to ask my question: At this point, the paperwork is in process, the new complaint will get sent to UF and they will send back their answer. If that is correct, is there any estimate of the time parameters? like months most likely?

Then when UF sends there response, you review it? Is that when you determine if a right to sue can be issued?

Thank you again for your help.
Hope you have a good weekend.
Sarah

On Tue, May 31, 2016 at 2:12 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:
Hi Ms. Diekman,
I did receive the images of the Signed form 5 you sent recently. Our records show that all of the requested documents are in the file. The file also shows that your complaint was timely and our Agency has jurisdiction over the issues raised.
I hope this satisfies any concerns you may have had. Have a great day.

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/31/2016 12:36 PM >>>
Mr. Hernandez,

I am checking to see that you got my forms via email. Is there anyone I can check with to be sure that the paperwork has gotten to the correct place or are you able to affirm it to me? I know the work burden of your office is large and I understand I need to wait my turn. It is only time constraints of filing complaints that has me worried. If I need to resend something or made a previous error, I want to be sure to correct it in time.

Thank you for your time and help,

Take care,

Sarah

On Thu, May 19, 2016 at 12:59 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:
I don't usually receive the signed Form 5. It goes straight to processing and forwarded to the Respondent. I recall you mentioning that you sent it in via Certified Mail. If the Postal Service says we received it I assure you it is being processed. If you'd like you can scan and email me a copy and I will forward it to them as well.

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/19/2016 12:55 PM >>>

Thank you for getting back to me so quickly. I am checking to see that you received my updated form

On Thu, May 19, 2016 at 12:54 PM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:
> Hi Ms. Diekman,
> Sorry i missed your call, I was on the other line conducting an interview. Is there anything I can help you with?
>
> Mario Raul Hernandez
> Federal Investigator
> U.S. Equal Employment Opportunity Commission
> Miami Tower
> 100 SE 2nd Street, Suite 1500
> Miami, Florida 33131
> (305) 808-1746 (direct line)
> (305) 808-1758 (fax)
>
>
> >>> Sarah Diekman <balancediekman@gmail.com> 5/13/2016 11:10 AM >>>
> Mario,
>
> Thank you very much for your detailed answers to my questions on the phone the other day. I have sent you back the updated form. I sent it certified mail. It should be there Monday. Please let me know that you received it. I had a problem with the address. I post office could not find a suite 1500 only a 150.
>
> Also, my mother, being the person she is wants to thank you for helping me. Do you have a preferred address where she can send you a card or an e card?
>
> Thank you for your help and consideration,
>
> Sarah Diekman
>
> On Ma 10, 2016, at 11:52 AM, MARIO HERNANDEZ <MARIO.HERNANDEZ@EEOC.GOV> wrote:
>
>
>         Mario Raul Hernandez
>         Federal Investigator
>         U.S. Equal Employment Opportunity Commission
>         Miami Tower
>         100 SE 2nd Street, Suite 1500
>         Miami, Florida 33131
>         (305) 808-1746 (direct line)
>         (305) 808-1758 (fax)
>         <Document_882649.doc>

**Andrew Salzman**

| | |
|---|---|
| **From:** | Sarah Diekman <balancediekman@gmail.com> |
| **Sent:** | Monday, September 14, 2020 1:21 PM |
| **To:** | Andrew Salzman; Christina Poss; jeffery Weisman |
| **Subject:** | Fwd: 510-2015-05065 |

See below. My understanding is the investigator confirmed receipt of the 2nd complaint & confirmed appropriate jurisdiction.

Sent from my iPhone

Begin forwarded message:

> **From:** Stella Diekman <sdiekman@hotmail.com>
> **Date:** June 2, 2018 at 7:39:04 PM EDT
> **To:** Sarah Diekman <balancediekman@gmail.com>
> **Subject: Fwd: 510-2015-05065**

> Found this in my email

> -------- Original Message --------
> **Subject:** Fwd: 510-2015-05065
> **From:** Sarah Diekman <balancediekman@gmail.com>
> **Sent:** Thursday, July 14, 2016, 1:41 PM
> **To:** Stella Diekman <sdiekman@hotmail.com>
> **CC:**

> Begin forwarded message:

>> **From:** "MARIO HERNANDEZ" <MARIO.HERNANDEZ@EEOC.GOV>
>> **Date:** June 8, 2016 at 9:41:53 AM EDT
>> **To:** "Sarah Diekman" <balancediekman@gmail.com>
>> **Subject: Re: 510-2015-05065**

>> Sarah,

>> I am sorry for the confusion about our process.  I understand how taunting our process must seem especially to Charging Parties who have already been through so much. As an Investigator with the EEOC we have been afforded many tools to effectively investigate charges of discrimination filed with our office.  The use of those tools vary from case to case and we must all prioritize what resources are used to effectively gather evidence used for the analysis and investigation.  The models of proof and what the evidence shows is something I share with Charging Parties after I have reviewed all

1

of the evidence in the file.  Unfortunately there is no set time table on when the analysis will be completed.  I can assure you that based on your allegations and the Respondent's response you have met the timeliness and jurisdiction for our Agency to accept your charge and gather more information.

During several of our previous conversations you have indicated that you intend on requesting the right to sue for your file. You or your attorney may request copies of the investigative file through our Records Disclosure Staff, they will determine what part of the file can be disclosed.  Below I will copy and paste the questions you asked in your previous email with a response to each.  I hope this clarifies any misunderstanding, but if it does not contact your attorney with any additional questions and I will gladly explain it to him/her as well.

*"Has UF already submitted their position statement?"*
**Yes, the Respondent submitted their statement of position in response to the Charge of Discrimination (510-2015-05065) you filed against them.**

*"If they have submitted it, is it possible to see it now or must I first submit the right to sue?"*
**No, there is no requirement to submit a right to sue to request documents from the file, however while the case is open I do not believe a request will be approved. Traditionally after the case has been closed Charging Parties and Respondents request the contents of the file through our Records Disclosure Staff.**

*"I really am confused as to the name of the document that you previously confirmed UF had submitted."*
**I believe the document you are referring to is the Respondent's (UF) response to the allegations of employment discrimination you filed with our Agency, and a response to the Request For Information our Agency made.  We refer to this document as a "Position Statement" or "Statement of Position".**

*"Additionally, the approx amount of time before the EEOC investigation would be able to begin....is that around the 400 day mark?"*
**EEOC has already begun the Investigation of the allegations you filed with our Agency against the Respondent.**

Mario Raul Hernandez
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, Florida  33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)
>>> Sarah Diekman <balancediekman@gmail.com> 6/7/2016 2:07 PM >>>
Mr. Hernandez,

Thank you so much for continuing to answer my questions. I can't imagine the number of times you have to explain this process to people like me, whom are new to this and

under duress (not functioning at 100%). I am deeply appreciative of your patience in the process.

I need to clarify something and I apologize in advance if I repeating myself. Has UF already submitted their position statement? ( I think you previously said they had but I may misunderstand the names of these items.) If they have submitted it, is it possible to see it now or must I first submit the right to sue? ( I really do feel that I may be repeating myself, please don't take this as an attempt to badger you. I really am confused as to the name of the document that you previously confirmed UF had submitted.

Additionally, the approx amount of time before the EEOC investigation would be able to begin....is that around the 400 day mark?

Thank you for your time and patience,

Sarah

On Tue, Jun 7, 2016 at 10:07 AM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:

> Ms. Diekman,
> Yes your attorney has reached out and I updated your file.
>
> Mario Raul Hernandez
> Federal Investigator
> U.S. Equal Employment Opportunity Commission
> Miami Tower
> 100 SE 2nd Street, Suite 1500
> Miami, Florida 33131
> (305) 808-1746 (direct line)
> (305) 808-1758 (fax)
>
>
> >>> Sarah Diekman <balancediekman@gmail.com> 6/7/2016 9:56 AM >>>
> Mr. Hernandez,
>
> My apologies. I had the order of things backwards. Thank you for clarifying. Moving forward, did you get my attorney's notice of representation?
>
> Thank you for your help,
>
> Sarah
>
> On Tue, Jun 7, 2016 at 8:57 AM, MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov> wrote:
>> Ms. Diekman,
>> I was under the impression that you are going to request the right to Sue for your case. If so you can receive a copy of the contents of your investigative file after receiving the right to sue.
>>
>> Mario Raul Hernandez
>> Federal Investigator
>> U.S. Equal Employment Opportunity Commission
>> Miami Tower
>> 100 SE 2nd Street, Suite 1500

Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 6/6/2016 9:24 AM >>>
Mario,

I hope you had a good weekend. The document you were sending me on Friday
seems to have gotten lost in translation. I did not get it.

Take care,
Sarah

## Andrew Salzman

**From:** Sarah Diekman <balancediekman@gmail.com>
**Sent:** Monday, September 14, 2020 1:23 PM
**To:** Andrew Salzman
**Subject:** Re: 510-2015-05065

I don't know about a second reference number. I just sent you another number where he confirms the receipt of the file & jurisdiction. I thought they just updated the file....

Sent from my iPhone

> On Sep 14, 2020, at 1:19 PM, Andrew Salzman <asalzman@unicesalzman.com> wrote:

> Thank you Sarah, we will contact the EEOC again. I note this references the 2015 claim.  There should 2016 reference number.

> **From:** Sarah Diekman <balancediekman@gmail.com>
> **Sent:** Monday, September 14, 2020 1:16 PM
> **To:** Andrew Salzman <asalzman@unicesalzman.com>; Christina Poss <cposs@unicesalzman.com>; jeffery Weisman <jeffery.weisman@gmail.com>
> **Subject:** Fwd: 510-2015-05065

> See below

> Sent from my iPhone

> Begin forwarded message:

>> **From:** MARIO HERNANDEZ <MARIO.HERNANDEZ@eeoc.gov>
>> **Date:** May 31, 2016 at 2:12:40 PM EDT
>> **To:** Sarah Diekman <balancediekman@gmail.com>
>> **Subject: Re:  510-2015-05065**

>> Hi Ms. Diekman,

>> I did receive the images of the Signed form 5 you sent recently.  Our records show that all of the requested documents are in the file.  The file also shows that your complaint was timely and our Agency has jurisdiction over the issues raised.

>> I hope this satisfies any concerns you may have had. Have a great day.

>> Mario Raul Hernandez
>> Federal Investigator
>> U.S. Equal Employment Opportunity Commission
>> Miami Tower
>> 100 SE 2nd Street, Suite 1500

Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/31/2016 12:36 PM >>>
Mr. Hernandez,

I am checking to see that you got my forms via email. Is there anyone I can check with to
be sure that the paperwork has gotten to the correct place or are you able to affirm it to
me? I know the work burden of your office is large and I understand I need to wait my
turn. It is only time constraints of filing complaints that has me worried. If I need to
resend something or made a previous error, I want to be sure to correct it in time.

Thank you for your time and help,

Take care,

Sarah

On Thu, May 19, 2016 at 12:59 PM, MARIO HERNANDEZ
<MARIO.HERNANDEZ@eeoc.gov> wrote:

> I don't usually receive the signed Form 5. It goes straight to processing and forwarded
> to the Respondent. I recall you mentioning that you sent it in via Certified Mail. If the
> Postal Service says we received it I assure you it is being processed. If you'd like you
> can scan and email me a copy and I will forward it to them as well.
>
> Mario Raul Hernandez
> Federal Investigator
> U.S. Equal Employment Opportunity Commission
> Miami Tower
> 100 SE 2nd Street, Suite 1500
> Miami, Florida 33131
> (305) 808-1746 (direct line)
> (305) 808-1758 (fax)
>
>
> >>> Sarah Diekman <balancediekman@gmail.com> 5/19/2016 12:55 PM >>>
>
> Thank you for getting back to me so quickly. I am checking to see that you received
> my updated form
>
>
> On Thu, May 19, 2016 at 12:54 PM, MARIO HERNANDEZ
> <MARIO.HERNANDEZ@eeoc.gov> wrote:

>> Hi Ms. Diekman,
>> Sorry i missed your call, I was on the other line conducting an interview. Is there
>> anything I can help you with?
>>
>> Mario Raul Hernandez
>> Federal Investigator
>> U.S. Equal Employment Opportunity Commission
>> Miami Tower
>> 100 SE 2nd Street, Suite 1500

Miami, Florida 33131
(305) 808-1746 (direct line)
(305) 808-1758 (fax)


>>> Sarah Diekman <balancediekman@gmail.com> 5/13/2016 11:10 AM >>>
Mario,

Thank you very much for your detailed answers to my questions on the phone the
other day. I have sent you back the updated form. I sent it certified mail. It should
be there Monday. Please let me know that you received it. I had a problem with the
address. I post office could not find a suite 1500 only a 150.

Also, my mother, being the person she is wants to thank you for helping me. Do you
have a preferred address where she can send you a card or an e card?

Thank you for your help and consideration,

Sarah Diekman

On Ma 10, 2016, at 11:52 AM, MARIO HERNANDEZ
<MARIO.HERNANDEZ@EEOC.GOV> wrote:


    Mario Raul Hernandez
    Federal Investigator
    U.S. Equal Employment Opportunity Commission
    Miami Tower
    100 SE 2nd Street, Suite 1500
    Miami, Florida 33131
    (305) 808-1746 (direct line)
    (305) 808-1758 (fax)
    <Document_882649.doc>

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2015-05065 |
| | Florida Commission On Human Relations | and EEOC |
| | *State or local Agency, if any* | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Diekman J. Sarah | (219) 928-3500 | 12-31-1983 |

Street Address         City, State and ZIP Code
**2717 SW 98th Drive, Gainesville, FL 32608**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNIVERSITY OF FLORIDA | 500 or More | (352) 392-2477 |

Street Address         City, State and ZIP Code
**903 West University, Gainesville, FL 32608**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address         City, State and ZIP Code

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ xRETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **07-01-2013**   Latest **5-02-2016**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a qualified individual with a disability. I have the medical condition of Postural Orthostatic Tachycardic Syndrome and two learning disorders: Disorder of reading(DSMIV) and ADHD(DSMIV). I was employed with University of Florida as a Psychiatry Resident Physician on July 1, 2013 and terminated May 2, 2016 and originally filed with EEOC in Sept/Oct 2015. While an employee, I requested and was denied reasonable accommodations. Following my request for an accommodation and later my reporting to EEOC, FCHR and internal grievances, I was subjected to unwarranted discipline, increased supervision, hostile work environment with assault, denied access to medical care after assault, defamation of character including fraud to defame/ harm and psychologic torture. I was denied career/ educational material, resources and opportunity because of my disability. I was fired for using my state handicap parking permit in public stops on campus and I was forced to park farther away from the site than the able bodied employees. I was denied an employee parking pass for failing to comply with their treatment. My supervisor intentionally created conditions to worsen my medical conditions in an effort to retaliate against me for reporting to EEOC, FCHR, and internal channels. My supervisor misrepresented private medical information regarding my disability with my peers, and other employees in attempts to defame my character and retaliate against me. The failure to accommodate resulted in severe physical injury. I was terminated because of my disability, retaliation for reporting(including workman's comp) and my gender. FMLA protected days were specifically listed as reasons for my termination. My former employer continues to harass me, including calling job prospects and disclosing protected information about my disability and disclosing that I reported violations to the aforementioned bodies. Because I am female, I was also subjected to sexual harassment by multiple male supervisors which I reported in internal channels. I was retaliated

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>*Original 5/18/16*<br><br>**5/14/18**<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |