# Exhibit 6

**3-31-15 Meeting With Sarah Diekman, MD**

Attendance: Dr. Sarah Diekman, PGY-2; Drs. Jacqueline Hobbs, Program Director; Dr. Robert Averbuch, Associate Program Director; Dr. San Chang, Chief Resident; Dr. Adrienne Eisner, Chief Resident; Ms. Dorothy McCallister, Program Coordinator

The Chief Residents were present for the first portion of the meeting to discuss specific clinical issues/scenarios. The Chiefs were then excused so that the faculty could discuss Dr. Diekman's academic performance/progress to date. Ms. McCallister recorded notes throughout.

Continuing performance difficulties for Dr. Diekman have been noted this year, but a recent number of complaints including the nursing manager/staff have occurred over the last few weeks. A member of the nursing staff stated that she had not encountered such a serious issue with any other resident in her year of working on service. Due to the escalating incidents, Dr. Sarah Diekman was asked to attend a meeting today.

- Vista Medication Error Incident – Dr. Diekman claims Nursing/other resident was responsible for inputting incorrect medication information; she stated she can provide date and time documentation. Dr. Hobbs instructed Dr. Diekman to complete patient safety reports for ANY future medication errors which would not only provide details of the error, but give awareness to help avoid possible recurrences. Dr. Diekman stated she was not familiar with how to complete these, but would learn.

- BSU - Number of Late Discharge Summaries:  Dr. Diekman assumes responsibility for late summaries; but was not aware of seriousness (egs. negative quality indicators, impact on patient care) and will try to do better.  The group discussed ways to self-improve:
    Check EPIC In-Basket regualarly
    Use Asterisk (wild-card) in signature line to avoid accidental signing
The Chief also brought to her Dr. Diekman's attention that she recently admitted a patient on the BSU but did not provide critical background documentation in the chart (past medications), necessitating the faculty member having to do an extensive peer review in order for patient to qualify for insurance payment of admission.

Dr. Diekman stated she believes she made the wrong decision to choose Psychiatry.  She indicated she feels she is not cut out for this type and amount of work.

- Vista/BSU Failure to Order "Suicide Precautions": The BSU nurse manager brought to the program's attention that Dr. Diekman had not been ordering suicide precautions on any patients admitted to the unit this past month. She said this had never been an issue in previous audits and with previous residents. Dr. Diekman indicated that she believed she had been instructed to not order "Suicide Precautions" for Vista patients. She could not recall who gave her these instructions or when they were given, but admitted to not stating them on any of the charts for about 3 months. She was advised to list suicide precautions for all future admissions. Concern about the possibility of failure to remove precautions prior to discharge could be a contributing factor for some not listing this on charts; however, it is in the best interest of patients to take these precautions.



EXHIBIT

UF/Diekman 000067

- Clinic: Evidence of direct cut and paste charting was produced by Dr. Almari Ginory, the Outpatient Clinic Director. In fact, an example of word-for-word copy/paste of an entire intake H&P was provided to Dr. Diekman. The encounters were about 2 weeks apart, and there was not a single change in the note. Dr. Diekman admitted to copy/paste of charts, but explained she did this for lack of knowledge about how to complete chart documentation on therapy patients. Dr. Hobbs indicated this severity of negligence could severely negatively impact patient care as well as billing and compliance. She stressed that this can never happen again. Dr. Diekman admitted to having training sessions on Epic for clinic, but she had struggled to apply the information. Dr. Diekman was instructed to seek guidance from the Outpatient Clinic Chief or Chief Residents whose purpose is to assist residents in the Outpatient Clinic and clinic chart documentation. Dr. Ginory also noted that many charts documented very little or contained incomplete information. She provided examples of charts where this occurred. Dr. Diekman stated several times how she felt overwhelmed in the clinic having experienced difficulty in learning the clinic system. She said she had problems navigating prescriptions, changing co-signers, charting and especially feels the burden on Mondays when the days are busiest, but feels more confident recently and is starting to "get it". However, she also indicated she felt more positive and confident last year over this year. Dr. Diekman asked about charting templates she could use to assist her in this process.

    PGY-3 residents normally complete a 12-month full-time Outpatient Clinic Rotation. Because patient responsibility is so much greater in the clinic year and there is less direct supervision, the Clinical Competency Committee had voiced concern about possible patient safety issues with having Dr. Diekman start clinic this year. With her difficulties in performance, they suggested she continue in hospital rotations and gain experience and improve performance. Dr. Diekman became visibly distressed over the possibility of postponing her clinic rotation. She stated she could not improve until she was able to perform clinic tasks repetitively. She did not seem to grasp that the decision was based on concern over patient care.

- VA Yellow – Complaints regarding little involvement on the rotation service. Dr. Diekman denied this claim. She countered that she felt there was not enough direction from the attending. Dr. Hobbs reminded Dr. Diekman that she should tell her Chiefs and Program Directors if she is not getting sufficient supervision.

- VA Call – The VA Consult Service received a letter from the Chief of Staff Office citing "Inappropriate Copy/Paste in the Medical Record" by Dr. Diekman for two instances of copy and paste. Our office was informed 3/9/15. She was cited for copying the assessment, psychiatric diagnosis, medical diagnosis and psychosocial problems from one patient's record and pasting into another patient's record. She was instructed to report to the VA where she must correct the medical record and be provided specific and documented training on VA policies. This was recently completed (3/17/15).

- Psychiatry Administrative Issues – Dr. Diekman has not entered a single patient log since the start of her residency. Residents are expected to have a minimum of 400 entries annually. While other residents are at various levels of completion, Dr. Diekman has not made a single entry. She is the only resident who as not logged any cases. She made it known to Dr. Hobbs and administrative staff that she did not know how to log her cases into New Innovations. She was given explicit instructions yesterday. She has begun to log her cases. She has been delinquent in

almost all administrative assignments. This includes New Innovations Checklist items that dated back to at least September 2014.

- Evaluations – Statements on Rotation Evaluations indicate Dr. Diekman to be performing below the expected level of training.

On advice of the Clinical Competency Committee, Program and Associate Program Directors, Dr. Diekman was told she will be placed in a Special Observation Status. She will continue as a resident in good standing, but will be given extra supervision and have more available assistance to help her improve. She must turn in all assignments and seek help whenever needed. She must work to improve chart documentation and complete them in a timely fashion. She will be able to use FMLA or any sick leave she needs and the program will work to ensure she has time for her physician appointments and medical needs.

Dr. Diekman states she feels unable to work under a microscope and thinks she is being set up to fail. She does not want to work on inpatient or consult units during the current year. She does not believe the chiefs are available to help her, but that they are trying to look for ways to find fault with her work. She wishes she had been given this opportunity for help last year, but is not sure she wants it now. Drs. Hobbs and Averbuch relayed that the observation status is not punitive in nature, but meant to give her support and help to improve her deficiencies. Other residents in this situation have benefited from the more structured environment and showed great improvement rather than a trajectory toward probation.

Dr. Diekman said she does not want to report to Consults tomorrow and states undue stress has been caused by her reassignment from the VA ER Service (the switch was made due to lessor supervision on the VA ER service). She does not seem to understand that the reassignment was directly related to patient care concerns. She said that she has exerted so much energy in trying to get assistance to find "disabled parking" at UF and in the Employee Relations Office that it has greatly impacted her ability to work. She also stated that she did not feel she could get a favorable letter of recommendation from the program needed to find other employment (she noted at a couple of points in the discussion that she was contemplating quitting the program).

She appeared very distressed, very anxious and said she needed to take time off from service tomorrow. She plans to contact the residency office tomorrow afternoon regarding her decision on whether she can continue in the program under increased supervision.