UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SARAH DIEKMAN,
an individual,

     Plaintiff,

vs.                    Case No:  1:19-cv-00227-AW-GRJ

UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES, AS THE PUBLIC BODY
CORPORATE OF UNIVERSITY OF FLORIDA,
THROUGH ITS COLLEGE OF MEDICINE

     Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Plaintiff, DR. SARAH DIEKMAN ("Plaintiff") by and through her undersigned counsel and files her Response to Defendant's Motion for Summary Judgment and alleges as follows:

## INTRODUCTION

This case stems from Plaintiff's employment as a psychiatric resident physician with the Defendant.  Plaintiff worked for Defendant from July 1, 2013 until her termination on November 24, 2015.  During employment Plaintiff was subjected to discrimination based on her disability and sex.

Plaintiff suffers from postural orthostatic tachycardic syndrome (POTS) along with dyslexia and attention deficit disorder.   POTS' symptoms include fatigue, diminished concentration, headache, lightheadedness, syncope, nausea, fluctuating temperatures and heart palpitations.   POTS is exacerbated and triggered by environmental factors including heat, time of day, dehydration, sleep deprivation, posture and prandial status.  Plaintiff is a qualified individual with a disability.

## LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule Civil Procedure 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 US 317 (1986) and *Jeffrey v. Sarasota White Sox,* 64 F.3d 590 (11th Cir. 1995). The moving party must demonstrate that the facts underlying all the relevant legal questions are not in dispute, otherwise summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineburg*, 370 F2d. 605, 611-612 (5th Cir. 1967). To determine whether a moving party has met its burden, the court must draw inferences from the evidence in a light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir. 1989).

If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the Court should not grant summary judgment. *Agusta Iron and Steel Works v. Employers Insurance of Wasaw,* 835 F.2d 855, 856 (11th Cir. 1988).  A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson at 248.* The inquire is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." Id. at 251-52. On a summary judgment motion, the court may not weight the credibility of the parties. See *Rollin v. Texsouth, Inc.,* 833 F2d. 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. Id. If the record presents factual issues the Court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F2d. 983 1991 (5th Cir. 1981).

In cases where employment discrimination has been alleged, the 11th Circuit has long stated that the granting of summary judgment is especially questionable, because such cases usually involve the explanation of motive and intent. *Batey v. Stone*, 24 F3d. 1330, 1336 (11th Cir. 1994) (quoting *Hayden v. First National Bank*, 595 F2d. 994,997 (5th Cir. 1979)).

## STATEMENT OF FACTS

Plaintiff suffers from POTS. Plaintiff started her employment on July 1, 2013. Plaintiff's first year of employment was smooth.  The calendar year for the program begins on July 1st.[1]  Plaintiff was a qualified individual with a disability.[2]  Defendant had knowledge of Plaintiff's disability. Plaintiff asked for a handicapped parking space in order to mitigate her disability.[3] Plaintiff received no help from her department and was told by Dr. Hobbs, the program director, that there would be no exceptions or alterations in Plaintiff's work environment or schedule.[4]  Dr. Hobbs was angry when Plaintiff obtained a parking permit outside the department and pursued retaliation against Plaintiff, including giving Plaintiff other people's assignments.[5] Dr. Hobbs told Plaintiff that she made a "mistake".  Dr. Hobbs ordered chief residents to straighten out Plaintiff's "poor attitude".[6]  Plaintiff was subjected

---

[1] ECF 35-1 Diekman depo 54-55.
[2] ECF 37-1 Diekman Affidavit.
[3] ECF 37-1 Diekman Affidavit ¶ 3.
[4] ECF 37-1 Diekman Affidavit ¶ 4.
[5] ECF 35-1 Diekman depo 56.
[6] ECF 37-1 Diekman Affidavit ¶ 30-31.

to a grueling one-hour lecture on attitude improvement in which she was forced to stand which exacerbates symptoms of POTS and threatened with a professionalism complaint if she sat down or went home after the lecture.[7]

In May 2014, while working at the Veterans Administration ("VA") medical facility in Gainesville, a VA attending physician, Dr. Dale Syfert came into Plaintiff's sleeping area without permission. Dr. Syfert had been physically touching Plaintiff and making sexually degrading remarks to her.[8]  Dr. Joseph Thornton was the staff psychiatrist with the VA and attending physician for UF.[9] Plaintiff made a complaint to Dr. Thornton about the Dr. Syfert  Dr. Thornton told Plaintiff that she reminded him of his ex-wife and that she should learn to get along better with others and if she stopped complaining she would probably get along better with people[10]. Plaintiff reported the incident to Dr. Hobbs and Dr. Turner who spoke to Dr. Thornton. Plaintiff also reported the incident to the H.R. department. Shortly thereafter, Plaintiff received her first negative review from Dr. Thornton.[11]

During the extreme heat of the summer months of 2014, Plaintiff required a parking spot that was closer to Shands UF Health Complex due to experiencing symptoms of POTS.[12] After receiving no help and being labeled as a "complainer"

---

[7] ECF 37-1 Diekman Affidavit ¶ 33.
[8] ECF 35-1 Diekman depo 39- 43.
[9] ECF No.35-35, June 23, 2020 Depo Thornton, 5.
[10] ECF 37-1 Diekman Affidavit ¶ 38-39; 35-1 Diekman depo 45.
[11] ECF 37-1 Diekman Affidavit ¶ 40-42.
[12] Plaintiff-Depo 57, 120-123.

by Dr. Hobbs, in October 2014, Plaintiff contacted the UF General Counsel's office concerning parking and was able to secure closer parking.[13]

Plaintiff was subjected to last-minute schedule changes by Dr. Hobbs.  Dr. Hobbs knew these actions could aggravate Plaintiff's POTS.[14]  In November of 2014, Plaintiff complained to Dr. Hobbs that Dr. Chang was making mistakes with her schedule which would aggravate her POTS. Dr. Hobbs told Plaintiff that she should take a leave of absence until she could return and perform all required duties unimpeded.[15]

Dr. Hobbs informed Plaintiff that she could not be a psychiatrist if she needed accommodations, "special treatment."  She told Plaintiff that her disability would disqualify her from graduation and working as a psychiatrist.[16]

In January 2015, Plaintiff filed a harassment complaint against Dr. Chang. Plaintiff was told to file the complaint with the ADA office which she did on March 31, 2015.  The ADA Office helped Plaintiff with last-minute schedule changes which were affecting her health.  Plaintiff requested a modified fix schedule and adequate notification if her schedule changed.   Despite approval and assurances that the request would be met, Defendant violated the agreement after one month.[17] On May

---

[13] ECF 37-1 Diekman Affidavit ¶ 29.
[14] ECF 37-1 Diekman Affidavit ¶ 71.
[15] ECF 37-1 ¶ 43.
[16] ECF 37-1 Diekman Affidavit ¶67-68.
[17] ECF 37-1 Diekman Affidavit ¶ 35, 45.

5, 2015, Plaintiff filed a complaint with the accrediting body ACGME addressing violations by Defendant including retaliation.[18]

On May 11, 2015 Plaintiff filed an ADA Grievance for harassment and retaliation for asking for an accommodation.  On May 28, 2015, Plaintiff met with Dr. Osfield and Dr. Hobbs regarding her grievance.  Plaintiff received some accommodations.  Dr. Hobbs agreed to provide all residents with ADA training. After the meeting Dr. Hobbs stated that Plaintiff was a problem and she needed to obtain documentation to prove it.[19]

On June 8, 2015, Dr. Dixon released her findings concerning the complaint to the ACGME.  She found education was lacking and retaliation was occurring regarding residents.[20]    In June, Plaintiff complained that the accommodations were not being adhered to and that this  was affecting her health.  Despite renewed agreement, Plaintiff's supervisor failed to follow the accommodations.[21]

In August of 2015, Plaintiff was excluded from attending a lecture with the rest of her class.  Dr. Hobbs later informed Plaintiff that if she had not been so much "trouble" she would have been allowed to attend.[22]

---

[18] ECF 37-1 Diekman Affidavit ¶ 47.
[19] ECF 37-1 Diekman Affidavit ¶ 49-50, 52; Hobbs 76.
[20] ECF 37-1 Diekman Affidavit ¶ 43.
[21] ECF 37-1 Diekman Affidavit ¶ 51.
[22] ECF 37-1 Diekman Affidavit ¶ 45.

In September 2015, Plaintiff was placed on probation.  In October of 2015 Plaintiff's schedule for clinic work was frequently doubled booked.  She was told it was an accident.[23]

On November 12, 2015, Plaintiff made another accommodation request.  On, November 18, 2015, at a meeting Defendant accepted a few accommodations and stated they would look into other requests.[24]   Though Defendant agreed to some accommodations, this also drew the ire of  Dr. Hobbs.[25]  Plaintiff was told by Dr. Werner that Dr. Hobbs instructed her to punish Plaintiff for "Complaining about her disability.[26]  Plaintiff filed a Charge of Discrimination with EEOC on November 13, 2015.

Six days after agreeing to new accommodations,  the CCC terminated Plaintiff on November 24, 2015.[27]

Plaintiff's second and third year performance scores were retroactively lowered after her termination.[28]

## MEMORANDUM OF LAW

### A.    Plaintiff's claims are not time barred.

---

[23] ECF 37-1 Diekman Affidavit ¶ 46.
[24] Accommodations UF/Diekman-000434-000437.
[25] ECF 37-1 Diekman Affidavit ¶ 59.
[26] ECF 37-1 Diekman Affidavit ¶69.
[27] CCC-Minutes at UF/Diekman-000385-000387; Holbert-Dec ‖12-13; ‖98.
[28] ECF 37-1 Diekman Affidavit ¶ 75.

Defendant alleges Plaintiff did not timely file her charge of sex discrimination or retaliation. Plaintiff filed three (3) separate charges of discrimination with the EEOC. The first charge was discrimination based on disability and was filed on November 12, 2015.[29]   The second charge of discrimination was based on sex discrimination, disability discrimination and retaliation, was filed on May 18, 2016.[30]   The third charge was based on sex discrimination, disability discrimination, and retaliation and was filed on May 14, 2018.[31]

Defendant asserts that Plaintiff did not file with the EEOC on May 18, 2016. Plaintiff has testified that she did file her charge with the EEOC on May 18, 2016.[32] Plaintiff stated in her deposition that she filed in May of 2016 and was contacted by the EEOC.  They informed Plaintiff that they found the paperwork.[33] Plaintiff in fact contacted EEOC Investigator Mario Raul Hernandez on May 19, 2016 to notify him that she had sent Form 5 (Charge of Discrimination Form) on May 18, 2016.[34] On May 31, 2016 at 12:36 p.m., Plaintiff contacted Investigator Hernandez to make sure he had received the forms and asked him to affirm the same.[35]  On May 31, 2016 at 2:12 p.m., Plaintiff received a response from Investigator Hernandez stating that he had received the images of the signed Form 5.  He stated: "Our records show that all

---

[29] ECF 35-19 UF/Diekman 000011.
[30] ECF  37-1 Diekman Affidavit ¶ 7& A.
[31] ECF 37-1 Diekman Affidavit ¶ 11.
[32] ECF 37-1 Diekman Affidavit ¶ 7 & A.
[33] ECF 35-1 Diekman depo 199.
[34] ECF 37-1 Diekman Affidavit ¶ 8 & B.
[35] ECF 37-1 Diekman Affidavit ¶ 9 & B.

requested documents are in the file.  The file also shows that your complaint was timely, and our Agency has jurisdiction over the issues raised."[36]

Plaintiff timely filed her charge of discrimination on May 16, 2016. If the EEOC cannot locate the charge, despite the confirmation by EEOC Investigator Hernandez, then equitable tolling should apply.   Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement like a statute of limitations is subject to waiver, estoppel, and equitable tolling.  *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393(1982). A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.  *Holland v. Florida,* 560 U.S. 631 (2010). There is no doubt Plaintiff timely filed her claim for sex discrimination and retaliation. Plaintiff should not be punished for the EEOC's failure to maintain their own records.  *Ricciardi v. Consol. Rail Corp.*, 199 U. S. Dist. (E.D. Pa. Feb. 8. 1999).

Courts have affirmed the principle that errors committed by the EEOC to the detriment of EEOC complainants cannot, as a matter of equity, be used to deny complainant's relief under Title VII. *Franks v. Bowman Transportation Company*, 495 F.2d 398, 404-05 (5th Cir. 1974).  The exhaustion of administrative remedies requirement ensures that the EEOC receives all of information, through development

---

[36] ECF 37-1 Diekman Affidavit ¶ 10 & B.

of the administrative record, that it needs to investigate and resolve a dispute between the employee and the employer.   An employee's good-faith effort to cooperate with the EEOC and to provide all relevant, available information is all that is required to exhaust administrative remedies.  *Barnes v. Levitt,* 118 F.3d 404, 408 (5th Cir. 1997).   Plaintiff has raised a triable issue, that under the facts and circumstances of this case satisfied the exhaustion requirement.  Defendant's motion for summary judgment should be denied.

The Court should recognize that the November 12, 2015 Charge of Discrimination also includes a claim for retaliation based on disability. Administrative remedies need not be exhausted for retaliation claims and retaliation claims can be raised for the first time in federal district court.  *See Hentosh v. Old Dominion Univ.,* 767 F.3d 413, 415-416 (4th Cir. 2014); *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.  1992).

Plaintiff's charge states (in part): "Following my request for an accommodation I have been subjected to unwarranted discipline and increased supervision."[37]   A Title VII action, however, may be based "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of

---

[37] ECF 35-19 UF/Diekman 000011.

the initial charges of discrimination."  Plaintiff's initial EEOC filing reflects an intention to raise retaliation based on her disability.  *Fine v. GAF Chemical Corp.*, 995 F. 2d 576, 578 (5th Cir. 1993).

Based on the above Plaintiff, has established a genuine issue of material fact and summary judgment should be denied.

### B.    Plaintiff was an employee.

Defendant has asserted that it terminated Plaintiff for not performing the essential functions of her job.[38]  Defendant also takes the irreconcilable position that Plaintiff was a student and not an employee, and therefore was subject to Defendant's quasi-judicial decisions and required to exhaust her administrative remedies in her allegations of due process, discrimination and retaliation.   The applicable legal standard and record show Plaintiff was an employee of Defendant.

A determination of whether Plaintiff was an employee of Defendant is a question of fact to be resolved by the factfinder. *Garcia v. Copenhaver, Bell Associates,* 104 F.3d 1256 (11th Cir. 1997).  As the Court held: the jury should be able to decide the issue of whether Copenhaver/Bell was an "employer" and consequently whether Garcia was an "employee". *Garcia* at 1258.  The question of whether an employer/employee relationship exists is normally reserved for the jury to determine. *Rogers v. Barrett*, 46 So.2d 490 (Fla. 1950).  This is especially true

---

[38] UF's MSJ at 23.

where there exist disputed issues of fact. *DeBolt v. Department of Health and Rehabilitative Servs.,* 427 So.2d 221 (Fla. 1st DCA 1983).

In the case at bar, Plaintiff was subject to an employment contract[39]; Plaintiff was paid a salary by Defendant; Plaintiff was given fifteen days of annual leave; Defendant   defined her work responsibilities in the employment contract[40]; Defendant established that billable hours and work production were a priority over education opportunities[41];  Plaintiff's termination references her failure to bill and make Defendant a sufficient amount of revenue[42]; Defendant filed employment taxes and retirement benefits for Plaintiff; Defendant stated that the resident's primary purpose was to create billable hours for the University not to educate the residents; residents need to be at a certain billing level[43]; Plaintiff received performance evaluations not grades; Plaintiff was directed to seek medical services from Defendant's employee health services not the student health services[44];  and the FMLA form   Plaintiff was required to execute instructs "Employer" and "Employee" to fill out the form.[45]

---

[39] ECF 37-1 Diekman Affidavit ¶ 16.
[40] ECF 35-4 UF/Diekman 001608-001613; ECF 37-1 Diekman Affidavit ¶ 16.
[41] ECF 37-1 Diekman Affidavit ¶ 19-20; ECF 35-38 Averbuch depo 33; ECF 35-1 Diekman depo 99.
[42] ECF 37-1 Diekman Affidavit ¶ 20.
[43] ECF 37-2 Hobbs depo 59 ; ECF 37-1 Diekman Affidavit ¶ 15, 17.
[44] ECF 37-3 UF/Diekman 001708.
[45].ECF 37-4 UF/Diekman 001551-001555.

Defendant's policies and procedures for Medical Residents acknowledges residents as employees.[46]   Under Defendant's Domestic Violence Leave Policy it states "employers must provide employees"[47]   Bereavement Leave Policy defines immediate family members to include an "employee's" spouse …individuals for whom the "employee" is the current legal guardian.[48]

In *Mayo Foundation v. U.S.,* 562 U.S. 44, 60 (2011), the Court, in determining the tax status of resident physicians, found that resident physicians meet the definition of employees as opposed to students.  "The Department certainly did not act irrationally in concluding that those doctors---'who work long hours, serve as highly skilled professionals, and typically share some or all of the terms of employment of career employees'----are the kind of workers that Congress intended to both contribute to and benefit from the Social Security system, 69 Fed. Reg." *Mayo* at 60.  All residents are subject to Defendant's Health Requirement Policy which states in part that: The University of Florida has established health requirements for employment."  The intent of the policy is: "Residents will comply with all health requirements for employment by the University of Florida."[49]

Defendant's reliance on *Hussey v. Univ. of Fla. Bd. Of Trs.,* 226 So. 3d 1081 (Fla. 1DCA 2017) is misplaced.  *Hussey* does not concern an ACGME resident

---

[46] ECF 35-15.
[47] ECF 35-15 UF/Diekman 002792.
[48] ECF 35-15 UF/Diekman 002793.
[49] ECF 35-15 UF/Diekman 002785.

physician, rather it is about an oral and maxillofacial surgery program which is a dentistry specialty and a continuation of dental school.  Residents are medical school graduates who take their first job in a residency position. Residents are paid a salary to care for patients.  Residents are subject to applicable taxes as any other employee.

Based on the allegations in the amended complaint, the Court must allow a jury to make a factual determination regarding whether an employer and employee relationship existed between the parties. Plaintiff has proffered sufficient facts to show the existence of an employment relationship.

### C.  Summary Judgment for disability discrimination should be denied.

The ADA forbids employers from discrimination against or refusing to make reasonable accommodations for a qualified individual with a disability.  42 U.S.C.A. § 12111(a).  Disability actions under the FCRA are analyzed under the same framework as the ADA.  *Chanda v. Engelhard/ICC,* 234 F.3d 1219 (11th Cir. 2000). The ADA mandates that employers shall not discriminate against "a qualified individual with a disability."  42 U.S.C. § 12112 (a). A "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111 (8). Plaintiff was a qualified doctor with a disability who during her employment could perform the essential functions of her job with a reasonable accommodation.

The ADA defines a "disability" as "a physical or mental impairment that substantially  limits one or more of the major life activities of an individual."  42 U.S.C. § 12102 (2).  The record is clear that Plaintiff has a disability and Defendant does not challenge that issue.

### 1.    Plaintiff was a qualified individual under the ADA.

Defendant asserts Plaintiff was not a qualified individual under the ADA. Defendant claims that Plaintiff could not perform the essential functions of her job. To be considered a qualified individual with a disability, an individual with a disability must show they possess the necessary skills and education to perform the essential functions of the job with or without reasonable accommodation. 42 U.S.C. §12111(8) The term "essential functions" means the fundamental job duties of the employment position.  29 C.F.R. § 1630.2(n)(1)

Plaintiff with her medical degree was one of ten residents selected for the program from a thousand applicants.[50]  When Plaintiff signed her employment contract, it was her understanding she could perform the essential functions of the specialty.[51]  Plaintiff passed her clinical skills assessment eighteen months into her employment.[52]  On March 31, 2015, she was noted by the CCC to be a resident in good standing.[53]   On April 14, 2015, Dr Joel Fernandez, stated that he did not have

---

[50] ECF 37-2 Hobbs depo 7.
[51] ECF 35-1 Diekman depo 108.
[52] ECF 35-9 UF/Diekman 000163.
[53] ECF 35-9 UF/Diekman 000198.

any major issues with her work performance.[54]   On July 8, 2015, Dr. Suryadevara noted Plaintiff does an excellent job sometimes but that alternates with days when she makes some errors.[55]   On August 22, 2015, Dr. Turner noted Plaintiff's performance was satisfactory.  Dr. Hobbs responded that she thought "faculty would be surprised what she is capable of."[56]  On October 14, 215, Dr. Holbert noted that Plaintiff can do good work.[57]   October 27, 2015, the CCC noted Plaintiff had no identified deficiencies of medical knowledge.[58]   On November 23, 2015, Dr. Yazdanpanah informed Dr. Hobbs that Plaintiff has been professional, responded to feedback and made appropriate changes.  She was opened minded and critical in her diagnostic skills and had a good grasp of the subject matter.  She had an excellent perspective and she advocates and develops appropriate treatment plans.[59]   In Plaintiff's final year of employment she was asked to supervise junior residents to teach them to take calls.[60]

The record indicates that Plaintiff had the education, training and skills to perform the essential functions of the job.  The record also indicates that Plaintiff needed a reasonable accommodation to continually perform the essential functions

---

[54] ECF 35-9 UF/Diekman 000215.
[55] ECF 35-9 UF/Diekman 000268.
[56] ECF 35-9 UF/Diekman 000297.
[57] ECF 35-10 UF/Diekman 000417-000418.
[58] ECF 37-5 UF/Diekman 000383.
[59] ECF 35-9 UF/Diekman 000359.
[60] ECF 35-1 Diekman depo 109.

of her job.[61]   However, despite its formal agreement to said reasonable accommodations, Defendant refused to effectively and consistently implement them. There is no evidence Plaintiff could not meet the technical standards of observation, communications, motor, intellectual-conceptual, integrative, and quantitative abilities and behavioral and social attributes.  Plaintiff knew and could perform the essential functions of the PGY 1-4 graduate medical program and meet the guidelines for technical standards for residency training with reasonable accommodations.[62] Plaintiff passed all of her rotations during her employment; Plaintiff never needed additional supervision while on-call; Plaintiff never had to attend a patient safety meeting which are for residents who are considered a safety risk to patients. Until her termination, Plaintiff was continually allowed to exam patients, prescribe treatment and medications.[63]

Defendant's allegations that Plaintiff could not meet the tasks with "treating patients in fast paced, high intensity situations" are without merit or supporting documentation.  Plaintiff had completed her on call requirements as of July 1, 2015.[64] Defendant asserts that Plaintiff blamed her performance on her health.

---

[61] ECF 37-1 Diekman Affidavit ¶44.
[62] ECF 37-1 Diekman Affidavit ¶ 22-24.
[63] ECF 37-1 Diekman Affidavit ¶ 60, 64-66.
[64] ECF 37-1 Diekman Affidavit ¶ 25.

Viewed in context, Plaintiff was alluding to the fact that if provided reasonable accommodation, she could keep her health issues in check.[65]

To the extent that Defendant claims they implemented the reasonable accommodations, Defendant certainly did not give them sufficient time to have any effect.  After the March 31, 2015, meeting Plaintiff's supervisors ignored the agreed reasonable accommodations after thirty (30) days.  Dr. Osfield made Dr. Hobbs accommodate Plaintiff for the month of March, then refused any accommodation beyond that time.[66]  In June and July, Dr. Osfield ADA Officer, Dr. Hobbs, Program Director, Dr. Ginroy Assistant Program Director, Dr. Bussing Department Chair and Dr. Dixon responded to Plaintiff's request for a reasonable accommodation with a plan that Plaintiff's direct supervisor failed to follow.[67]  Upon agreeing to provide an additional  limited accommodation on November 18, 2015 Defendant terminated Plaintiff six (6) days later at the CCC meeting of November 24, 2015.[68]  More incredulous is that the ADA Officer, Dr. Osfield signed the newly authorized accommodations on the day Plaintiff was terminated, November 24, 2015. Dr. Hobbs signed the document approving the accommodations on December 2, 2015, eight (8) days after Plaintiff was terminated.[69]

---

[65] ECF 37-1 Diekman Affidavit ¶ 44.
[66] ECF 37-1 Diekman Affidavit ¶ 45.
[67] ECF 37-1 Diekman Affidavit ¶ 51.
[68] ECF 35-12 UF/Diekman 000385-000387.
[69] ECF 35-23 000434 -000437.

## 2.   Defendant refused to engage in the interactive process with Plaintiff.

Under the guidelines of the ADA, an employer is required to make reasonable accommodations for qualified individuals with a disability.[70]  Defendant was aware Plaintiff suffered from several disabilities.[71]  At the end of 2014, Defendant was also aware of the environmental factors which would trigger Plaintiff's POTS.  Despite knowing that certain high  temperature and extensive walking would trigger Plaintiff's POTS and Plaintiff required daily physical therapy;[72] Defendant refused to provide Plaintiff's reasonable accommodation requests or engage in the interactive process.[73]  Plaintiff repeatedly asked for a fixed schedule from 8:00 a.m. to 5:00 p.m., which would provide time for her mandatory physical therapy, exercise regimen, and a functional daily routine.[74]  These accommodations were eventually agreed to, but Defendant substantially failed to adhere to them, preventing any real benefit to Plaintiff.[75]

At the CCC meeting of December 17, 2014, Dr. Hobbs recommendation, instead of providing a reasonable accommodation, was to place Plaintiff on medical leave. The CCC was aware that Diekman needed a reasonable accommodation as

---

[70] ECF 35-15 U/F Diekman 002833.
[71] ECF 37-2 Hobbs depo 7-9.
[72] ECF 37-2 Hobbs depo 19-20.
[73] ECF 35-1 Diekman depo 206.
[74] ECF 37-1 Diekman Affidavit ¶ 44, 55, 58.
[75] ECF 37-1 Diekman Affidavit; ECF 35-9 UF/Diekman 000357.

the notes state two questions were asked: "Did her medical school make accommodations for her?  Should we make accommodations for her?"[76]  At the CCC meeting of March 18, 2015 the discussion concerning Plaintiff included considering whether "Her medical condition could be an underlying factor."[77]  At the CCC meeting of June 3, 2015, Dr. Tandon requested, on behalf of the program, for direction on how to adjust Plaintiff's activities and make accommodations.  Instead of providing a reasonable accommodation the CCC delayed Plaintiff's outpatient clinic year.[78]

Employer's must provide a reasonable accommodation to qualified individuals with disabilities who are employees unless to do so would cause an undue hardship. 42 U.S.C. §§ 12101-12117, 12201-12213.  Reasonable accommodations include modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.  29 C.F.R. pt. 1630 app. §1630.2(o).  A modification or adjustment is "reasonable" if it "seems reasonable on its face, i.e. ordinarily or in the run of cases;" this means it is "reasonable" if it appears to

---

[76] ECF 35-12 UF/Diekman 000378.
[77] ECF 37- 6 UF/Diekman 000379.
[78] ECF 35-12 UF/Diekman 000381.

"feasible" or "plausible." *U.S. Airways, Inc. v. Barnett,* 535 U.S., 122 S. Ct. 1516, 1523 (2002).

Contrary to Defendant's assertion, a request for a reasonable accommodation does not require formality. The employee simply needs to let their employer know that the employee needs an adjustment or a change at work for a reason related to a medical condition. The request does not have to be in writing. 29 C.F.R. § 1630.2. Plaintiff continually informed her supervisors of her need for reduced walking, to avoid high temperatures, and have a fixed schedule.[79]

Leave for the purpose of obtaining medical treatment is a form of reasonable accommodation. This includes modification of a leave policy to provide for additional leave. *See Cehrs v. Northeast Ohio Alzheimer's*, 155 F. 3d 775, 782 (6th Cir. 1998). *U.S. Airways Id*. Modifying an employee's work schedule is reasonable when necessitated by an individual's disability-related limitations absent the employer establishing an undue hardship. *Ralph v. Lucent Technologies, Inc.,* 135 F. 3d 166, 172 (1st Cir. 1998) and *US Airways Id.*

Plaintiff repeatedly informed her supervisors that she needed a fixed schedule, to allow her to attend physical therapy, take her medications and avoid triggering her POTS. The duty to provide a reasonable accommodation is an ongoing one. *Id.* An employer must consider each request for a reasonable accommodation. Plaintiff

---

[79] ECF 37-1 Diekman Affidavit ¶ 44, 55, 58.

made numerous requests for reasonable accommodations, the majority of which were denied.

Even when  Defendant agreed to provide accommodations, such as providing a fixed schedule, it failed to follow through.[80] Defendant's agreement to provide certain  accommodations serves as an admission that said accommodations were reasonable, and would not impede Plaintiff's ability to continue her residency.[81]

### 3.    Plaintiff was discriminated against because of her disability.

There is clear direct evidence of disability discrimination by Dr. Hobbs.  Dr. Hobbs pattern of discrimination began with Plaintiff's first request for a handicapped parking spot. Her intent was clear that she did not want Plaintiff to continue her employment at the University of Florida.  First she informed Plaintiff  the parking issue was her responsibility and there would be no exceptions or alterations in Plaintiff's work environment or schedule.[82]  During the summer months of 2014, the heat combined with inadequate parking caused Plaintiff  to experience symptoms of POTS.  Plaintiff was forced to choose illegal parking which resulted in citations or risk causing a POTS flare-up.[83] When Plaintiff told Dr. Hobbs of the problem she was told to stop complaining about her parking situation and acquire a team player

---

[80] ECF 35-23 UF/Diekman 001566-001568 ECF 37-1 Diekman Affidavit ¶ 45, 51; ECF 35-30 Hobbs ¶ 92.
[81] ECF 37-2 Hobbs depo 32-33.
[82] ECF 37-1 Diekman Affidavit ¶ 4.
[83] ECF 37-1 Diekman Affidavit ¶ 26.

attitude.[84]   Plaintiff's supervisors, Dr. Ginroy, Dr. Fayad and  the Chief Residents called her a complainer who wanted special treatment.[85]

When Plaintiff was forced to seek help from the University's legal department Dr. Hobbs informed Plaintiff that should not have gone outside the Department. Dr. Hobbs was very angry with Plaintiff.[86]   She told Plaintiff that she had made a "mistake".[87]   Dr. Hobbs assigned chief residents to deal with Plaintiff's "poor attitude".[88] Dr. Hobbs stated that she alone would control Plaintiff's work environment.[89]   Dr. Hobbs told Plaintiff that if she needed an accommodation then she could never be a psychiatrist and Plaintiff's disability would preclude Plaintiff from graduating from the psychiatry residency.[90]   Dr. Hobbs told Plaintiff "you can file for all accommodations you want, but I change your schedule every month".[91] Dr. Hobbs' express statements are a quintessential example of discrimination based on disability and constitute direct evidence of discrimination.  *Carter v. City of Miami,* 870 F. 2d 578, 582 (11th Cir. 1989).

During her employment, Plaintiff requested and was denied reasonable accommodations.[92]   Plaintiff was criticized for her note taking, she suffers from

---

[84] ECF 37-1 Diekman Affidavit ¶ 28.
[85] ECF 35-1 Diekman depo at 120.
[86] ECF 35-1 Diekman depo at 56.
[87] ECF 37-1 Diekman Affidavit ¶ 30.
[88] ECF 37-1 Diekman Affidavit ¶ 31.
[89] ECF 37-1 Diekman Affidavit ¶ 32.
[90] ECF 37-1 Diekman Affidavit ¶ 67-68.
[91] ECF 35-2 Diekman depo at 36.
[92] ECF 37-1 Diekman Affidavit ¶ 21; ECF 35-1 Diekman depo 206; ECF 35-2 Diekman depo 30.

dyslexia, but was not provided dictation software.[93]  Dr. Hobbs decreased the time Plaintiff had to finish her notes as compared to other residents.  Residents could complete their notes in thirty-six hours, but Plaintiff had to complete hers on the same day.  Dr. Hobbs would always create more stringent guidelines for Plaintiff. Once Plaintiff cleared the mark, Dr. Hobbs would move the bar higher.[94]

Dr. Hobbs never informed Plaintiff's supervisors that she had been granted accommodations.  On August 6, 2015, Acting Director of Psychiatry Consultation Liaison Services, Stephen Welch asked Dr. Hobbs, "Has Dr. Diekman been given accommodations?"  "Are there accommodations we are unaware of?"[95]  Dr. Welch stated that if he needed to provide a reasonable accommodation to a resident while on his rotation then he should have been told.[96]  Failure to convey this information to Plaintiff's supervisors  over four (4) months after accommodations were approved shows Dr. Hobbs animus towards Plaintiff and is a direct example of discrimination. The Clinical Competency Committee (CCC), where decisions were made concerning Plaintiff's performance and future employment were never told of her disability and her need for reasonable accommodations.  Without that information they placed Plaintiff on probation on September 3, 2015.[97]   Dr. Hobbs in fact stated

---

[93] ECF 35-1 Diekman depo 100.
[94] ECF 35-1 Diekman depo 101.
[95] ECF 35-9 UF/Diekman 000283.
[96] ECF 35-36 Welch depo 18-19.
[97] ECF 35-9 UF/Diekman 000323-000328.

that the need for reasonable accommodations would not be discussed with the CCC, the committee that reviewed Plaintiff's. ongoing performance, placed her on probation and terminated her employment.[98]

Pursuant to their agreement, Defendant was supposed to start providing Plaintiff with reasonable accommodations on March 31, 2015. Less than thirty (30) days later, however,  the CCC significantly modified  her duties and responsibilities in blatant disregard of her new accommodations.[99]   Plaintiff was denied attendance at a conference where she was to make a presentation because she had used a significant amount of leave.[100]  The leave was due to her POTS.[101]

The facts show  Defendant never intended to abide by the agreed upon reasonable accommodations, and had at all times intended to terminate Plaintiff.  Dr. Hobbs made it clear she wanted to get rid of Plaintiff.  She told Dr. Averbuch who informed Plaintiff in an effort to get closer to her.[102]  Dr. Hobbs asked a resident to "keep an eye" on Plaintiff and help out the team by proving Plaintiff was a problem[103]

**D.    Plaintiff was discriminated based on her sex.**

---

[98] ECF 37-2 Hobbs depo 41-42.
[99] ECF 35-9 UF/Diekman 000228.
[100] ECF 35-9 UF/Diekman 000240.
[101] ECF 37-1 Diekman Affidavit.
[102] ECF 35-1 Diekman depo 217-219.
[103] ECF 37-1 Diekman Affidavit ¶ 52.

Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e, forbids sex-based discrimination that alters the terms and conditions of employment in either two ways: first, by way of a tangible employment action, such as a demotion, pay reduction or firing; or second, by creation of a hostile workplace environment caused by sexual harassment that is severe enough to effect an alteration. *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F. 3d 1287 (11th Cir. 2007)

Defendant maintains a policy prohibiting sexual harassment.  The policy states that sexual harassment is a form of sex discrimination and defines sexual harassment to include inappropriate comments.[104]

Plaintiff's terms of employment were altered by a hostile work environment and she also suffered adverse consequences to her employment status.  The first action was after Plaintiff reported sexual harassment to her supervisor, Dr. Thornton. Dr. Thornton responded that Plaintiff reminded him of his ex-wife and she "should learn to get along better with others". Plaintiff shortly thereafter received her first negative review which was from Dr. Thornton.[105] The second action was being placed on suspension and the third being the ultimate employment action her termination.

---

[104] ECF 35-15 UF/Diekman 002870.
[105] ECF 37-1 Diekman Affidavit ¶ 38-42.

A claim for sexual harassment under Title VII is a claim for disparate treatment. In order to prevail a plaintiff must show that similarly situated persons not of her sex were treated differently and better. *Mendoza v. Borden, Inc.,* 195 F. 3d 1238 (11th Cir. 1999).

Plaintiff stated in her deposition that several similarly situated male residents were treated better than her. Daniel Pietras who received spotty reviews and threatened to blow up the VA. He was rehired and graduated successfully.[106] Resident Wagdy Kaleel was forcing medical students to write his notes for him. The students were coerced into the fraudulent behavior. Formal complaints were filed against him. He was given a warning and graduated.[107] Three nondisabled males who failed their step one exams were allowed to continue on to their third year. Vic Vaka, Anan Patel Rakesh were their names. They told Plaintiff that they did not pass their exams. This is an objective standard test that Plaintiff passed in her first six (6) months of employment. [108] Males received better rotations.[109]

### E.   Defendant's reason for Plaintiff's probation and termination were pretextual.

A Plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issuing concerning the employer's

---

[106] ECF 35-1 Diekman depo 222-223.
[107] ECF 35-1 Diekman depo 224; ECF 37-2 Hobbs depo 67-68.
[108] ECF 37-2 Hobbs depo 66-67.
[109] ECF 35-1 Diekman depo 227-229.

discriminatory intent.  *See Smith v. Lockheed-Martin Corp.,* 644 F. 3d 1321 (11th Cir. 2011) citing *Holifield v. Reno,* 115 F.3d 1555 (11th Cir. 1997).  A plaintiff may establish a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence.  *Rioux v. City of Atlanta,* 520 F. 3d 1269 (11th Cir. 2008).

If Defendant truly believed Plaintiff was incompetent and a potential danger to herself and to patients, it would be highly irresponsible to continue to allow her to see patients on her own.   On October 25, 2015, Dr. Holbert was told by Dr. Hobbs that he should push Plaintiff with her workload, increase the expectations for her to place orders for all patients, see all patients.  "We need to see what she is capable of".[110]  If the reason for Plaintiff's termination was a safety concern, she would not be allowed to continue to treat patients.  Defendant's proffered reasons for termination are inconsistent and implausible, raising a strong inference they are pretextual.  To establish pretext, a plaintiff must demonstrate "such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for action that a reasonable factfinder could find them unworthy of credence.  *Gogel v. Kia Motors Mfg. of Georgia Inc.,* 967 F.3d 1121, 1136 (11th Cir. 2020).

---

[110] ECF 35-9 UF/Diekman 000346.

Plaintiff continued to practice psychiatry, treat patients and train residents until her termination in stark contrast to Defendant's alleged basis for termination.

### F.    Plaintiff suffered retaliation based on her disability.

Mistreatment in the workplace based on retaliation for protected conduct, such as making or supporting a charge of discrimination, is actionable under Title VII whether or not the mistreatment rises to the level of a tangible employment action, but only if the mistreatment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Monaghan v. Worldpay US Inc.,* 955 F. 3d 855 (11th Cir. 2020).

The elements for an employment retaliation claim under Florida law is the same as those for claims brought under federal law.  Thus, decisions construing Title VII are applicable when considering claims of discrimination under the Florida Civil Rights Act, § 760.01 et seq., Fla. Stat. (2020).  *Jubak v. Michaels Stores, Inc.,* 143 F. Supp. 3d 1195 (M.D. Fla. 2015). To state a cause of action for retaliation under the Florida Civil Rights Act, an employee must prove a prima facie case by showing : (1) he engaged in a statutory protected expression; (2) there was an adverse employment action; and (3) there was a causal connection between the participation in the protected expression and the adverse action.  *St. Louis v. Fla. Int'l Univ.,* 60 So. 3d 455 (Fla. 3d DCA 2011).

As to the first prong, Plaintiff engaged in protected activity when she complained that she was being discriminated based on her disability.  Plaintiff made numerous complaints of discrimination to her supervisors, Assistant Program Director, Program Director, ADA Officer, Department Chair and filed a formal complaint with Defendant's ADA Office on May 22, 2015, delineating in detail complaints of discrimination beginning in July of 2014.[111]

As to the second prong, there was adverse action as a result of Plaintiff's complaints about discrimination based on her disability along with her advocating for reasonable accommodations. She was ridiculed as a complainer, she was perceived as a liar, she was treated differently than other residents, she was placed on pre-probation, probation and ultimately dismissed.[112]  More specific examples of retaliation are contained in Plaintiff's ADA grievance of May 22, 2015.[113]

The retaliation included: changes in her schedule at the last minute effecting her scheduled doctor's appointments and physical therapy[114]; being given other people's work assignments[115] given increased amount of workload despite raising health concerns[116]; being told by Dr. Hobbs that if she could not perform without accommodations she could not work at all[117]; being subjected to an hour long lecture

---

[111] ECF 35-24 UF/Diekman 002943-002952 ECF 35-1 Diekman depo 206.
[112] ECF 37-1 Diekman Affidavit ¶ 28, 70; ECF 35-1 Diekman depo 59,132, 174; ECF 35-2 Diekman depo 17.
[113] ECF 35-24 UF/Diekman 002942-002952.
[114] ECF 35-2 Diekman depo 27, 29.
[115] ECF 35-1  Diekman depo 56.
[116] ECF 35-1 Diekman depo 59, 120.
[117] ECF 37-1 Diekman Affidavit ¶ 43; 35-2 Diekman depo 32.

on attitude improvement and being forced to stand the entire time[118]; being told she could not attend her physical therapy; being told if should could not perform every duty requested by the chiefs then she could not work at all; being forced to take medical leave because of the failure to receive reasonable accommodations[119]; being subject to slanderous statements that she was faking her medical conditions because she was lazy[120]; being told by supervisors when asking to sit down or take her medicine, to stop complaining[121] being told by Dr. Hobbs that no accommodations could or would be made for her health conditions[122]; having to contact the ADA office to rectify a 36 hour notice change in her schedule[123]; being placed on schedules that were known to make her sick;[124] approximately 2.5 weeks after contacting the ADA office regarding her schedule, being removed from her third year clinic which in essence restructured her residency;[125] changing Plaintiff's test scores after she was terminated[126]; and being removed from a lecture attended by the rest of her class.[127]

---

[118] ECF 37-1 Diekman Affidavit ¶ 33.
[119] ECF 35-1 Diekman depo 81, 141.ECF 37-1 Diekman Affidavit ¶ 33, 70.
[120] ECF 35-1 Diekman depo 132.
[121] ECF 37-1 Diekman Affidavit ¶ 54.
[122] ECF 37-1 Diekman Affidavit ¶ 4.
[123] ECF 37-1 Diekman Affidavit ¶ 35.
[124] ECF 35-1 Diekman depo 109.
[125] ECF 35-1 Diekman depo 175.
[126] ECF 35-2 Diekman depo  49-50, ECF 37-2 Diekman Affidavit ¶ 75.
[127] ECF 35-2 Diekman depo 49.

As to the third prong, causation, is fulfilled by the record.[128]   In order to satisfy the causal connection prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. Moreover, while awareness of protected expression may be premised upon circumstantial evidence, the plaintiff must show a defendant's awareness with more evidence than mere curious timing coupled with speculative possibilities. *Russell v. KSL Hotel Corp.,* 887 so. 2d 372 (Fla. 3d DCA 2004).

The temporal proximity between Plaintiff's request for accommodations to Dr. Hobbs, November 18, 2015, and her termination on November 24, 2015 is sufficient evidence of causation to survive summary judgment on this claim, since temporality is sufficient to meet this hurdle. *See Clark Cnty. School District v. Breeden*, 532 U.S. 268 (2001). *Foster v. Univ. of Md.-E. Shore*, 787 F. 3d 243 (4th Cir. 2015) in which the court found that termination which occurred within one month of employee filing complaint inferred causation.

It is a clear example of retaliation to offer Plaintiff a series of reasonable accommodations so she may successfully perform the essential functions of her job, with no intent of allowing her access to those accommodations.   Dr. Hobbs intentions are also reflected in her hiding Plaintiff's   need for reasonable

---

[128] ECF 37-1 Diekman Affidavit.

accommodations from the CCC, the committee that judges her performance and, in this case, terminated her employment.[129] Dr. Hobbs further stated Plaintiff had been given many accommodations that would allow her to perform and there were still performance issues.[130] Dr. Hobbs statement reflects her retaliation because Plaintiff on two occasions asked for and allegedly received reasonable accommodations, the first request was not adhered to and the second request was six days before her termination.

The general rule is that temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection on summary judgment, and thus rebuts the employer's proffered legitimate, non-retaliatory reasons for actions under Title VII. *Clark v. Bd. Of Regents of Univ. Sys. Of Georgia,* 243 F. Supp. 3d 1367 (S.D. Ga. 2017).

The reason Defendant suspended and terminated Plaintiff was because of her claim that she was discriminated based on her disability. Plaintiff meets the "but-for" causation standard as stated in *Univ. of Tex Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). The record reflects the numerous instances of Defendant's failure to accommodate Plaintiff's request for a reasonable accommodation and the

---

[129] ECF 37-2 Dr. Hobbs depo 51-53.
[130] ECF 37-2 Hobbs depo 53.

retaliatory behavior when Plaintiff advocated to stop the disability discrimination that she was receiving.[131]   Summary judgment should be denied.

### G.    Plaintiff suffered retaliation based on her sex.

The Florida Civil Rights Act is patterned after Title VII and the federal case law on Title VII applies to The Florida Civil Rights Act. *Jubak Id.*   To establish a prima facie claim for retaliation a plaintiff must meet the three-prong test as described in *St. Louis v. Fla. Int'l Univ., above.*

As to the first prong, Plaintiff rejected Dr. Syfert's sexual advances and complained to her supervisors.   Plaintiff asked that she not be left alone with Dr. Syfert.[132]   A person who reject's a supervisor's sexual advances have engaged in protected activity for a retaliation claim.   *Tequesta v. Luscavich,* 240 So. 3d 733, 742 (Fla. 4th DCA 2018).

As to the second prong, Plaintiff suffered an adverse action.   She received her first poor review from Dr. Thornton shortly after she reported the incident to Dr. Thornton. When he did not do anything, Plaintiff reported it to Dr. Hobbs and Dr. Turner. Dr Turner contacted Dr. Thornton.   [133]

---

[131] ECF 37-1 Diekman Affidavit.
[132] ECF 35-2 Diekman depo 215.
[133] ECF 37-1 Diekman Affidavit ¶ 38-41.

As to the third prong, Defendant was aware of the protected activity at the time Plaintiff received the adverse action. The relatively short period of time between the protected activity and the adverse employment action establishes the causal relationship. *Clark Cnty. Above.* Plaintiff meets the "but-for" causation standard as the record reflects Plaintiff had received no negative review prior to her complaint of sexual harassment**.**[134] Summary Judgment should be denied.

## CONCLUSION

All doubts and inferences must be resolved against the moving party for summary judgment. If there is the slightest doubt or conflict in the evidence, then summary judgment is not available. *Byrd v. BT Foods, Inc.,* 948 So. 2d 921 (Fla. 4th DCA 2007). Viewing the facts in the light most favorable to Plaintiff, there exists genuine material facts in dispute which would preclude  the entering of summary judgment in this matter.

WHEREFORE, Plaintiff, SARAH DIEKMAN, respectfully requests that this Honorable Court deny Defendant, UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, AS THE PUBLIC BODY CORPORATE OF UNIVERSITY OF FLORIDA's Motion for Summary Judgment. There are genuine issues of material fact in dispute and Summary Judgment is inappropriate.

---

[134] ECF 37-2 Diekman Affidavit.

## <u>CERTIFICATION OF WORD COUNT</u>

In accordance with Local Rule 7.1, I hereby certify that this document contains 7,998 words.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September  25th   2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to **Mark G. Alexander, Esquire and David E. Chauncey** **Esquire** (mark.alexander@adblegal.com; david.chauncey@adblegal.com) ALEXANDER DEGRANCE BARNETT, P.A., 1500 Riverside Avenue, Jacksonville, Florida 32204.


*/s/ Andrew J. Salzman*
**ANDREW J. SALZMAN, ESQUIRE**
Florida Bar Number: 603929
**UNICE SALZMAN JENSEN, P.A.**
CenterState Bank Building, Second Floor
1815 Little Road
Trinity, Florida 34655
Phone (727)723-3772
Primary E-mail:    service@unicesalzman.com
Secondary E-mail:    asalzman@unicesalzman.com