UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SARAH DIEKMAN,

     Plaintiff,

v.                             Case No.: 1:19-cv-00227-AW-GRJ

THE UNIVERSITY OF FLORIDA BOARD
OF TRUSTEES,

     Defendant.

_____/

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND <u>INCORPORATED MEMORANDUM OF LAW</u>

Defendant, the University of Florida Board of Trustees ("UF"), pursuant to Local Rule 56.1(D), Local Rules, United States District Court, Northern District of Florida ("Local Rule"), hereby submit this Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law ("Opposition") (ECF No. 38) and states:

## <u>MEMORANDUM OF LAW</u>

There is also no genuine issue of material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d

739, 742 (11th Cir. 1996). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The material facts are clear. In the Opposition, allegations are often misstated or lack reference to the record. Plaintiff's testimony is mired in speculation without laying the predicate that she has personal knowledge of incidents, decision-making or motives needed for admissibility in trial especially concerning alleged comparators.[1] UF has met the burden under Rule 56(c) with its depositions, declarations, and documented evidence. Plaintiff has failed to establish the necessary evidence, as a result, there is no genuine issue of material fact and no reasonable jury could return a verdict for Plaintiff.

## I.     The Court should disregard Plaintiff's arguments for "hostile work environment" in her Opposition because it was not plead in the Amended Complaint.

For the first time, in her Opposition, Plaintiff seems to raise arguments for a "hostile work environment caused by sexual harassment."[2] Plaintiff makes these allegations in her attempt at a defense of her claims for sex discrimination under

---

[1] ECF No. 35-1, June 17, 2020 Deposition of Sarah Diekman, MD ("Plaintiff-Depo") at 222-232.
[2] Opposition at 27-28.

both the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII")"). It seems that Plaintiff was unable to provide enough evidence to respond adequately to UF's Motion for Summary Judgment and inserted a new theory for the cause of action.[3] The Eleventh Circuit, has recognized the distinct claim of "hostile work environment." *See Thomas v. Seminole Elec. Coop. Inc.*, 775 Fed. Appx. 651, 654 – 55 (11th Cir. 2019).  Plaintiff did not plead a hostile work environment claim in her Amended Complaint.

In Count III, Plaintiff states, "Plaintiff's sex was a motivating factor that caused Defendant to retaliate against the Plaintiff and terminate her employment. Moreover, she would not have been discriminated and/or terminated but for this unlawful motive."[4] In Count IV, Plaintiff alleges, "Defendant's discriminatory conduct, in scheduling Plaintiff's work rotation, hours of employment, payment of fringe benefits, payment of wages, while allowing male employees to experience better scheduling, wages and benefits was because of Plaintiff's sex in violation of Title VII."[5] Obviously, these claims differ from a hostile work environment claim due to sexual harassment in that they are reliant upon allegations of disparate treatment. In fact, Plaintiff does not mention a "hostile work environment" in any paragraph of her Amended Complaint. The claims of disparate treatment sex

---

[3] Opposition at 27-28. Plaintiff also makes a brief attempt to discuss the initial cause of action and the issue of comparators.
[4] ECF No. 8 ("Complaint") at ¶77.
[5] Complaint at ¶83.

discrimination and hostile work environment due to sexual harassment have distinct elements. *Compare Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) with *Williams v. Gallup, Inc.*, 709 F. App'x 567, 570 (11th Cir. 2017).

Plaintiff is prohibited from raising the distinct claim for hostile work environment due to sexual harassment for the first time in her Opposition. A non-moving party plaintiff does not have "an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004); *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). The Court should not consider this claim or permit it to proceed.

II. **Even if considered by the Court, Plaintiff cannot establish a *prima facie* case of "hostile work environment" due to sexual harassment in Counts III and IV.**

As discussed, in Count III, Plaintiff now seems to allege a claim of "hostile work environment caused by sexual harassment" against UF pursuant to the FCRA. In Count IV, Plaintiff alleges a near identical claim against UF pursuant to Title VII.[6] Hostile work environment claims brought pursuant to the FCRA are evaluated under the same analytical framework as claims brought pursuant to Title VII. *See Thomas v. Seminole Elec. Coop. Inc.*, 775 Fed. Appx. 651, 654 – 56 (11th Cir. 2019). Even

---

[6] Complaint at ¶76-87.

if the Court were to consider a claim of "hostile work environment," Plaintiff cannot establish a *prima facie* case.

In order for a workplace to be considered hostile, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that are sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). To prove a *prima facie* case for hostile work environment due to sexual harassment, the plaintiff must establish that: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Reeves*, 594 F.3d at 808.

The "severe or pervasive" requirement "contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In evaluating the objective severity of the harassment, the Court must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999).

Isolated incidents that are not extremely serious are not sufficiently severe or pervasive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Conduct must be extreme to amount to a change in the terms and conditions of employment. *Id.*

"Similarly, personal animosity is not the type of harassment prohibited by Title VII, and a plaintiff cannot turn a 'personal feud' into a Title VII claim." *Id.* (quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986)); *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 Fed. Appx. 280, 291-92 (11th Cir. 2018) (holding that comments about retiring, grandma, and "Magic Mike" pale in comparison to the sort of conduct that the court has "deemed sufficiently 'severe and pervasive' to create an objectively abusive environment.")

Plaintiff focuses her arguments on Dr. Joseph Thornton ("Dr. Thornton").[7] Yet, Plaintiff's allegations in the Opposition concerning Dr. Thornton would not rise to the level of "severe or pervasive" or even harassment. Likewise, Plaintiff misstates the record which shows that Dr. Thornton was not the first faculty/attending to give Plaintiff a negative review. Instead, negative reviews were simultaneously provided by female-faculty Dr. Sarah Fayad and Dr. Almari Ginory in July 2014.[8]

---

[7] Opposition at 27.
[8] ECF No. 35-5 (henceforth "Evaluations") at UF/Diekman-000533-000541;

Plaintiff makes allegations that Veterans Administration hospital employee, Dr. Dale Syfert called her "Marilyn Monroe," made sexist statements, and touched her shoulder on several occasions.[9] Likewise, Plaintiff alleges that Dr. Syfert entered the call room for on call doctors where Plaintiff was sitting which startled her.[10] Dr. Syfert said something to Plaintiff but soon left.[11] Although Plaintiff was apprehensive about the incident, she does not allege that Dr. Syfert did anything unbecoming in the on-call room.[12] Around the same time in May 2014, Dr. Thornton was contacted by Dr. Syfert who alleged that Plaintiff was "writing notes without seeing the patient" and had "an issue with her seeing patients in the emergency department in her role as the on-call doctor."[13] Dr. Thornton spoke to Plaintiff about the complaint by Dr. Syfert.[14] In response, Plaintiff reported that she was uncomfortable being around Dr. Syfert for the reasons discussed.[15]

As a result, the incoming Chief Residents, Dr. San Chang ("Dr. Chang") and Dr. Adrienne Eisner ("Dr. Eisner") took action to move Plaintiff from working on shifts with Dr. Syfert by changing Plaintiff's schedule giving her additional rounds at the UF Shands Hospital.[16] Plaintiff explained it "seemed like he was on a different

---

[9] Plaintiff-Depo at 40-41.
[10] Plaintiff-Depo at 40-41.
[11] Plaintiff-Depo at 40-41.
[12] Plaintiff-Depo at 40-41.
[13] ECF No. 35-35, June 23, 2020 Deposition of Joseph Thornton, MD ("Thornton-Depo.") at 15-16.
[14] Thornton-Depo at 16.
[15] Thornton-Depo at 16.
[16] June 26, 2020 Deposition of San Kuo Chang, M.D. at 8-9.

schedule" following her discussion with supervisors concerning the issue.[17] Not only was this not "severe and pervasive" but Plaintiff admitted that "it was survivable" following these changes.[18] Likewise, the incident occurred nearly 18-months before Plaintiff's dismissal from the program in December 2015.

It's clear that Plaintiff's allegations do not rise to the level of "severe or pervasive." Plaintiff admits that she has "a history of sexual trauma, so maybe I misread the situation and overreacted. And, I think that's, you know, arguable."[19] In addition, there is no evidence to suggest that Dr. Syfert's alleged treatment of Plaintiff amounted to a change in the terms and conditions of her employment.

In the Opposition, Plaintiff does not discuss her allegations of Dr. Robert Averbuch ("Averbuch") which have evolved from the Amended Complaint and do not constitute hostile work environment. Yet, in her Amended Complaint, Plaintiff seems to allude to potential improper behavior for retaliation. However, in her deposition testimony, it is clear that their interactions were very minimal. Plaintiff stated that Dr. Averbuch would complement her about her clothes and ask for hair advice.[20] Plaintiff alleges that Dr. Averbuch offered to help her in the Clinical Competency Committee ("CCC"), a committee of faculty within the College of Medicine that meets to oversee each resident's performance and academic standing,

---

[17] Plaintiff-Depo at 242.
[18] Plaintiff-Depo at 242.
[19] Plaintiff-Depo at 40-41. Plaintiff's "trauma" is referring to being sexually battered at Purdue University.
[20] Plaintiff-Depo at 238.

while on probation if she would agree to "spend more time together" but Plaintiff refused him saying she had a boyfriend.[21] Plaintiff alleges this statement was made once to her.[22] Plaintiff stated that this was the extent of their interactions.[23] The conduct alleged does not rise to the level of "severe or pervasive" in Plaintiff's employment.

For these reasons, summary judgment should be granted in favor of UF as to Counts III and IV concerning claims of "hostile work environment" if considered by the Court.

### III.     Plaintiff fails to establish a claim for retaliation due to complaints of sex discrimination.

Plaintiff's retaliation claims also fail. Plaintiff argues in the Opposition that Dr. Thornton's negative review in July 2014 was an adverse action. However, Plaintiff's performance evaluation does not constitute adverse employment actions. *See Medearis v. CVS Pharmacy, Inc.*, 646 Fed. Appx. 891, 897 (11th Cir. 2016) (holding that negative job evaluations alone do not constitute adverse employment actions)*; see also Johnson v. Miami-Dade County*, 948 F.3d 1318, 1326 (11th Cir. 2020) (holding that negative performance evaluations cannot serve as a basis for a Title VII retaliation suit). UF has provided extensive documentation of the reasons of Plaintiff's dismissal from the program and Dr. Thornton's single evaluation or

---

[21] Plaintiff-Depo at 239.
[22] Plaintiff-Depo at 239.
[23] Plaintiff-Depo at 239.

sexual harassment complaints were clearly not the but-for cause and occurred nearly 18-months before her dismissal for performance.

### IV.   Plaintiff cannot establish she was retaliated against due to her disability.

Plaintiff alleges in the Opposition that, "Mistreatment in the workplace based on retaliation for protected conduct...is actionable under Title VII..."[24] However, disability is not a protected characteristic enumerated in Title VII. *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012).  Thus, any cause of action in Count V for retaliation due to Plaintiff's disability under Title VII must fail.

Plaintiff's disability retaliation under the FCRA in Count VI should fail as well. The record shows that UF accommodated Plaintiff with a parking spot and a second spot.[25] Plaintiff was accommodated in April 2015 after making requests.[26] The record establishes that Plaintiff struggled with poor performance and was a safety threat to herself and patients even with her accommodations.[27] *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 782 (11th Cir. 2018), cert. denied, 139 S. Ct. 2019, 204 L. Ed. 2d 224 (2019) (Court held in retaliation based on Rehabilitation Act – which "also incorporates the anti-retaliation provision from the ADA" and uses the same analysis - that "No reasonable jury could conclude that

---

[24] Opposition at 30.
[25] Plaintiff-Depo at 121, 202-205
[26] ECF No. 35-23 ("Accommodations") at UF/Diekman-001566; ECF No. 35-39.
[27] *See* ECF No. 35-11; ECF No. 35-13; ECF No. 35-12 ("CCC-Minutes") at UF/Diekman-000385-000387.

USF discriminated against Zainulabeddin because of her disability, refused to provide reasonable accommodations, or retaliated against her for requesting accommodations. Rather, the record makes clear that Zainulabeddin was dismissed from the program for poor academic performance.") UF has provided extensive documentation demonstrating its attempts to work with Plaintiff.

In the Opposition, Plaintiff relies on "temporal proximity" of the second interactive process for causation.[28] However, the record is clear that Plaintiff was placed on probation with clear benchmarks to meet and Plaintiff failed to meet those benchmarks in the unanimous view of the CCC.[29] By the time Plaintiff was exploring additional accommodations, her three-month probation period in which she needed to improve her performance to remain in the program was almost completed. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (After learning of protected activity, an employer's "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"); *Bates v. Variable Annuity Life Ins. Co.*, 200 F. Supp. 2d 1375, 1383 (N.D. Ga. 2002) (holding there was no causal connection for retaliation because Defendant was already contemplating termination of Plaintiff before alleged protected activity.)

---

[28] Opposition at 33.
[29] *See* ECF No. 35-11; ECF No. 35-13; CCC-Minutes at UF/Diekman-000385-000387.

Likewise, Plaintiff admits that, other than Dr. Hobbs, the members of the CCC were not aware of the accommodations offered by UF on November 18, 2015, that Plaintiff failed to sign/agree to. *Morris v. Potter*, 251 F. App'x 667, 669 (11th Cir. 2007) (decision makers must have sufficient knowledge of alleged protected activity). Plaintiff does not dispute that all member of the CCC were unaware of her Charge of Discrimination filed on November 12, 2015 until after her dismissal.[30]

## V.     Plaintiff cannot establish any comparators for a *prima facie* case of either sex or disability discrimination under *McDonnell Douglas*.

Plaintiff has not met her burden of establishing that UF treated similarly-situated employees – "comparators" – outside of her protected class more favorably. The *McDonnell Douglas* framework places the initial burden on a plaintiff to establish a *prima facie* case of discrimination by proving that she was treated differently from a comparator.[31] *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019).

Concerning sex discrimination, Plaintiff provides hearsay testimony and speculation that does not establish her alleged comparators as "similarly situated in all material respects."[32] Plaintiff does not even address or attempt to provide comparators in the Opposition in order to defend her disability claim.

---

[30] ECF No. 35-30 ("Hobbs-Dec") at ¶112.

[31] Plaintiff alleges no other theory.

[32] Opposition at 28.

## VI.   UF and Plaintiff went through interactive processes and provided reasonable accommodations, but Plaintiff was not qualified.

Plaintiff argues in the Opposition that "Defendant refused to engage in the interactive process" but cites to documents of UF's interactive accommodation process.[33] Plaintiff states in the Opposition that, "Even when Defendant agreed to provide accommodations, such as providing a fixed schedule, it failed to follow through[34]. Defendant's agreement to provide certain accommodations serves as an admission that said accommodations were reasonable..."[35] This is a misrepresentation of the record. UF declined Plaintiff's request for a fixed schedule of 40 hours a week (8-5) in November 2015.[36] Plaintiff was accommodated in April 2015 with schedule changes but not a fixed schedule to which she stated this "more than covers my problem."[37] However, by November 2015, Plaintiff claimed "she needed" the more extreme accommodation of a "fixed schedule" of 8-5.[38] Needing this one accommodation is the core of Plaintiff' argument in the Opposition. UF had previously offered part-time accommodations and leave.[39] Likewise, in good faith, UF did offer to reduce Plaintiff's max-schedule from the typical full-time equivalent

---

[33] Opposition at 20.
[34] Plaintiff did file an ADA Grievance May 22, 2015 but it concerned issues previous to her accommodations in April and focused on the decision to not allow her to work in full-time outpatient to begin PGY-3 due to performance concern. ECF No. 35-23.
[35] Opposition at 23.
[36] Accommodations at UF/Diekman-000436; ECF No. 35-9 ("Hobbs-Emails") at UF/Diekman-000357; Hobbs-Dec at ¶92.
[37] ECF No. 35-39; Accommodations at UF/Diekman-001566-1568.
[38] Opposition at 22.
[39] Plaintiff-Depo at 172; ECF No. 35-7.

(FTE) of 80 hours maximum work a week to 60 hours of maximum work a week and "protective time" for 90 minutes each day.[40] A fixed schedule of 8-5 was considered unreasonable and an undue burden on the program.[41] Thus, even with accommodations from April 2015, Plaintiff was unable to meet the essential functions of medical residency which include being:

> …able to tolerate physically taxing workloads and to function effectively under stress…adapt to changing environments, to display flexibility, and learn to function in the face of uncertainties inherent in the clinical problems of many patients.[42]

Plaintiff failed to "provide safe, effective, and compassionate patient care" and "comply with duty hours assignments consistent with patient safety, educational requirements and personal development as outlined in departmental and institutional policies."[43] The CCC determined that she could not safely practice medicine.[44] She was injured and unable to work for months on December 3, 2015, just days after the CCC's determination.[45]

"In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin*, 749

---

[40] Accommodations at UF/Diekman-000436-000437.
[41] Hobbs-Emails at UF/Diekman-000357; Hobbs-Dec at ¶92.
[42] ECF No. 35-15 at UF/Diekman-002851-002852.
[43] ECF No. 35-4 at UF/Diekman-001608-001609.
[44] CCC-Minutes at UF/Diekman-000385-000387; ECF No. 35-13.
[45] Plaintiff-Depo at 60-61. She was not qualified during period.

F. App'x at 781. It was not a reasonable accommodation for Plaintiff, especially as a medical resident that is being taught and prepared to be a medical doctor, to demand a reduced schedule without any flexibility when being "able to tolerate physically taxing workloads," "display flexibility," and providing "safe, effective" care are clearly essential functions of being a medical resident that she could not meet. *See Mattingly v. Univ. of S. Fla. Bd. of Trustees*, 931 F. Supp. 2d 1176, 1183 (M.D. Fla. 2013) (holding plaintiff was not a qualified individual because mandatory shift rotations are often considered an essential function of an employee's position, particularly in … hospitals where safety is a primary concern.)

## CERTIFICATION OF WORD COUNT

In accordance with Local Rule 7.1, I hereby certify that this document contains 3192 words.

Dated this 9th day of October 2020.

*Continued on Next Page.*

Respectfully submitted,

ALEXANDER DEGANCE BARNETT P.A.

By: _____

Mark G. Alexander
Florida Bar No. 434078
E-mail: mark.alexander@adblegal.com
David E. Chauncey
Florida Bar No. 0119497
E-mail: david.chauncey@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of this filing to counsel of record Andrew J. Salzman, Unice, Salzman, Jensen, P.A., 1815 Little Road, Trinity, Florida 34655 (asalzman@unicesalzman.com, service@unicesalzman.com, cposs@unicesalzman.com)

_____
ATTORNEY